Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Mitchell Santos (SBN 332849)
mitchell.santos@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants
WARNER MUSIC GROUP CORP.,
WARNER RECORDS INC., and RHINO
ENTERTAINMENT COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT YOAKAM, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WARNER MUSIC GROUP CORP., a Delaware corporation; WARNER RECORDS INC., a Delaware corporation; and RHINO ENTERTAINMENT COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.  2:21-cv-1165-SVW (MAAx)<br><br>**DEFENDANTS WARNER MUSIC GROUP CORP., WARNER RECORDS INC., AND RHINO ENTERTAINMENT COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  May 10, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom:     10A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 10, 2021, at 1:30 p.m., or at such other time as this Court may order, in the First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012, defendants Warner Music Group Corp., Warner Records Inc., and Rhino Entertainment Company will and hereby do move to dismiss in part Plaintiff's declaratory relief claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that Plaintiff has failed to satisfy the constitutional or prudential ripeness standards necessary to establish a justiciable case or controversy as to the bulk of that claim, and to dismiss Plaintiff's copyright infringement claim in part, Plaintiff's conversion claim in its entirety, and all claims as against Warner Music Group Corp., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Melissa Battino submitted concurrently herewith, all pleadings and records on file in this case, and upon such evidence and argument as may be presented at or before the hearing on this Motion.

This Motion was made following a conference of counsel pursuant to Local Rule 7-3 that was held on April 5, 2021.

Dated: April 12, 2021

Respectfully Submitted

SIDLEY AUSTIN LLP

By:   /s/ *Rollin A. Ransom*
Rollin A. Ransom
Attorneys for Defendants
WARNER MUSIC GROUP CORP.,
WARNER RECORDS  INC., and
RHINO ENTERTAINMENT
COMPANY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

LEGAL STANDARD ................................................................................................ 4

ARGUMENT ............................................................................................................. 4

I.     PLAINTIFF DOES NOT OWN THE COPYRIGHT IN THE SINGLES AND THUS FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT AS TO THOSE WORKS ....................................................................................... 4

II.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION ................. 10

     A.    Plaintiff's Conversion Claim Is Preempted By The Copyright Act. ....... 10

     B.    Plaintiff Fails To State A Claim For Conversion .................................... 12

III.   PLAINTIFF'S DECLARATORY RELIEF CLAIM IS NOT RIPE AS TO THE MAJORITY OF WORKS LISTED IN THE NOTICES ................................... 13

     A.    Plaintiff Cannot Establish Constitutional Ripeness. ............................... 14

     B.    Plaintiff Cannot Establish Prudential Ripeness. ..................................... 17

     C.    This Court Should Exercise Its Discretion To Decline To Hear Plaintiff's Declaratory Relief Claim. ....................................................................... 19

IV.   ALL CLAIMS AGAINST WMGC SHOULD BE DISMISSED ..................... 20

CONCLUSION ........................................................................................................ 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..............................................................4

*Archer v. Coinbase, Inc.*,
  53 Cal. App. 5th 266 (2020) ................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................4

*Bank of New York Mellon v. City of Richmond*,
  No. C 13-03664 CRB, 2013 WL 5955699 (N.D. Cal. Nov. 6, 2013)...............17

*Brown v. Beatty*,
  No. CV 16-7666 PA, 2017 WL 6940518 (C.D. Cal. Nov. 9, 2017) .................12

*Burlesci v. Petersen*,
  68 Cal. App. 4th 1062 (1998) ..............................................................12

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ..............................................................4

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ..............................................................20

*Hallstrom v. Tillamook Cty.*,
  493 U.S. 20 (1989)................................................................................10

*Johansen v. Sony Music Entertainment Inc.*,
  No. 19 CIV. 1094 (ER), 2020 WL 1529442 (S.D.N.Y. Mar. 31, 2020)..............9

*Kantemirov v. Goldine*,
  No. C05-01362 HRL, 2005 WL 1593533 (N.D. Cal. June 29, 2005) ..............11

*Kordich v. Salton, Inc.*,
  No. 05cv0202-LAB (RBB), 2005 WL 8173161 (S.D. Cal. July 5,
  2005) ........................................................................................................15

*Lauren Moshi, LLC v. Fuentes*,
  No. CV 18-6725-DMG, 2019 WL 8690213 (C.D. Cal. June 25, 2019)............14

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ............................................................... 19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................. 14

*Mana Wai', Inc. v. Amato Beverly Hills, LLC*,
    No. SACV 20-1091 ................................................................................ 4

*McGowan v. Weinstein*,
    No. 2:19-cv-09105-ODW, 2020 WL 7210934 (C.D. Cal. Dec. 7,
    2020) ..................................................................................................... 11

*Mtume v. Sony Music Entm't*,
    No. 18 Civ. 11747 (ER), 2020 WL 832814 (S.D.N.Y. Feb. 20, 2020)..17, 18, 19

*Naruto v. Slater*,
    888 F.3d 418 (9th Cir. 2018) ................................................................. 2

*Pacific Gas & Elec. Co. v. U.S.*,
    664 F.2d 1133 (9th Cir. 1981) ................................................................ 8

*Prince v. Universal Music Corp.*,
    No. 209CV1459FMCFFMX, 2009 WL 10672282 (C.D. Cal. May 18,
    2009) ..................................................................................................... 11

*Purely Driven Prod., LLC v. Chillovino, LLC*,
    171 F. Supp. 3d 1016 (C.D. Cal. 2016) ................................................. 15

*Ray Charles Found. v. Robinson*,
    795 F.3d 1109 (9th Cir. 2015) .................................................... 16, 17, 18

*Siegel v. Warner Bros. Entm't Inc.*,
    542 F. Supp. 2d 1098 (C.D. Cal. 2008) ........................................... 7, 8, 9

*Siegel v. Warner Bros. Entm't Inc.*,
    690 F. Supp. 2d 1048 (C.D. Cal. 2009) ................................................. 9

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) ........................................................... 4, 18

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...................................................... 4, 13, 19

