Richard S. Busch (SBN 319881)
E-Mail: *rbusch@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dwight Yoakam, an individual.<br><br>PLAINTIFF,<br><br>vs.<br><br>Warner Music Group Corp., a Delaware Corporation; Warner Records, Inc., a Delaware Corporation; and Rhino Entertainment Company, a Delaware Corporation.<br><br>DEFENDANTS. | Case No.: 2:21-cv-1165 SVW (MAAx)<br><br>**PLAINTIFF DWIGHT YOAKAM'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS WARNER MUSIC GROUP CORP., WARNER RECORDS INC., AND RHINO ENTERTAINMENT COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**<br><br>Hearing Date: May 24, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom:    10A |

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ........................................................................... 1

II.     LEGAL STANDARD .................................................................... 4

III.    ARGUMENT .................................................................................. 5

   A. Plaintiff Owns the Copyright in the Singles, His Claim for Copyright Infringement Stands, And Relevant Case Law Directly on Point Supports Plaintiff.......................................................................... 5

   B. Plaintiff States a Claim for Conversion............................................ 9

      1.     Plaintiff's Conversion Claim Is Only Preempted by The Copyright Act So Far as The Copyright Act Rules............................ 10

      2.     Plaintiff States a Claim for Conversion. ............................. 12

   C. Plaintiff's Declaratory Relief Claim Is Ripe ................................. 14

      1.     Plaintiff Has Established Constitutional Ripeness ............................ 15

      2.     Plaintiff Has Established Prudential Ripeness ................................... 19

      3.     This Court Should Exercise Its Discretion to Hear Plaintiff's Declaratory Relief Claim ................................................................. 22

   D. All Claims Against WMGC Should Proceed ................................ 23

IV.     CONCLUSION ........................................................................... 25

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adler v. Bd. of Educ.*,

    342 U.S. 485 (1952) ...................................................................... 19

*Archer v. Coinbase, Inc.*,

    53 Cal. App. 5th 266 (2020) .......................................................... 13

*Baldwin v. Emi Feist Catalog, Inc*,

    No. 11-81354-CIV-MARRA/BRAN, 2012 U.S. Dist. LEXIS 201053 (S.D. Fla.

    Dec. 10, 2012*)* ............................................................................. 20

*Balistreri v. Pacifica Police Department*,

    901 F.2d 696 (9th Cir. 1988) .......................................................... 5

*Burlesci v. Petersen*

    (1998) 68 Cal.App.4th 1062 ......................................................... 12

*Cal. Pro-Life Council, Inc. v. Getman*,

    328 F.3d 1088 (9th Cir. 2003) ...................................................... 16

*Century of Progress Prods. v. Vivendi S.A.*,

    2018 U.S. Dist. LEXIS 153316 (C.D. Cal August 28, 2018).......... 15, 17, 18, 19

*Cerra v. Blackstone*

    (1985) 172 Cal.App.3d 604 .......................................................... 12

*CRS Recovery, Inc. v. Laxton*,

    600 F.3d 1138, 1145, 2010 U.S. App. LEXIS 7050 (9th Cir. 2010)................ 12

*Dow Jones & Co v. Harrods Ltd.*,

    346 F.3d 357 (2d Cir. 2003) ......................................................... 22

*Foster v. Sexton*,

    61 Cal. App. 5th 998 (2021) .......................................................... 12, 13

*Gerritsen v. Warner Bros. Entm't*,

    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........................................ 24

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Johansen v. Sony Music Entm't Inc.*, 2020 U.S. Dist. LEXIS 56675 (S.D.N.Y. Mar. 31, 2020) ........................................................................................ 2, 7, 8

*Masimo Corp. v. Sotera Wireless*,
No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 81873 (S.D. Cal. May 8, 2020) ................................................................................................... 24

*MedImmune, Inc. v. Genetech, Inc.*,
549 U.S. 118 (2007) ....................................................................... 22

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......................................... 15

*Mohasco Corp. v. Silver*,
447 U.S. 807 (1980) ......................................................................... 7

*Railway Mail Ass'n v. Corsi*,
326 U.S. 88 (1945) ........................................................................ 15

*Ray Charles Found. v. Robinson*,
795 F.3d 1109 (9th Cir. 2015) ............................................... 15, 17

*Regent Alliance Ltd. v. Rabizadeh*
(2014) 231 Cal.App.4th 1177 ....................................................... 12

*Roman Catholic Archbishop of San Francisco v. Superior Court*,
15 Cal. App. 3d 405 (1971) .......................................................... 24

*San Diego County Gun Rights Comm. v. Reno*,
98 F.3d 1121 (9th Cir. 1996) ....................................................... 19

*Siegel v. Warner Bros. Entm't*,
690 F. Supp. 2d 1048 (C.D. Cal. 2009) .......................................... 6

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998) ..................................................... 14

*Stillwater Ltd. v. Basilotta*,

iii

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

No. CV 16-1895 FMO (SHx), 2017 U.S. Dist. LEXIS 170176 (C.D. Cal. March 17, 2017) ................................................................................... 2, 8, 9

*Stockroom Inc. v. XR LLC,*
No. SACV 08-01046-JVS (RNBx), 2009 U.S. Dist. LEXIS 148486 (C.D. Cal. July 17, 2009) ............................................................................. 10

*Thomas v. Anchorage Equal Rights Comn'n,*
220 F.3d 1134 (9th Cir. 2000) .................................................... 15, 19

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
99 Cal. App. 4th 228 (2002) ............................................................ 24

*Voris v. Lampert*
(2019) 7 Cal.5th 1141 ....................................................................... 12

*Wady v. Provident Life and Accident Ins. Co. of America*,
216 F. Supp. 2d 1060 (C.D. Cal. 2002) ........................................... 24

*Waite v. UMG Recordings, Inc.*,
477 F. Supp. 3d 265 (S.D.N.Y. 2020) ............................................. 22