*Stockroom Inc. v. XR LLC*,
  No. SACV 08-01046-JVS, 2009 WL 10671380 (C.D. Cal. July 17,
  2009) ......................................................................................................... 11

*Texas v. United States*,
  523 U.S. 296 (1998)................................................................................... 14

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ................................................................... 17

*Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*,
  No. 16-CV-02322-AB (SKX), 2018 WL 10307045 (C.D. Cal. Aug. 1,
  2018) ......................................................................................................... 20

*United States v. Bestfoods*,
  524 U.S. 51 (1998)..................................................................................... 20

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*,
  411 F. Supp. 3d 1070 (C.D. Cal. 2019) ............................................... 17, 19

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ................................................................... 17

**Statutes**

17 U.S.C. § 106 .................................................................................................. 4

17 U.S.C. § 114 ................................................................................................ 12

17 U.S.C. § 203 ......................................................................................... *passim*

17 U.S.C. § 301(a) ........................................................................................... 11

17 U.S.C. § 304(c)(4)(A) ............................................................................... 6, 7

28 U.S.C. § 2201(a) ......................................................................................... 14

**Other Authorities**

37 C.F.R. § 201.10............................................................................................. 7

37 C.F.R. § 201.10(e) ........................................................................................ 7

37 CFR § 201.10(b)(1)(iii)................................................................................. 9

iv

76 Fed. Reg. 32316, 32319 (June 6, 2011) ................................................. 8

Fed. R. Civ. Proc. 12 ................................................................ 1, 2, 4, 18

Fed. R. Civ. Proc. 15 ................................................................... 4

H.R. REP. No. 94-1476 (1976) ........................................................ 5

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.06
    (rev. ed. 2019) ................................................................... 8

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Warner Music Group Corp. ("WMGC"), Warner Records Inc. f/k/a Warner Bros. Records Inc. ("Warner"), and Rhino Entertainment Company ("Rhino," and together with WMGC and Warner, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the with respect to the Amended Complaint brought by Plaintiff Dwight Yoakam ("Plaintiff" or "Yoakam"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **INTRODUCTION**

This action relates to Section 203 of the Copyright Act of 1976, 17 U.S.C. § 203, which permits an author to terminate certain grants of copyright if specific conditions are met. Yoakam is a recording artist who sent Section 203 notices to Warner, purporting to terminate copyright transfers respecting various sound recordings and related music videos. In the Amended Complaint, Yoakam seeks a declaration regarding the validity and effect of his termination notices and asserts claims of copyright infringement and conversion as to certain of the works that are the subject of those notices.

Plaintiff's claims fail for multiple reasons. With respect to two of the works at issue – the singles entitled "Miner's Prayer" and "Honky Tonk Man" – Yoakam's assertion that he owns the copyright, which is a predicate to his infringement and conversion claims, fails as a matter of law. By Yoakam's own admission, his notice of termination respecting those works failed to comply with the statutory timing requirements set by Congress, and his suggestion that this Court can simply disregard his non-compliance as a "harmless scrivener's error" is legally baseless.

Yoakam's broader claim for conversion is also infirm. As an initial matter, it is axiomatic that conversion claims relating to copyrightable subject matter are preempted by the Copyright Act. For this reason alone, Yoakam's conversion claim should be dismissed. Nor can Yoakam avoid preemption by asserting that Defendants have exercised some amorphous "control" over the relevant copyrights independent of

1    the allegedly infringing acts.  This alternative theory is necessarily premised on

2    Defendants' *inaction* with respect to exploitation of the relevant works, and inaction

3    cannot support a conversion claim.

4         Plaintiff's claim for declaratory relief is premature as to virtually all of the

5    works that are the subject of his termination notices because, as Plaintiff concedes, the

6    alleged termination dates are as far out as 2030.  Claims relating to works with

7    termination dates that are a year or more away do not satisfy either the constitutional

8    or prudential ripeness standards necessary to establish a justiciable case or

9    controversy, and thus do not support invocation of this Court's subject matter

10   jurisdiction.  The declaratory relief claim should therefore be dismissed as to such

11   works.

12        Finally, there is no basis for Plaintiff's claim against WMGC.  Yoakam alleges

13   that WMGC "owns and controls" its subsidiaries Warner and Rhino, but this claim,

14   even if true, is insufficient to support liability against WMGC.  On the contrary, the

15   law is clear that a parent corporation is *not* liable for the acts of its subsidiaries merely

16   because of its corporate relationship to those subsidiaries.  Likewise, the conclusory

17   allegation that a Rhino employee was "acting at the direction of WMG" in connection

18   with a single e-mail to Yoakam's counsel does not remotely approach the minimum

19   standard necessary to state a claim against WMGC.  This Court should therefore

20   dismiss all claims against WMGC.

21                          **FACTUAL BACKGROUND**[1]

22        Yoakam is a songwriter and recording artist.  Beginning in 1986 and for several

23   years thereafter, Warner released sound recordings and music videos featuring

24   Yoakam's performances (collectively, the "Works").  The Amended Complaint

25   alleges that the Works were released pursuant to a recording agreement between

---

26   [1] On a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil
     Procedure, this Court is to accept the well-pleaded allegations of the [Amended?]
27   Complaint as true.  *See Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018).  By
     reciting Plaintiff's allegations in this motion, Defendants do not admit them or
28   otherwise concede their accuracy.

Warner and Yoakam dated November 22, 1985, and subsequent recording agreements entered into in 1990 and 1996, under which Warner acquired the exclusive rights to manufacture, market, and distribute the Works.  Am. Compl. ¶¶ 48-58, 85.

By letter dated February 5, 2019, Yoakam's counsel transmitted two documents entitled "Notice of Termination" to Warner – one for Yoakam's sound recordings and the other for his music videos (each a "Notice" and collectively with the later-transmitted documents described below, the "Notices").  *Id.* ¶ 60 & Ex. 1. The Notices purported to terminate Warner's copyright interest in certain of the Works, effective on a specific date in the future as to each of the Works; these "effective date[s] of termination" range from January 31, 2021 to March 23, 2028. *Id*. ¶ 62 & Ex. 1.