*Winebarger v. Pa. Higher Educ. Assistance Agency*,
411 F. Supp. 3d 1070 (C.D.C.A. 2010) .............................................. 4

*Worth v. Universal Pictures, Inc.*,
5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) ......................................... 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
433 F.3d 1199 (9th Cir. 2006) .......................................................... 19

<u>Statutes</u>
17 U.S.C. § 203(a)(4)(B) ........................................................................ 8
17 U.S.C. § 301 ............................................................................... 9, 10
37 C.F.R. § 201.10(e)(2) ......................................................................... 7
42 F.R. 45916 ........................................................................................ 6

iv

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

76 Fed. Reg. 32316 ................................................................................................ 6

Other Authorities

CACI No. 2100 .................................................................................................... 12

Rules

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 4

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Dwight Yoakam ("Plaintiff" or "Mr. Yoakam") respectfully submits this memorandum of law in opposition to the motion to dismiss brought by Defendants Warner Music Group Corp. ("WMGC"), Warner Records Inc. f/k/a Warner Bros. Records Inc. ("Warner"), and Rhino Entertainment Company ("Rhino," collectively with WMGC and Warner, "Defendants"). [Dkt. No. 17].

## I.   INTRODUCTION

Defendants move to dismiss Plaintiff's Amended Complaint in a blatant attempt to wrongfully prevent Mr. Yoakam from recapturing the sound recordings that he created and the copyrights that he, by law, now owns. [Dkt. No. 16]. Mr. Yoakam, one of the most iconic country music stars in history, waited patiently for more than 30 years to be able to reclaim control of his work. The Copyright Act specifically grants this right to authors to recapture their intellectual property deciding that 35 years is enough time for assignees to enjoy and exercise dominion and control over another person's life's work. Despite the clear intentions of the law, major music companies like the Defendants are unwilling to conform to the law, instead fighting tooth and nail to maintain possession of copyrights they have already exploited for decades.

Defendants base their motion to dismiss on the following grounds: (1) a typographical harmless error renders the termination notices as to two singles ineffective; (2) refusing to return property to its owner does not constitute conversion; and (3) only portions of the Termination Notices are ripe.  Defendants are wrong on each point.

First, Defendants contend that a typographical harmless error, a miscalculation by five days, is fatal to Mr. Yoakam's termination of the singles "Honky Tonk Man" and "Miner's Prayer" (the "Singles"). This miscalculation is, however, a harmless error, and does not render the termination notices ineffective.

1

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Furthermore, there has been no miscalculation or error of any kind within the Termination Notices as it relates to Mr. Yoakam's First Warner Album, which also includes tracks of the Singles, rendering the issue effectively moot, and yet Defendants still refuse to recognize the First Warner Album's termination notice. The harmless scrivener's error is an empty argument and distraction from their real argument, that Defendants just do not want to return the copyrights to sound recordings to recording artists. In fact, as discussed fully below, federal courts addressing almost identical situations have found similar miscalculations harmless and have upheld the effectiveness of the Termination Notices. *See Johansen v. Sony Music*, 2020 U.S. Dist. LEXIS 56675, *13 (S.D.N.Y. March 31, 2020); *Stillwater Ltd. v. Basilotta*, 2017 U.S. Dist. LEXIS 170176, *12 (C.D.C.A. March 17, 2017).

Furthermore Defendants should be estopped from claiming the notices on the Singles are ineffective. Instead of alerting Plaintiff to any issue with the Initial Termination Notices on the Singles, Defendants waited until the effective termination date of the Singles as it is listed within the Initial Termination Notices to tell Plaintiff that they would be rejecting the notice due to the counting error. Am. Comp. ¶¶ 69-71. Even though Plaintiff has made clear that the effective termination date of the Singles has changed to February 5, 2021, from January 31, 2021, to give Defendants their full notice period, Defendants maintain that they were not required to return these copyrights on these Singles to Mr. Yoakam. Am. Comp. ¶¶ 70, 88, 90.

This argument is morally baseless. Defendants manipulate a law, meant to protect authors while giving fair notice to grantees, to enrich themselves at the expense of Mr. Yoakam. Defendants were put on notice and understood the situation, yet waited in bad faith to tell Mr. Yoakam that they were rejecting his notice until the latest date they legally could, so that Mr. Yoakam would have to wait as long as possible should he need to send a new notice for these works.

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Second, Defendants claim that removing Mr. Yoakam's works from the marketplace avoids the infringement claims. [Dkt. 17; 3:25-26]. Defendants therefore claim that preventing a copyright owner from utilizing any of his exclusive rights granted by the Copyright Act is not copyright infringement. Mr. Yoakam, however, pleads that Defendants did not entirely remove the Singles from distribution, and has committed copyright infringement as a result. Am. Compl. ¶¶ 111, 115-117.

Nonetheless, Defendants cannot have it both ways: Defendants also contend that conversion, the act of wrongfully converting property owned by another and resulting in damage, is preempted by the Copyright Act because Mr. Yoakam's ownership right is equivalent to rights under the Copyright Act. Plaintiff does not bring his conversion claim concerning Defendants' continued exploitation of his works as detailed within the Amended Complaint, nor concerning Defendants' failed attempts to remove works from the marketplace, but instead solely as it concerns Defendants' wrongful possession, and dominion and control over Mr. Yoakam's copyrights. Either Defendants refusal to return Mr. Yoakam his copyrights is a violation of Mr. Yoakam's exclusive rights under the Copyright Act, thus constituting copyright infringement, or it is not preempted by the Copyright Act and Mr. Yoakam can bring a claim for conversion.

Further, Defendants argue that Plaintiff has failed to state a claim for conversion, arguing that Plaintiff has not stated a sufficient claim because Defendants have not taken Plaintiff's property, merely refused to return it upon demand. Defendants' reliance on mischaracterized law to justify this action fails, as the law is clear that failing to return property upon demand is conversion.