By a second letter dated March 26, 2021, Yoakam's counsel transmitted two more documents entitled "Notice of Termination" to Warner – one for additional sound recordings and the other for additional music videos (each also a "Notice"). *Id*. ¶ 72 & Ex. 2.  These subsequent Notices also purported to terminate Warner's copyright in additional Works, with "effective date[s] of termination" ranging from September 13, 2029 to November 3, 2030.  *Id.*  ¶ 73 & Ex. 2.

Plaintiff alleges that the earliest of the termination dates – January 31, 2021 – applies to two sound recordings that were originally released as singles, "Miner's Prayer" and "Honky Tonk Man" (collectively, the "Singles").  *Id.* ¶ 51 & Ex. 1.  On that date, in response to Yoakam's threat to sue Defendants for copyright infringement, an in-house attorney for Rhino advised Yoakam's counsel that the Notices were invalid as to the Singles.  *Id.* ¶ 69.  She further advised Yoakam's counsel, without prejudice to any argument or defense that Defendants may have, that Rhino had "taken down" the Singles – *i.e.*, had stopped exploiting them – such that there was no basis for an infringement claim.  *Id.*  And as to the Works other than the Singles, Rhino's in-house attorney advised that a decision had not yet been made as to how to proceed.  *Id.* ¶ 19.  Notwithstanding these facts, Yoakam commenced this

1    action on February 9, 2021.  Following a Local Rule 7-3 conference respecting

2    Defendants' planned motion to dismiss, *see* Dkt. No. 15, Yoakam filed the Amended

3    Complaint as of right pursuant to Rule 15 of the Federal Rules of Civil Procedure.

4    ## LEGAL STANDARD

5        A challenge to this Court's subject matter jurisdiction, including a challenge

6    based on ripeness, is brought under Rule 12(b)(1) of the Federal Rules of Civil

7    Procedure.  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  To survive

8    a motion to dismiss based on Rule 12(b)(1), the party asserting jurisdiction bears the

9    burden of establishing that the claims are ripe for adjudication under the Article III

10   case or controversy requirement.  *Chandler v. State Farm Mut. Auto. Ins. Co*., 598

11   F.3d 1115, 1121 (9th Cir. 2010).

12       To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

13   Civil Procedure, a pleading must contain sufficient facts that, if accepted as true, state

14   a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When

15   ruling on a Rule 12(b)(6) motion, this Court can disregard unreasonable inferences,

16   unwarranted deductions of fact, conclusory allegations, legal assertions or facts

17   contradicted by documents referenced in the complaint.  *See Steckman v. Hart*

18   *Brewing Inc*., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

19   ## ARGUMENT

20   **I.    PLAINTIFF DOES NOT OWN THE COPYRIGHT IN THE SINGLES**

21   **AND THUS FAILS TO STATE A CLAIM FOR COPYRIGHT**
     **INFRINGEMENT AS TO THOSE WORKS**

22       Plaintiff alleges that Defendants have infringed his claimed copyright in those

23   Works as to which the putative "effective date of termination" listed in the Notices has

24   passed.  "Plaintiffs must satisfy two requirements to present a prima facie case of

25   direct infringement: (1) they must show ownership of the allegedly infringed material

26   and (2) they must demonstrate that the alleged infringers violate at least one exclusive

27   right granted to copyright holders under 17 U.S.C. § 106."  *A&M Records, Inc. v.*

28   *Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Mana Wai', Inc. v. Amato*

*Beverly Hills, LLC*, No. SACV 20-1091 JVS (DFMx), 2020 WL 7247335, at *2 (C.D. Cal. Oct. 26, 2020) (same).  While Defendants dispute Plaintiff's infringement claim as to all such Works, Defendants bring this motion to dismiss solely as to the Singles, because even under the liberal pleading standard of the Federal Rules of Civil Procedure, Yoakam's claim of ownership of the copyright in the Singles fails as a matter of law.  Because Plaintiff cannot satisfy the threshold requirement of ownership, his copyright infringement claim must be dismissed as to the Singles.

Yoakam's allegation that he owns the copyright in the Singles is based on his contention that he validly terminated Warner's copyright interest in those works pursuant Section 203 of the Copyright Act.  Am. Compl. ¶ 109.  However, because the Notice as to the Singles fails to comply with the requirements of Section 203, Yoakam's purported termination of Warner's copyright interest – and his corresponding claim of ownership – necessarily fails.

Section 203 provides, in part:

> In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination under [certain specified conditions].

17 U.S.C. § 203(a).  However, Congress did not make the termination right self-effectuating; indeed, "[i]nstead of being automatic, . . . the termination of a transfer or license under section 203 would require *the serving of an advance notice within specified time limits and under specified conditions*."  H.R. REP. No. 94-1476, at 124 (1976) (emphasis added), *available at* https://www.copyright.gov/history/law/clrev_94-1476.pdf.  Specifically, an author who seeks to terminate a grant of copyright must, among other things:

- select an "effective date of termination" that falls within a prescribed statutory window, 17 U.S.C. § 203(a)(3);
- specify that "effective date of termination" in a notice that complies with the remaining requirements of Section 203, 17 U.S.C. § 203(a)(4); and

- critically here, serve the notice on the grantee "not less than two or more than ten years before" the effective date of termination that is stated in the notice, 17 U.S.C. § 203(a)(4)(A).

Here, Yoakam selected January 31, 2021 as the "effective date of termination" for the Singles, and stated that date in the applicable Notice. Am. Compl. Ex. 1 [Dkt. No. 16-1 at 7]. Section 203 thus required Yoakam to serve the Notice at least two years prior to that date, or no later than January 31, 2019. However, Yoakam's counsel did not transmit the Notice to Warner until February 5, 2019, several days after the latest date on which Yoakam could validly serve a termination notice as to the Singles, in light of the effective date of termination he had selected. Am. Compl. ¶ 60.

Plaintiff does not dispute – because he cannot – that he did not comply with the statutory requirements of Section 203. Instead, he offers two arguments in support of the proposition that this Court should override the requirements set by Congress and unilaterally forgive his noncompliance. Neither is supported by law.