Finally, instead of allowing the Court to rule on the Termination Notices as a whole, Defendants argue that not all of the works within the notices are ripe and that instead these notices should be spliced into numerous lawsuits for many years to

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  come. Plaintiff whole-heartedly disagrees, as this Court has the authority to grant
2  declaratory relief as to all of the works within the Termination Notices, and as all
3  stem from the same notices, all can and should be ruled on together.

4  **II.   LEGAL STANDARD**

5     In deciding a motion to dismiss, a court accepts as true the allegations of the
6  Complaint and must construe those allegations in the light most favorable to the
7  nonmoving party. *Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp.
8  3d 1070, 1082 (C.D.C.A. 2010).

9     A party asserting a motion to dismiss under Federal Rule of Civil Procedure
10  12(b)(1) challenging the Court's subject-matter jurisdiction may do so "either on the
11  face of the pleadings or by presenting extrinsic evidence for the Court's
12  consideration." *Id*. at 1081.  "There is an important difference between Rule 12(b)(1)
13  motions attacking the complaint on its face and those that rely on extrinsic evidence.
14  In ruling on the former, courts must accept the allegations of the complaint as true.
15  In deciding the latter, courts may weigh the evidence presented, and determine the
16  facts in order to evaluate whether they have the power to hear the case." *Cholakyan*
17  *v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1227 (C.D. Cal. 2011)

18     "A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in
19  the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a 'lack
20  of a cognizable legal theory,' or 'the absence of sufficient facts alleged under a
21  cognizable legal theory.' The court must accept all factual allegations pleaded in the
22  complaint as true, and construe them and draw all reasonable inferences from them
23  in favor of the nonmoving party." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.
24  Supp. 2d 1220, 1231 (C.D. Cal. 2011) (citation omitted) "The court need not,
25  however, accept as true unreasonable inferences or legal conclusions cast in the form
26  of factual allegations." *Id*. (citation omitted) "Thus, a plaintiff's complaint must
27  'contain sufficient factual matter, accepted true, to "state a claim to relief that is

28
                                        4

plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted)

## III. ARGUMENT

### A. Plaintiff Owns the Copyright in the Singles, His Claim for Copyright Infringement Stands, And Relevant Case Law Directly on Point Supports Plaintiff

Ownership in the Singles reverted to Plaintiff as of February 5, 2021. Defendants are wrong that Plaintiff does not own the copyright to the Singles because of a small typographical error in the Initial Termination Notices, and relevant case law directly on point supports the effectiveness of the Termination Notices on the Singles. Plaintiff complied with the statutory requirements of copyright termination in all material ways, and although the notice included a small scrivener's error, Mr. Yoakam now owns the copyright in the Singles.

First, Defendants' argument is a ridiculous and transparent attempt to rob Plaintiff of his statutory recapture of his own copyright under the guise of statutory non-compliance. Defendants have clearly had more than two years notice of Plaintiff's intention to terminate the grant of his copyrights to Defendants, and yet they now argue that they are entitled to an entirely new two-year notice period before they will consider returning these works. Defendants waited, in bad faith, until the last possible moment to notify Plaintiff of this harmless error as a shameless attempt to force Plaintiff to wait another two years so that Defendants can continue to exploit and profit from Plaintiff's works. The immense greed at hand cannot be overstated.

Moreover, contrary to Defendants' Motion to Dismiss, Plaintiff, in pointing to his delay in filing this action until after the completion of the statutory two-year notice period, is not attempting to "bend the 'unbendable' rule," but instead highlighting that Defendants have not been harmed nor deprived any amount of time

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

to exploit the Singles as permitted under copyright termination provisions. Defendants argue that Plaintiff's miscalculation of effective termination date by less than a week is fatal because "the harmless error doctrine applies only to information regarding the adequacy of notice, it cannot be invoked to excuse timing errors." However, Plaintiff is not attempting to effect his termination as of the inadvertently faulty date such to create a timing issue. Instead, Plaintiff has asked that the Singles be returned two him two years from when the Initial Termination Notices were sent, as of February 5, 2021.

Defendants imply that because slight errors in effective termination dates are not specifically listed in a list of examples of harmless errors as provided by federal regulation that this error is fatal. However, "[t]he Register made clear that the examples contained in (e)(2) were not meant to define or otherwise delimit the general class of errors to which the harmless error rule in general would apply. Instead, the Register expressly stated that the only reason for the inclusion of the specific examples in (e)(2) in the first instance was so that, by their recitation, 'disputes' would be avoided that those particular errors could ever be considered harmful." *Siegel v. Warner Bros. Entm't*, 690 F. Supp. 2d 1048, 1053 (C.D. Cal. 2009) (citing to 42 F.R. 45916, 45919).

Defendants further argue that this scriveners error is not harmless because of a 2011 quote from the Acting Register of Copyright which states "if the wrong date is recited in the notice and a court subsequently determines that the actual date of execution was at a time that places the effective date of termination or the date of service of the notice of termination *outside of the statutory windows*, the harmless error doctrine will be of no assistance." 76 Fed. Reg. 32316, 32319 (June 6, 2011) (emphasis added). The core of this quote, however, is that one cannot use an error as an excuse to get copyrights back early, or any time outside of the statutory window.

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, Plaintiff is within the statutory window and is not attempting to recapture his copyright sooner than as prescribed by the Copyright Act.

Defendants argue that it would be incorrect for Plaintiff to reference guidance from the Copyright Office on harmless errors because an agency's "'interpretation' of the statute cannot supersede the language chosen by Congress." Quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980).  Hypocritically, Defendants proceed to rely (erroneously) on *Nimmer on Copyright*, a treatise neither written by Congress nor the Copyright Office, to support their argument that this error, though not addressed directly in statute, is not harmless.