First, Yoakam alleges that he "waited [an] extra five days" to file this action, as though the statutory notice window is optional or linked to the date a lawsuit is filed. It is not. The two-year service requirement of Section 203 is *expressly* and *exclusively* tied to the date of termination that is recited in the termination notice. Plaintiff's five-day delay in filing suit does not change the fact that the effective date of termination for the Singles in the Notice is January 31, 2021. Nor does Plaintiff's five-day delay in filing suit change the fact that the Notice was served less than two years prior to that effective date of termination. As another court noted, in describing a related timing requirement in 17 U.S.C. § 304(c)(4)(A):

> Once a termination effective date is chosen and listed in the notice, the [statutory timing requirement] is an unbendable rule with an inescapable effect …. That good cause may have existed for failing to structure the termination notices so as to sweep [certain works] within its reach does not obviate application of the rule itself.

1  *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1121-22 (C.D. Cal. 2008)

2  [hereinafter *Siegel I*], *rev'd in part on other grounds sub nom. Larson v. Warner Bros.*

3  *Entm't*, 504 F. App'x 586 (9th Cir. 2013).[2]  Yoakam's delay in suing did not bend the

4  "unbendable" rule, and the inescapable effect is that the Notice is invalid as to the

5  Singles.

6          Plaintiff's alternative argument is that the effective date that he chose and

7  recited in the Notice was a "harmless scrivener's error" that should simply be ignored

8  by this Court.  Am. Compl. ¶ 70.  Plaintiff appears to be invoking regulations adopted

9  by the Register of Copyright relating to the "form, content, and manner of service" of

10  termination notices.  *See* 17 U.S.C. § 203 (a)(4)(B); 37 C.F.R. § 201.10.  Those

11  regulations include a harmless error provision, which generally states that "[h]armless

12  errors in a notice [that do] not materially affect the adequacy of the information

13  required to serve the purposes of [Section 203] shall not render the notice invalid."  37

14  C.F.R. § 201.10(e).[3]

15          However, the relevant authorities are in accord that the harmless error doctrine

16  does *not* apply to a party's failure to comply with the *statutory* requirements of

17  Section 203.  As the Ninth Circuit has long noted, relying on venerable Supreme

18  Court precedent:

19          It is clear that "regulations, in order to be valid must be consistent with
          the statute under which they are promulgated," *United States v.*
20          *Larionoff*, 431 U.S. 864, 873, (1977), and the agency's "'interpretation'

21  _____

22  [2] Although *Siegel I* was addressing Section 304 of the Copyright Act (which applies to
    transfers executed before 1978, where Section 203 applies to transfers executed in or
    after 1978), the language of the relevant statutory sections is identical.  *Compare* 17
23  U.S.C. § 203(a)(4)(A) *with* 17 U.S.C. § 304(c)(4)(A).  Similarly, while *Siegel I* was
    addressing the five-year window in which a termination may be effective, the five-
24  year window requirement appears in the same section – indeed, the same sentence – as
    the two-year service requirement, and there is no basis in the *Siegel I* court's opinion
25  to apply a different standard to the two windows.

26  [3] The regulations go on to provide examples of harmless errors, including errors in the
    date of execution of the grant being terminated, the date of copyright registration, and
27  the registration number of the work, "if the errors were made in good faith and
    without any intention to deceive, mislead, or conceal relevant information."  37 C.F.R.
28  § 201.10(e).  Conspicuously absent is any reference to an error in the effective date of
    termination.

of the statute cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980).

*Pacific Gas & Elec. Co. v. U.S.*, 664 F.2d 1133, 1136 (9th Cir. 1981). Not surprisingly then, the Copyright Office, copyright scholars, and other courts have concluded that regulations governing "harmless error" do not – and cannot – overrule the timing requirements that Congress has adopted.

For example, in 2011, in addressing the scope of the "harmless error" doctrine, the Acting Register of Copyright noted that an error in identifying the date of execution of a grant may be harmless if the error does not result in a violation of the timing requirements of the statute. However, "if the wrong date is recited in the notice and a court subsequently determines that the actual date of execution was at a time *that places the effective date of termination or the date of service of the notice of termination outside of the statutory windows, the harmless error doctrine will be of no assistance*." 76 Fed. Reg. 32316, 32319 (June 6, 2011) (emphasis added). Likewise, the leading copyright treatise, *Nimmer on Copyright*, affirms the inapplicability of the doctrine to timing errors of the sort at issue here:

> Because the harmless error doctrine applies only to information regarding the adequacy of notice, it cannot be invoked to excuse timing errors, whereby termination is noticed for a date outside the proper five-year window or *service is effectuated more than ten years or less than two years before the date specified in the termination notice. In principle, even a variance of one day will doom an attempt at termination as untimely*, by analogy to strict application of governing statutes of limitation.

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.06 (rev. ed. 2019) (emphasis added). And the *Siegel I* court, which characterized the statutory timing requirements as "unbendable rule[s] with an inescapable effect," specifically held that compliance with such requirements is "not subject to the harmless error analysis." *Siegel I*, 542 F. Supp. 2d at 1118, 1121 (noting inapplicability of harmless error doctrine, even as to works that fell "just a few days outside the five-year effective window of plaintiffs' termination notices").

1    Plaintiff's interpolation of the word "scrivener" into his "harmless error"

2    argument is likely a reference to *Johansen v. Sony Music Entertainment Inc*., No. 19

3    CIV. 1094 (ER), 2020 WL 1529442 (S.D.N.Y. Mar. 31, 2020), where the court stated

4    that failure to serve a termination notice at least two years before the effective date of

5    termination might have resulted from a "scrivener's error," and "that the harmless

6    error rule may apply to excuse it." *Id.* at *5.  The only authority that the court

7    referenced was *Siegel v. Warner Bros. Entm't Inc*., 690 F. Supp. 2d 1048, 1052 (C.D.

8    Cal. 2009) [hereinafter *Siegel II*], which the *Johansen* court cited for the proposition

9    that "[t]he harmless error rule applies to . . . simple clerical or typographical errors."