Defendants state that they assume that Plaintiff will reference *Johansen v. Sony Music*, a case where the plaintiff listed an effective termination date of June 16, 2017, one month shy of the two years notice required by its July 15, 2015 termination notice. 2020 U.S. Dist. LEXIS 56675, *13 (S.D.N.Y. March 31, 2020). While Sony argued that this was an "error in timing" and thus inexcusable, the plaintiff argued that this was a result of a "scrivener's error" and thus an excusable harmless error. *Id*. The court found that the error may in fact be a harmless scrivener's error as all other notices provided exactly two years notice. "Drawing all reasonable inferences in favor of Plaintiffs, the Court finds that it is possible that this was a 'scrivener's error' and that the harmless error rule may apply to excuse it." *Id*. "Accordingly, because the Court finds that the termination notices contained sufficient information to afford Sony a reasonable opportunity to identify the grants at issue, such that the general harmless error rule may apply, Sony's arguments on the basis of 37 C.F.R. § 201.10(e)(2) cannot invalidate the notices." *Id*. Defendants are correct in assuming that Plaintiff would look to such a case as it is directly analogous to the present case.

Defendants are incorrect, however, in their belief that this ruling was "clearly incorrect." *Johansen* does not ignore established Supreme Court authority, as the

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Court does not interpret the Copyright Office's regulations to be inconsistent with the statutory requirements imposed by Congress. Within the statutory requirements of the Copyright Act is the instruction that "[t]he notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation." 17 U.S.C. § 203(a)(4)(B). As Defendants and *Johansen* clearly point to, Copyright Office regulation permits harmless errors within termination notices. *Johansen* does not cite to the "*wrong* opinion in *Siegel*." *Johansen* considers both cases in coming to its conclusions. *Johansen v. Sony Music*, 2020 U.S. Dist. LEXIS 56675, *13 (S.D.N.Y. March 31, 2020). *Siegel II* makes no distinction between statutory and regulatory errors, because no such distinction exists outside of Defendants' motion to dismiss.[1] *Siegel v. Warner Bros. Entm't*, 690 F. Supp. 2d 1048 ("*Siegel II*"). As discussed above, however, *Siegel II* holds that harmless errors are not limited to those listed in regulation. *Id.* at 1053. Instead, it is Defendants that are incorrect in their stubborn refusal to return to Mr. Yoakam his copyrights and commitment to an incorrect and dishonest position that because an error was not specifically included in a non-exhaustive list of harmless errors, that such error is then fatal.

Furthermore, in *Stillwater Ltd. v. Basilotta*, No. CV 16-1895 FMO (SHx), a grantee pointed out errors in the publication date of a work, thus causing the effective termination date contained in the notice to be outside of the appropriate five-year window. 2017 U.S. Dist. LEXIS 170176, *12 (C.D.C.A. March 17, 2017). The court

---

[1] To the extent that Defendants claim that the *Johansen* court erroneously cited to the wrong *Siegel* opinion, Plaintiffs want to make sure it is clearly that although both Defendants and the *Johansen* case refer to a case as *Siegel I*, the cases to which Defendants and the *Johansen* court cite are two different cases. In fact, *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, (C.D. Cal. 2008), the case referred to by Defendants as *Siegel I*, is never mentioned in *Johansen*.

8

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

disagreed with the grantee's attempt to dismiss the termination altogether because they "did not cite any authority supporting its contention that an error in a notice of termination invalidates the termination. [...] Indeed, the regulations suggest otherwise." *Id*.

Plaintiff made a good faith effort to notify Defendants of the upcoming termination, Defendants have in actuality had greater than two years notice before such termination is to be effected, and Defendants have not been harmed in any way by a miscalculation of several days. Further, Defendants waited in bad faith for almost two years before notifying Plaintiff of the miscalculation and asserting that the notice was therefore invalid and that a new notice, with a requisite additional two-year notice period, would be required before they would even consider returning the works.  It would be counter to the purpose of the Copyright Act to allow such a minor mistake of a good faith actor to be so harshly punished as to lose ownership of their works for an additional two years.

Importantly, the Singles are also included within the First Warner Album. Am. Compl. ¶¶ 51-52. As such, Defendants' arguments concerning Plaintiff's ownership of the Singles is moot as of the effective termination date of the First Warner Album. Defendants' motion to dismiss copyright infringement claims is limited to the Singles, and based solely on their argument that Plaintiff does not own the Singles. Because Defendants' motion is so limited, Plaintiff's response is also limited in establishing ownership of the Singles. As such, Defendants' motion to dismiss in this regard should be denied.

### B.    Plaintiff States a Claim for Conversion

Plaintiff's claim for conversion in the alternative to copyright infringement is sufficiently pled. First, Plaintiff's claim is not preempted by the Copyright Act. The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within" the Copyright Act. 17 U.S.C. § 301.

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Second, Plaintiff is the owner of the Singles because the Initial Termination Notices, as addressed above, are effective. Lastly, Defendants mischaracterize Plaintiff's conversion claim as arising from the non-exploitation of copyrights despite Plaintiff's claims actually being based on Defendants' refusal to return Plaintiff's copyrights to him as of their respective effective termination dates, thus preventing Plaintiff from enjoying and exploiting his intellectual property.

### 1. **Plaintiff's Conversion Claim Is Only Preempted by The Copyright Act So Far as The Copyright Act Rules.**

The Copyright Act's preemption clause clearly specifies situations where the Copyright Act does not preempt other laws, including "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301.