10   *Johansen*, 2020 WL 1529442, at *5.

11       The *Johansen* court's ruling in this regard was clearly incorrect.  It ignores

12   established Supreme Court authority that an agency regulation cannot be inconsistent

13   with or supersede statutory requirements imposed by Congress.  *See supra* at 9.  It

14   ignores the Acting Register of Copyright's express acknowledgement that the

15   harmless error doctrine will be of "no assistance" if an error "places…the date of

16   service of the notice of termination outside of the statutory window[]."  *See supra* at 8.

17   It ignores the observation of the leading copyright treatise that "even a variance of one

18   day [from the statutory service requirements] will doom an attempt at termination as

19   untimely."  *Id.*  And perhaps most notably, it cites the *wrong* opinion in *Siegel*.  The

20   issue in *Siegel II*, which the *Johansen* court cited, related to compliance with the

21   *regulatory* requirements under 37 CFR § 201.10(b)(1)(iii).  The court in *Siegel II* did

22   not address errors related to the *statutory* timing requirements; that issue was

23   addressed in *Siegel I,* which characterized them as "unbending" and of "inescapable

24   effect."  *See supra* at 8, 10.  In short, neither *Johansen* nor any other authority upon

25   which Plaintiff may rely supports the notion that a violation of the statutory timing

26   requirements of 17 U.S.C. § 203 can be disregarded on the basis of an alleged

27   "scrivener's error."

28

9

Plaintiff is not left without recourse.  He could serve a new putative notice of termination that complies with the statutory timing requirements (*i.e.*, service between two and ten years before the effective date of termination stated in the notice).  *See, e.g.*, *Hallstrom v. Tillamook Cty*., 493 U.S. 20, 28, 32 (1989) (requiring "strict compliance with statutory [notice timing] conditions" because "[a]bsent a clearly expressed legislative intention to the contrary, the words of the statute are conclusive," but noting that plaintiffs "remain free to give notice and file their suit in compliance with the statute") (internal quotation omitted).  But whatever Plaintiff's recourse, it is not presently against Defendants.[4]

In sum, Plaintiff did not comply with the requirements of Section 203, and therefore cannot claim the benefits of or rights under that statute.  Because he has not validly terminated any grant of copyright to Defendants, he is not the owner of the copyright in the Singles.  His infringement claim as to the Singles should therefore be dismissed.

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION

Plaintiff's claim for conversion fails as a matter of law.  First, Plaintiff's claim is preempted by the Copyright Act.  Second, as to the Singles in particular, Plaintiff is not the owner of the Works and cannot allege conversion of property he does not own.  Lastly, Plaintiff's "alternative" theory is based on Defendants' alleged *non*-exploitation of the Works, and thus fails to allege that Defendants engaged in a "wrongful act or disposition of property rights," as is required to state a claim.

### A.   <u>Plaintiff's Conversion Claim Is Preempted By The Copyright Act.</u>

A claim is preempted by the Copyright Act if "(1) the rights asserted under state law are equivalent to those protected by the Copyright Act; and (2) the work involved

---

[4] Plaintiff alleges that Defendants "waited in bad faith until the last possible moment to reject the Termination Notices for the Singles." Am. Compl. ¶ 70.  While Defendants vigorously dispute this characterization, it is irrelevant.  The statute does not impose an obligation to respond to putative termination notices in any particular time frame (or at all), and Defendants are not in any event responsible to ensure that Plaintiff – who is represented by no less than two law firms – complies with statutory timing requirements.

fall[s] within the subject matter of the Copyright Act." *McGowan v. Weinstein,* No. 2:19-cv-09105-ODW (GJSx), 2020 WL 7210934, at *13 (C.D. Cal. Dec. 7, 2020) (internal quotations omitted); *see also* 17 U.S.C. § 301(a) (preempting "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright").

Here, there is no dispute that both of the above elements are satisfied. Numerous courts have held that the rights asserted under a conversion claim are equivalent to those protected under copyright, and that conversion claims are therefore preempted. *See, e.g.*, *Zito v. Steeplechase Films*, Inc., 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (concluding that plaintiff's conversion claim was preempted because it was "based on the same facts as his infringement claim"); *Stockroom Inc. v. XR LLC*, No. SACV 08-01046-JVS (RNBx), 2009 WL 10671380, at *7 (C.D. Cal. July 17, 2009) (finding conversion claim preempted: "[Plaintiff]'s claim for conversion is based on the same facts as the copyright infringement claim."); *Prince v. Universal Music Corp.*, No. 209CV1459FMCFFMX, 2009 WL 10672282, at *4 (C.D. Cal. May 18, 2009) (conversion claim preempted: allegation that defendants "wrongfully exercised dominion and control over" plaintiffs' property was not qualitatively different than infringement claim); *Kantemirov v. Goldine*, No. C05-01362 HRL, 2005 WL 1593533, at *5-6 (N.D. Cal. June 29, 2005) (conversion claim based on allegation that defendant "unfairly benefitted from" unauthorized use of plaintiff's website design preempted by Copyright Act). This is true even to the extent that Plaintiff contends that his right to profit from his claimed works is being compromised (*see* Am. Compl. ¶¶ 131, 134, 135). *See, e.g.*, *Worth v. Universal Pictures*, Inc., 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) (a conversion claim seeking profits derived from exploitation of a copyrighted work is "subsumed within federal copyright law" and is thus preempted). As to the second element, Yoakam does not dispute – because he

11

cannot – that sound recordings fall within the subject matter of the Copyright Act.  *See* 17 U.S.C. § 114.

Here, the facts purportedly underlying Yoakam's conversion claim are effectively identical to his copyright claim, as are the rights he seeks to protect.  *See* Am. Compl. ¶ 126 (incorporating copyright infringement allegations in conversion claim); *compare* Am. Compl. ¶¶ 130-136 *with* ¶¶ 119-124.  His conversion claim is therefore preempted.  *See, e.g.*, *Brown v. Beatty*, No. CV 16-7666 PA (GJSX), 2017 WL 6940518, at *6 (C.D. Cal. Nov. 9, 2017) (claim that defendant "hijacked control and ownership" of plaintiff's creative work and converted it "for her own benefit and gain" preempted).