Defendants attempt to defeat Plaintiff's conversion claim by arguing that "[n]umerous courts have held that the rights asserted under a conversion claim are equivalent to those protected under copyright, and that conversion claims are therefore preempted." [Dkt. No. 17; 11:8-10]. Although Defendants cite a lengthy line of cases[2], allegedly in support of this position, a review of these cases shows this position to be unfounded. As noted by Defendants' cited cases, a conversion claim only exists when the claim arises from the "unauthorized reproduction and distribution" of a work, but where a claim arises from the wrongful possession of a

---

[2] It is worth noting that one of Defendants' cited cases, wherein a conversion claim seeking damages for an unauthorized reproduction was found to be preempted, was decided without an opposition being filed by the plaintiff. *Stockroom Inc. v. XR LLC, No. SACV 08-01046-JVS (RNBx)*, 2009 U.S. Dist. LEXIS 148486, at *14 (C.D. Cal. July 17, 2009). However, even if this case is relied upon, it only stands for the position that conversion claims are pre-empted when they are based on an unauthorized reproduction or distribution, which is not the case here.

10

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

work, no such preemption occurs. *See e.g. Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997).

Here, Plaintiff's conversion claim is grounded in Defendants' wrongful exercise of dominion over his property and refusal to return it, not in an unauthorized reproduction or distribution. Defendants refuse to recognize the Termination Notices or engage in any good faith discussion of necessary steps to return copyright ownership to Mr. Yoakam. Until Defendants agree that ownership in the Singles and the First Warner Album have transferred to Mr. Yoakam, Mr. Yoakam is unable to sell, license or otherwise exploit these works as they carry such a risk to potential buyers, licensees or other users. Mr. Yoakam cannot even make these songs available for streaming as, on information and belief, these streaming services still recognize Defendants as the owners of these works and as such any uploads will be flagged as infringement. This refusal, therefore, directly stands in the way of Mr. Yoakam exploiting his copyrights.

If Defendants' arguments are believed, refusing to return copyrights to a legal owner is an unpunishable offense because, according to Defendants, the offense simultaneously fails to meet the statutory definition of infringement and is preempted by the Copyright Act. Such a position, if taken as true, would result in a complete miscarriage of justice, and if Defendants continue to argue that the Copyright Act does not address this specific situation, then Plaintiff must be allowed to pursue alternative theories to halt this obstruction of Plaintiff's rights.

Defendants cannot argue both that their obstruction of Plaintiff's exclusive rights under the Copyright Act does not actually violate any exclusive rights while at the same time argue that the Copyright Act preempts conversion claims because it deals with the same rights. Either Defendants' actions are copyright infringement or conversion, but not neither.

11
RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## 2.     Plaintiff States a Claim for Conversion.

Under California law, a claim for conversion requires (1) a plaintiff own or have the right to possess the property, (2) the defendant's conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights, and (3) resulting damages. *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066; *Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181. "Further, where a person entitled to possession demands it, the wrongful, unjustified withholding is actionable as conversion." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145, 2010 U.S. App. LEXIS 7050, *17 (9th Cir. 2010) (citing to 5 Witkin Summary of Cal. Law *Torts*, § 712(2) (10th ed. 2005)). Here, Plaintiff is entitled to possession of his sound recordings, and Defendants' unjustified withholding of said rights is therefore actionable as conversion. Defendants therefore are mistaken in their argument that controlling and failing to return property to its owner fails to satisfy the requirements of conversion.

Defendants assert that Plaintiff has failed to allege any "wrongful act or disposition of property rights." Defendants also argue that Defendants have taken no affirmative action requisite for a claim of conversion. This supposed requirement is counter to the essential elements of conversion, which are "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Foster v. Sexton*, 61 Cal. App. 5th 998, 1020-21 (2021) (quoting *Voris v. Lampert* 7 Cal.5th 1141, 1150 (2019)) "One type of wrongful exercise of dominion occurs when a defendant refuses to return items of personal property after the plaintiff has demanded their return." *Id*.; *see also* CACI No. 2100 (essential factual elements of conversion); *Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 609 [218 Cal. Rptr. 15] ("Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully"); 5

12

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Witkin, Cal. Procedure, supra, Pleading, § 699, p. 116 (where original possession was lawful, withholding does not become tortious until the plaintiff has demanded possession and the defendant has refused). The court in *Foster* held that the "petition adequately alleged the three elements of the tort of conversion—namely, (1) his ownership and right to possession of the personal property, (2) defendant's failure to return the property to him, and (3) resulting harm." *Id*. Mr. Yoakam owns and has the right to possess the Singles and the First Warner Album, Defendants have failed to return these works despite Plaintiff's demands, and Plaintiff has suffered financial harm.

Defendants have misconstrued California law to require that "conversion requires affirmative action to deprive another of property, not a lack of action." When reviewing the full quote, as opposed to Defendants' incomplete snippet, it becomes clear that Defendants' refusal to return Mr. Yoakam's copyrights constitutes infringement. "Conversion requires the defendant to take some affirmative action to exercise dominion over or deprive a plaintiff of his or her property." [Dkt. No. 17; 13:10-11] (quoting *Archer v. Coinbase, Inc.*, 53 Cal. App. 5th 266, 276-77 (2020)). "To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property… [C]onversion requires affirmative action to deprive another of property, not a lack of action." *Archer v. Coinbase, Inc.*, 53 Cal. App. 5th 266, 276-77 (2020). (internal citations omitted). Further review of the cases Defendants cite reveal that the "action" described need only be an assertion of dominion which Defendants have clearly made.

Defendants attempt to rewrite the narrative of Plaintiff's claim to instead concern "lack of action" or exploitation on the part of the Defendants, despite Plaintiff's Amended Complaint clearly asserting that Plaintiff made a demand for

the return of his master recordings, which Defendants affirmatively refused to return. Am. Compl. ¶¶ 64-65, 132-133. Defendants have both prevented Plaintiff from having access to his copyrights as well as refused to return the copyrights to Plaintiff after he demanded their return.