## B.   Plaintiff Fails To State A Claim For Conversion.

In an effort to avoid preemption, Plaintiff maintains that he is bringing his conversion claim "in the alternative," in the event "Defendants' control over Mr. Yoakam's copyrights is not covered by the Copyright Act."  But if that alleged "control over Mr. Yoakam's [alleged] copyrights" is not a violation of copyright law, then it cannot constitute conversion either.  Thus, even if Plaintiff's conversion claim were not preempted, it should be dismissed for failure to state a claim.

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).  As to the Singles, Plaintiff's claim of ownership is based entirely upon his defective notice of termination as to those Works.  *See supra* § I.  Because Plaintiff did not comply with the statutory requirements to terminate Warner's ownership of the copyright in the Singles, Plaintiff's conversion claim as to those Works necessarily fails as a matter of law.

More broadly, however, Plaintiff's conversion claim should be dismissed because he fails to adequately allege any "wrongful act or disposition of property rights" by Defendants.  Plaintiff's putative conversion claim is replete with conclusory

allegations or legal assertions.  These include Plaintiff's conclusory assertion that Defendants have "claim[ed] ownership of the sound recordings contained within the First Album" (Am. Compl. ¶ 112), that Defendants have "interfered with [Plaintiff's] possession and enforcement of copyrights in the Singles" (*id.* ¶ 130), that Defendants have "refus[ed] to allow [Plaintiff] to exploit [the Singles and the First Album] himself" (*id.* ¶ 131), and that Defendants have "prevented [Plaintiff] from accessing and exploiting his exclusive copyrights" (*id.* ¶ 132).  Such allegations are properly disregarded on a motion to dismiss.  *Steckman*, 143 F.3d at 1295-96.

But even if these allegations were well-pleaded (which they are not), they do not state a claim for conversion.  It is well-established that "[c]onversion requires affirmative action to deprive another of property, not a lack of action."  *Archer v. Coinbase, Inc.*, 53 Cal. App. 5th 266, 276-77 (2020) (affirming grant of summary judgment in favor of defendant that "took no affirmative action to deprive plaintiff of a property right") (internal quotations and citation omitted).  Plaintiff's conversion claim is premised on Defendants' "removing the Singles and the First Album from market" *prior* to the putative effective date of termination, Am. Compl. ¶ 131, followed by Defendants' alleged "refus[al] to acknowledge" Plaintiff's claimed rights in those Works, *id.* at ¶¶ 17, 18, 20, 21, 22, 131.  Under the authority cited above, Defendants' alleged *lack* of action – their *non*-exploitation and *non*-acknowledgement of Plaintiff's alleged rights – does not support a conversion claim.  This claim should therefore be dismissed.

## III.   PLAINTIFF'S DECLARATORY RELIEF CLAIM IS NOT RIPE AS TO THE MAJORITY OF WORKS LISTED IN THE NOTICES

The Notices collectively list twenty-four separate works, each with its own putative effective date of termination.  Four of those works have putative effective dates of termination in 2021, and the remaining twenty (the "Later Works") have putative effective dates of termination ranging from 2022 through 2030.  Am. Compl. Exs. 1 & 2.  In his declaratory relief claim, Plaintiff seeks a declaration that the

Notices are "effective" as to all the works listed, and that "[t]he copyrights contained within the . . . Notices automatically return to [him] as of each works' respective effective termination date."  Am. Compl. ¶ 101.

In order to invoke this Court's jurisdiction under the Declaratory Judgment Act, however, Plaintiff must establish that a "case of actual controversy" exists between the parties, 28 U.S.C. § 2201(a).  Among other things, a claim for declaratory relief must be "ripe," which involves both constitutional and prudential considerations.  Because Plaintiff cannot establish either "constitutional ripeness" or "prudential ripeness" as to the Later Works, he cannot meet the "actual controversy" requirement.  Defendants therefore seek to dismiss Plaintiff's declaratory claim with respect to works with an alleged "effective date of termination" in or after 2022.  *See Lauren Moshi, LLC v. Fuentes*, No. CV 18-6725-DMG (JPRx), 2019 WL 8690213, at *4 (C.D. Cal. June 25, 2019) (granting motion to dismiss "one aspect of [plaintiff's] multi-faceted request for declaratory relief" as outside the court's subject matter jurisdiction, because "[p]ermitting declaratory relief plaintiffs to evade jurisdictional review of nonjusticiable claims by burying those claims beneath other justiciable claims within a single cause of action would undermine federal courts' ability to police their own jurisdiction").

A.    **Plaintiff Cannot Establish Constitutional Ripeness.**

Constitutional ripeness requires the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations, citations, and footnote omitted).  Phrased differently, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).  Judged against this standard, Yoakam's claims respecting the Later Works are not constitutionally ripe.

It is undisputed that Warner has not taken a position respecting the validity of the Notices as to the Later Works, Am. Compl. ¶ 19, nor is there any statutory or other requirement that it do so (much less that it do so years before the putative effective date of termination).  As courts have routinely recognized in similar contexts, the absence of a present, live dispute between the parties precludes a finding of constitutional ripeness.  For example, in *Purely Driven Prod., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016 (C.D. Cal. 2016), after defendants commenced a proceeding in the United States Patent and Trademark Office opposing plaintiffs' application to register a given trademark, plaintiffs filed a lawsuit seeking a declaration that the trademark at issue did not infringe defendants' rights.  The court dismissed the lawsuit on constitutional ripeness grounds, noting that defendants had not "threatened to file or filed any infringement claims against Plaintiffs," and had "disclaimed threatening Plaintiffs with an infringement action."  *Id.* at 1019.  Because any dispute between the parties was not "of sufficient immediacy and reality to warrant the issue of a declaratory judgment," the constitutional standard of an "actual controversy" was not satisfied.  *Id.* at 1018, 1019 (internal quotations and citations omitted).