Defendants claim that Plaintiff's allegations regarding Defendants' conversion should be disregarded on a motion to dismiss, using *Steckman* as their authority. MTD 13:7-8. (citing to *Steckman*, 143 F.3d at 1295-96). "[A] complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In applying this standard, we must treat all of plaintiff's factual allegations as true. However, we are not required to accept as true *conclusory allegations which are contradicted by documents referred to in the complaint*." *Id*. (citations omitted) (emphasis added). It is unclear how or why any of the statements Defendants cite to are statements of conclusion or would otherwise not be considered on a motion to dismiss. As plead in the Amended Complaint, "Defendants have prevented Mr. Yoakam from accessing and exploiting his exclusive copyrights." Am. Compl. ¶ 132. "Mr. Yoakam cannot distribute his works through online streaming and sales platforms while Defendants claim ownership of the works." Am. Compl. ¶ 120.  Mr. Yoakam cannot create derivative works without all but guaranteeing a punitive lawsuit from Defendants as a result of him exercising his rights. Am. Compl. ¶ 121. "Defendants have knowingly prevented Mr. Yoakam from having access to his copyrights." Am. Compl. ¶ 133. As such, and based upon all of the above, it is clear that Plaintiff's conversion claim is properly before the Court and Defendants' motion to dismiss this claim should be denied.

## C.    Plaintiff's Declaratory Relief Claim Is Ripe

"To determine whether there is a ripe controversy within [the Central District of California], the Court must decide 'whether the facts alleged, under all the

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Century of Progress Prods. v. Vivendi S.A.*, 2018 U.S. Dist. LEXIS 153316 at 40-41 (C.D. Cal August 28, 2018) (quoting *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1027-28 (C.D. Cal. 2012)). It is the plaintiff's burden to establish the existence of an actual controversy. *Id*. "A determination of the nature of Plaintiffs' authorship does not require this Court 'to engage in abstract inquiries about speculative injuries.'" *Id*. at 43. (quoting *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015)).

Defendants argue that works with effective termination dates in or after 2022 are not yet ripe, without pleading any substantive reason why the validity of a termination notice would change whether its effective termination date were eight months away versus eight years away. Regardless of the effective termination date, Plaintiff has established both constitutional and prudential ripeness.

### 1.  **Plaintiff Has Established Constitutional Ripeness**

"The constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comn'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Railway Mail Ass'n v. Corsi* 326 U.S. 88, 93 (1945)).

"[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry. Because most of the case law analyzes the constitutional component of ripeness under the 'standing' framework, we analyze justiciability in this case as a standing concern. Regardless of how we characterize our discussion, the inquiry is the same: we ask whether there exists a constitutional

'case or controversy' and whether 'the issues presented are 'definite and concrete, not hypothetical or abstract.'"

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (internal citations omitted).

Plaintiff does not ask a hypothetical question, but instead a real and disputed question of whether the Termination Notices are valid and effective. The issues in dispute here are the same issues that will be in dispute for the Later Works. This controversy can be solved by action of the court determining the validity of the Termination Notices. Therefore, an actual controversy exists here.

The court in *Kordich v. Salton, Inc.* found that claims were not constitutionally ripe as "[n]o course of conduct is alleged that will result in 'imminent' and 'inevitable' litigation." No. 05cv0202-LAB (RBB), 2005 WL 18 8173161 (S.D. Cal. July 5, 2005). Here, Plaintiff plans to exploit the Later Works as of each works' effective termination date. This action is imminent. Even before this action was brought, Defendants removed many of Mr. Yoakam's recordings from streaming platforms such as Spotify, purportedly to limit their copyright infringement, while also contesting any exchange of ownership. It is reasonable for Plaintiff to assume that Defendants will act in a similar fashion with upcoming terminations, once again causing Mr. Yoakam to suffer harm as a consequence of enforcing his statutory right to terminate the grant of his copyrights to Defendants. Defendants draw an arbitrary line in the sand between the First Warner Album and its Singles, and the Later Works. In the same way that Plaintiff exploiting the First Warner Album today will result in imminent litigation, Plaintiff exploiting one of his later singles, "Little Sister," in March of 2022 will also result in imminent litigation.

Likewise, Defendants cite to *Purely Driven Prods. LLC*, wherein claims were not ripe as the defendants had not threatened litigation and had actually "expressly disclaimed threatening Plaintiffs with an infringement action." *Purely Driven Prods.*

16

*LLC  v. Chillovino, LLC*, 171 F.Supp. 3d 1016 (C.D.C.A. 2016). This is not at all analogous to the present case. Here, Plaintiff has taken the position that he owns each of the works contained within the Termination Notices as of their respective effective termination date. Am. Compl. ¶ 20. Defendants have taken the position that any work whose effective termination date have passed remain owned by them, but strategically have declined to take a position as to future terminations. Based on the fact that Defendants have not yet returned the First Warner Album to Mr. Yoakam, as well as Defendants' track record of strategically waiting until the last possible moment to reject a notice, Defendants will not be returning Mr. Yoakam his works as of their effective termination date. Tactically refraining from taking a position as to the validity of a termination notice will not void an actual controversy from existing. *Century of Progress Prods. v. Vivendi S.A.*, 2018 U.S. Dist. LEXIS 153316 at 42 (C.D. Cal August 28, 2018).

Defendants attempt to distinguish the present case from *Ray Charles Found. v. Robinson*, where the court held true that "the Foundation's allegation that the effects of the termination notices 'have been felt in a concrete way' because the notices have 'created an enormous cloud over the future copyright ownership'' of certain works. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015). Defendants would like this court to believe that the claims were ripe because the party seeking declaratory relief was the non-terminating party. [Dkt. 17; 16:5-8]. However, in determining ripeness, the court did not consider which party sought declaratory relief. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015). Instead, in considered whether an actual dispute, such as the present one existed. Further it found that, like in the present case, "[i]t would be an inefficient

17

use of judicial resources to compel the Foundation to file a different suit after each termination date has passed." *Id*.[3]

In *Century of Progress Prods.*, UMG, in fighting declaratory relief concerning effectiveness of termination notices, made a nearly identical argument to the argument Defendants make here, arguing that they had not conceded that