Similarly, in *Kordich v. Salton, Inc.*, No. 05cv0202-LAB (RBB), 2005 WL 8173161 (S.D. Cal. July 5, 2005), plaintiff claimed that a non-compete clause that he had agreed to as part of the sale of his trademark imposed an "unenforceable hardship" on him and should be invalidated.  *Id*. at \*4.  In finding that plaintiff's claim was not constitutionally ripe, the court noted that plaintiff "alleges no facts to suggest [the defendant] has already breached the Agreement or will imminently do so" or that any "violative act" of the agreement had yet occurred.  *Id*.  Because "[n]o course of conduct [was] alleged that w[ould] result in 'imminent' and 'inevitable' litigation," plaintiff's claim was "too speculative" to meet the constitutional standard.  *Id*. at \*5.  The same analysis applies with equal force here – because Warner has not yet taken a position with respect to the enforceability or effect of the Notices as to the Later

15

1   Works, any dispute between the parties is purely speculative and not certain to result

2   in "imminent" and "inevitable" litigation.

3        Plaintiff may seek to rely upon the Ninth Circuit's decision in *Ray Charles*

4   *Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015), another copyright termination

5   case, but that decision is clearly distinguishable.  In *Ray Charles*, the court found the

6   constitutional ripeness requirement was satisfied when the party seeking declaratory

7   relief was the *non*-terminating party, which had disputed the validity of the

8   termination notices that it had received.  *Id*. at 1111.  Because the non-terminating

9   party had affirmatively challenged the validity of the notices, the court found that a

10   live dispute existed between the parties that was "definite and concrete, not

11   hypothetical or abstract."  *See id*. at 1116-17 (internal quotations and citation omitted).

12   Here, in contrast, Defendants have taken no position as to the validity of the Notices

13   as to the Later Works, such that, at present, no actual controversy exists.

14        Plaintiff also alleges that Defendants' purported "refusal of Mr. Yoakam's

15   rights" has "thwarted Mr. Yoakam's ability to shop and sell the rights to his works as

16   of the effective termination date."  Am. Compl. ¶ 96.  Setting aside that Warner has

17   not "refus[ed]" Plaintiff's claimed rights with respect to the Later Works – it simply

18   has not yet taken a position as to those works – Plaintiff is not entitled to "shop and

19   sell" the rights to those works at this time in any event.  Section 203(b)(4) of the

20   Copyright Act *precludes* Plaintiff from entering into a further grant, or an agreement

21   to make a further grant, with any party *other than* Warner until after the effective date

22   of termination.  *See* 17 U.S.C. § 203(b)(4).  Thus, Plaintiff's allegations that

23   Defendants' actions are "preventing Mr. Yoakam from selling or otherwise exploiting

24   [the Later Works]," Am. Compl. ¶ 19, that Defendants are causing Plaintiff's

25   "inability to exploit the [Later Works]," *id.* ¶ 97, and that declaratory relief would

26   allow Yoakam to "finally exploit" the Later Works, *id.* ¶ 21, are simply baseless.  It is

27   Section 203 that precludes Plaintiff's present exploitation of the Later Works, and

28   declaratory relief will not change that fact.  In short, Plaintiff's claimed injury – like

his broader declaratory relief claim – is not "real and concrete," but is instead "speculative and hypothetical." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000); *cf. Ray Charles*, 795 F.3d at 1117 (finding constitutional ripeness satisfied where allegedly invalid termination notices caused *present* harm to the ability of the current owner to exploit the copyrighted works). The declaratory relief claim as to the Later Works is therefore not constitutionally ripe.

**B.   Plaintiff Cannot Establish Prudential Ripeness.**

A claim for declaratory relief is also subject to prudential ripeness considerations. *See e.g.*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) ("Even where jurisdiction is present in the Article III sense, courts are obliged to dismiss a case when considerations of prudential ripeness are not satisfied."). The prudential ripeness analysis is guided by two considerations: "(1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development." *Winebarger v. Pennsylvania Higher Educ. Assistance Agency,* 411 F. Supp. 3d 1070, 1088 (C.D. Cal. 2019) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 201 (1983)); *see also Bank of New York Mellon v. City of Richmond*, No. C 13-03664 CRB, 2013 WL 5955699, at *4–5 (N.D. Cal. Nov. 6, 2013) (concluding that the threat of possible eminent domain was "not fit for review because the existence of a controversy depend[ed] on a factual scenario that might never materialize").

The prudential ripeness analysis of the court in *Mtume v. Sony Music Entm't*, No. 18 Civ. 11747 (ER), 2020 WL 832814 (S.D.N.Y. Feb. 20, 2020), is directly on point. In *Mtume*, plaintiff sought a declaration that the termination notice he had sent to defendant Sony was valid. *Id*. at *3. Sony argued that the request for declaratory relief was unripe because it had not taken a position as to the validity of the notice. *Id*.

While the court found that the plaintiff had met the constitutional ripeness requirement,[5] prudential ripeness considerations dictated that "the issue may be better resolved at a later time, when Sony has had an opportunity to articulate its position towards the works [in dispute]."  *Id*. at *5.  As the court noted, "[t]here is . . . no reason for this Court to prematurely answer questions that may never be raised with respect to this particular work," including "[b]ecause further factual development may inform the Court's decision."  *Id.* at *6.  The court further observed that plaintiff would not "be significantly harmed by the adjudication of this matter at a later time, if and when Sony responds to" the notice at issue, in light of the fact – discussed above – that terminating parties are "prohibited from entering into any binding agreements regarding the work" before the effective date of termination.  *Id.* (citing 17 U.S.C. § 203(b)(4)).  For all of these reasons, the court dismissed the declaratory relief claim.