---

[3] It worth further noting that *Mtume v. Sony Music Entm't*, the central case on which Defendants' base their ripeness arguments, agrees with Plaintiffs' interpretation of *Ray Charles*, noting:

> "Furthermore, Mtume alleges that, '[b]y refusing to recognize [his] termination rights, including the ability to recapture gap grants under Section 203, Sony has created a cloud over Mtume's future copyright ownership in the sound recordings [included in the album] and made it difficult, if not impossible, for Mtume to exploit these valuable copyright assets.' Doc. 31 ¶ 27. Sony maintains that this injury is speculative at best because the Copyright Act prevents Mtume from entering into enforceable contracts until the effective date of termination. However, nothing in the Act prevents Mtume from entering into negotiations concerning its copyright. *Bourne*, 675 F. Supp. at 865 ("The statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else. All it requires is that prior to the effective date of termination, the terminated grantee is the only person with whom the author or his successor can make an enforceable and effective agreement to transfer those rights."). Notwithstanding Mtume's ability to begin negotiating, courts in other circuits have found similar circumstances sufficient for ripeness purposes because of the uncertainty these notices create regarding a grantor's future ability to consummate these negotiations. *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015) (finding allegations "that the notices of termination immediately clouded [the Foundation's] ability to assess its future income stream and to rely on the royalties" sufficient for ripeness purposes). This Court agrees."

2020 U.S. Dist. LEXIS 29133, at *12-13 (S.D.N.Y. Feb. 19, 2020).

18

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

the termination notices were valid, nor that it has 'no intention now or in the future' of challenging the termination notices. *Id*. at 42. Instead, UMG asserted that they had yet to take a position on the validity of the termination notices, such that an actual controversy did not yet exist. *Id*. "Such an evasive stance is insufficient for the Court to find a lack of actual controversy with sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. Therefore, Defendants' argument that this dispute is not ripe because they have not yet outright rejected the Termination Notices fails. If this issue not ruled on now, the court will be bogged down with piece meal litigation relitigating the same issues for the next decade. This can and should be avoided in favor of judicial economy.

## 2.   **Plaintiff Has Established Prudential Ripeness**

In evaluating the prudential aspects of ripeness, Ninth Circuit analysis is guided by two overarching considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1212 (9th Cir. 2006) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

"Whether a dispute is sufficiently ripe to be fit for judicial decision depends not only on the state of the factual record. It depends also on the substantive legal question to be decided. If the legal question is straightforward, relatively little factual development may be necessary." *Id*. "Pure legal questions that require little factual development are more likely to be ripe." *San Diego County Gun Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). In *Adler v. Bd. of Educ.*, because the legal question was relatively simple, and required little factual development the court held that the suit was ripe. 342 U.S. 485. Defendants do not question that the validity of a termination notice can be judged on its face. It is a question of law as to whether the requirements of effecting termination are present in a notice. Despite Defendants'

claims that they may not be objecting to further Termination Notices, or they may object on other vague grounds in the future, the Court may still make the simple determination of whether the Termination Notices are valid on their faces.

Defendants' reliance on *Mtume*[4], a Second Circuit case, is misguided. The court in *Mtume* based its finding that the plaintiff's claims lacked prudential ripeness on facts unique to the case that indicated that no judicial economy would be served through a grant of declaratory relief. *Id*. The court reached this conclusion because despite the plaintiff arguing that the need to file future lawsuits would result in unreasonable hardship, the plaintiff's decision to bring separate actions, concerning almost identical issues, for two sets of termination notices, undermined the credibility of the plaintiff's argument. *Id*.[5]

Defendants argue that Plaintiff was incorrect in pleading that the 1990 Agreement includes the same language as the 1985 Agreement, concerning Mr. Yoakam's employment status. [Dkt. No. 17; 19:1-3]. In fact, the same exact language, as pled in the Amended Complaint, exists within the 1990 Agreement.

---

[4] Notably, Defendants fail to distinguish the constitutional ripeness analysis of *Mtume v. Sony Music Entm't* from the present case. [Dkt. No. 17; 18:22-26]. (citing *Mtume v. Sony Music Entm't*, 2020 U.S. Dist. LEXIS 29133, *12-13, 2020 U.S.P.Q.2D (BNA) 10049, 2020 WL 832814). Defendants argue that, unlike Sony in *Mtume*, Defendants have yet to take a position on the Later Works. *Id*. However, Sony had not yet taken a position on all works in *Mtume*, and still the court found that prudential ripeness existed because Sony had taken a position on a notice sent three years prior. *Id*. Similarly, here, Defendants have taken a negative position on the Singles but not yet on the First Warner Album or the Later Works.

[5] Given Defendants' willingness to cite to out-of-circuit cases, it is worth noting that in *Baldwin v. Emi Feist Catalog, Inc*., the court concluded that an action seeking to "determine whether a notice of termination is valid" is ripe even if the effective date of the notice has yet to occur. No. 11-81354-CIV-MARRA/BRAN, 2012 U.S. Dist. LEXIS 201053, at *5-7 (S.D. Fla. Dec. 10, 2012)

20

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Obviously, Mr. Yoakam had more bargaining power as a country superstar and multi-Grammy nominated artist by the time that he entered into the 1990 Agreement, and as such certain terms are more beneficial to him. However, as Plaintiff pled in the Amended Complaint, the relevant language that "Nothing contained herein shall constitute a partnership between or joint venture by the parties hereto or constitute either party the agent or employee of the other" remains in both agreements. Am. Compl. ¶¶ 80-81. Whether the drafters of the contract seek to argue a work for hire relationship existed through a carve out, it is clear from the terms of the contract that Plaintiff wasn't an employee of Defendants. Defendants may argue that Plaintiff is an employee when it benefits them, but not an employee when it burdens them, however this is not how employment functions. Regardless, the quoted language from the Amended Complaint exists within both the 1985 and 1990 Agreement, as pled. Am. Compl. ¶¶ 80-81.