This analysis is directly applicable to the present case.  Warner has taken a position on the invalidity of the Notices only as to the Singles, based on facts unique to those works (*i.e.*, the noncompliance with the statutory timing requirements respecting service).  Unlike Sony in *Mtume*, it has not taken a position on any broader issue affecting the Later Works.  Moreover, Plaintiff implicitly concedes that certain of the Later Works are governed by a *different* recording agreement than the Singles, namely, a recording agreement entered into in 1990 (the "1990 Agreement").  *See* Am. Compl. ¶ 58; *see also* Declaration of Melissa Battino ("Battino Decl.") ¶¶ 2-3.[6] While Plaintiff alleges that the agreements contain the "exact same language" in one

---

[5] As with *Ray Charles*, the *Mtume* court's finding regarding constitutional ripeness is distinguishable from the present case.  In *Mtume*, while defendant had not taken a position with respect to the specific termination notice at issue in the declaratory relief claim, defendant *had* previously responded to another termination notice involving the same agreement, and had taken a position as to a key issue relating to that agreement that was implicated by the declaratory relief claim.  *See Mtume* at *4.  Thus, unlike here, there was a specific dispute between the parties that had been joined.

[6] A court may consider documents outside the pleadings in ruling on a motion brought pursuant to Rule 12(b)(1).  *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  In addition to the 1990 Agreement, Plaintiff also references a "1996 Agreement"; however, none of the Works identified in the Notices is governed by that agreement.  Battino Decl. ¶¶ 2-3.

respect, the conclusory allegation is *refuted* by the actual language of the 1990 Agreement, which materially differs both as to the specific provision cited by Plaintiff, as well as in multiple other respects. *See* Battino Decl. ¶¶ 3-4; *see also Steckman*, 143 F.3d at 1295-96 (court may disregard conclusory allegations that are contradicted by documents referenced in a complaint). Declaratory relief as to the Later Works recorded under the 1990 Agreement, many years in advance of their putative effective dates of termination, is therefore particularly premature. In any event, as to *all* of the Later Works, the words of the court in *Mtume* ring true:

> Business, legal, or other reasons may counsel that the instant conflict between Mtume and Sony be resolved without court intervention. Alternatively, Sony may challenge the validity of the [termination notice at issue] for completely unrelated reasons, in which case a decision by this Court now would have done little to resolve the conflict and would be purely advisory in nature.

*Mtume* at 2020 WL 832814, at *5; *see also Winebarger*, 411 F. Supp. 3d at 1088 (concluding that plaintiffs' concerns about their inability to search for other employment positions "five to seven years in the future are entirely speculative" because that possibility depended on contingencies that may or may not happen, and dismissing declaratory relief claim). For these reasons, Plaintiff's declaratory relief claim should be dismissed as to the Later Works.

## C.  This Court Should Exercise Its Discretion To Decline To Hear Plaintiff's Declaratory Relief Claim.

Even if this Court finds that the Amended Complaint pleads an actual controversy, it may still dismiss the declaratory relief claim. It is well established that "[f]ederal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008). The same ripeness considerations discussed above – even if they satisfy constitutional requirements – militate against consideration of Plaintiff's declaratory relief claim as to the Later Works at this time; that claim should therefore be dismissed for this reason as well.

## IV.   ALL CLAIMS AGAINST WMGC SHOULD BE DISMISSED

The claims in this case allegedly stem from recording agreements between Plaintiff and Warner, Am. Compl. ¶¶ 48, 49, 58, termination notices that Plaintiff sent to Warner, *id.* ¶¶ 60, 72 & Exs. 1 & 2, and communications between Plaintiff's counsel and an in-house attorney at Rhino, *id.* ¶¶ 63-69.   WMGC is not a party to the recording agreements at issue, was not the addressee of the termination notices, and was not involved in the communications at issue in the Amended Complaint.[7]   On the contrary, the only allegations directed at WMGC (and the only ostensible bases for WMGC's liability) are Plaintiff's assertions that "[a]ll Defendants appear to share an office in Los Angeles, California," that WMGC ostensibly "owns and controls Warner and Rhino," and that a Rhino employee was ostensibly acting "at the direction of WMG[C]" in sending a single e-mail to Plaintiff's counsel.  Am. Compl. ¶¶ 31, 40-41; *see also id.* ¶ 18 (alleging that WMGC earned money from Plaintiff's works "through its subsidiaries Warner and Rhino").

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Likewise, with respect to claims for copyright infringement, it is axiomatic that "[a] parent corporation cannot be held liable for the infringing actions of its subsidiary unless there is a substantial and continuing connection between the two with respect to the infringing acts." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519–20 (9th Cir. 1985); *see also Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*, No. 16-CV-02322-AB (SKX), 2018 WL 10307045, at *8 (C.D. Cal. Aug. 1, 2018) ("A defendant's ownership interest in a separate corporate entity cannot, on its own, establish liability

---

[7] Although Plaintiff alleges in passing that the first e-mail response regarding the Notices came from Patti Coleman, whom he (incorrectly) alleges is with WMGC, Am. Compl. ¶ 39, he does not quote from or rely upon that communication.  Instead, the only substantive allegations regarding communication between the parties relate to statements made by a representative of Rhino.  *See* Am. Compl. ¶¶ 63-69.

for the separate entity's infringement."), r*ev'd on other grounds*, 959 F.3d 1194 (9th Cir. 2020).

Judged against these standards, the allegations in the Amended Complaint fail to support imposition of liability against WMGC.  Neither a common office address nor the conclusory allegation that WMGC "owns and controls" its subsidiaries is sufficient, and the cursory (and unsupported) assertion that a Rhino employee was "acting at the direction of WMG[C]" in sending a single e-mail to Plaintiff's counsel, Am. Compl. ¶ 31, falls far short of the "substantial and continuing connection" with respect to "infringing acts" that is necessary to state a claim against WMGC.  WMGC does not belong in this case, and all claims against it should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss (1) the copyright infringement cause of action as to the Singles, (2) the conversion cause of action for failure to state a claim, (3) the declaratory relief claim as to the Later Works for lack of subject matter jurisdiction, and (4) all claims against WMGC.

Dated:  April 12, 2021                       Respectfully Submitted

                                             SIDLEY AUSTIN LLP


                                             By:   /s/ *Rollin A. Ransom*
                                             Rollin A. Ransom
                                             Attorneys for Defendants
                                             WARNER MUSIC GROUP CORP.,
                                             WARNER RECORDS  INC., and
                                             RHINO ENTERTAINMENT
                                             COMPANY