Absent this declaratory relief, Plaintiff is harmed in several ways. First, he must sacrifice time, energy, and money to relitigate this issue each year with each work whose effective termination date is near enough that Defendants cannot argue the claim is unripe. Second, Plaintiff has no certainty of his financial status or outlook as it relates to these works. Without indication from the Court, Plaintiff does not know if or when he will be able to enjoy any of his copyrights, despite his statutory right to terminate. Third, this dispute surrounding Mr. Yoakam's ability to regain his copyrights harms him in the marketplace. Defendants correctly remind the Court that copyright grantors cannot enter into agreements regranting their copyrights before the effective termination date of their prior agreement. However, in practice, there are relationships and negotiations that occur prior to the effective termination date. More advantageous agreements can be entered into when there is a relationship that is likely to lead to future grants. Presently, Plaintiff cannot even grant the rights to the First Warner Album despite the passing of its effective

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

termination date and no issues with statutory timing. Even if he could, however, the shadow of doubt over his future rights would encumber his negotiations for this first album.

### 3. This Court Should Exercise Its Discretion to Hear Plaintiff's Declaratory Relief Claim

This Court can and should exercise its discretion to hear Plaintiff's declaratory relief claim. Claims for declaratory relief do not require a greater showing of controversy than what is required under Article III. *MedImmune, Inc. v. Genetech, Inc.,* 549 U.S. 118, 127 (2007). Plaintiff's First Amended Complaint plainly states the actual controversy between Plaintiff and Defendants: whether the Termination Notices are effective, and who owns the copyrights at issue as of the effective termination dates. While district courts have broad discretion over whether to entertain declaratory judgement actions, they consider factors such as "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "whether a judgment would finalize the controversy and offer relief from uncertainty." *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 276 (S.D.N.Y. 2020) (quoting *Dow Jones & Co v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). In *Waite*, a putative class of plaintiffs sought declaratory relief that all of their termination notices were effective and argued that "permitting plaintiffs' claim for declaratory relief will avoid the need for future 'piecemeal' litigation each time an effective date of termination arrives." *Id*. The court held that "resolving certain legal issues prior to the effective dates of termination would be useful even if not a complete solution." *Id*. Here, the declaratory relief sought is much simpler in that it deals solely with the Termination Notices sent by Mr. Yoakam. In the same way that declaratory relief concerning the *Waite* termination notices aimed to avoid piecemeal litigation, declaratory relief here could avoid further litigation as well.

Refusal to hear Plaintiff's declaratory relief claims will only create continued litigation for at least the next ten years. Defendants would rather each work included within the Termination Notices have its own separate action to determine its validity within a year of its effective termination date, resulting in potentially dozens of nearly identical lawsuits causing unnecessary costs and resources of the Court to be expended.  Plaintiff instead asks this court to resolve these future identical lawsuits and instead grant declaratory relief regarding the validity of the Termination Notices.

### D.   All Claims Against WMGC Should Proceed

Defendants argue that all claims against WMGC should be dropped because "WMGC does not belong in this case" as Plaintiff did not contract directly with WMGC. Defendants are under a mistaken understanding that Plaintiff's claims against WMGC stem solely from WMGC's ownership of Warner and Rhino. WMGC, Warner, and Rhino's role in this action appears to shift interchangeably. When Plaintiff would contact one WMGC subsidiary, Warner Records, another subsidiary, Rhino, might respond with little or no explanation. Am. Compl. ¶ 60, 63. Regardless of which organization a representative claimed to work for, in all communications between Plaintiff and Defendants, the understanding was that there was no substantive difference between WMGC organizations as far as Plaintiff's copyrights were concerned.

It is unclear how or why communications switched from representatives at Warner, WMGC, and Rhino, other than through the direction of WMGC. WMGC, as pled in the Amended Complaint, organized and perpetrated a coordinated response and action plan across their subsidiaries, Warner and Rhino, to ensure that Plaintiff would not be returned any of his copyrights.

Even if, as Defendants now allege, WMGC were not involved in its subsidiaries' campaign to impede Plaintiff's copyright ownership, which is false since they in fact played an active role in this campaign, WMGC is liable for its

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

subsidiaries' actions as an alter ego. *Masimo Corp. v. Sotera Wireless* sets forth the test for identifying an alter ego as follows:

> "Under the first prong of the alter ego test, California courts consider several factors to determine whether there is a unity of interest and ownership between a parent and its subsidiary. These include, but are not limited to: (1) the commingling of funds and other assets, (2) identical equitable ownership of the two entities, (3) use of the same offices and employees, (4) use of the subsidiary as a mere shell for the affairs of the parent, (5) failure to maintain adequate corporate records, (6) failure to adequately capitalize the subsidiary, and (7) the holding out by the parent that it is liable for the debts of the subsidiary."

No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 81873, at *16-17 (S.D. Cal. May 8, 2020). *See also Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (citing *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971)); *Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104, 1137 (C.D. Cal. 2015) (listing additional factors).

"This list is not exhaustive, and no single factor controls. A court must examine all the circumstances to determine whether the complaint states a plausible claim for liability under an alter ego theory." *Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 81873, at *16-17 (S.D. Cal. May 8, 2020) (citing *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002)).

There is a substantial and continuing connection between WMGC, Warner, and Rhino as evidenced by their shared office, interchangeable role in communications with Plaintiff, and coordinated response to Plaintiff's Termination Notices. Am. Compl. ¶ 40-41, 60, 63. Plaintiff has therefore adequately stated a

24

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

claim against WMGC. WMGC, as the director of this organized effort to deprive Mr.

Yoakam of his rights, properly belongs as a defendant in this case.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.


Dated: April 26, 2021                    Respectfully submitted,


By: */s/ Richard S. Busch*
Richard S. Busch (SBN 319881)
*E-Mail: rbusch@kingballow.com*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
*Attorney for Plaintiff*

RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT