Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Mitchell Santos (SBN 332849)
mitchell.santos@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants
WARNER MUSIC GROUP CORP.,
WARNER RECORDS INC., and RHINO
ENTERTAINMENT COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT YOAKAM, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WARNER MUSIC GROUP CORP., a Delaware corporation; WARNER RECORDS INC., a Delaware corporation; and RHINO ENTERTAINMENT COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.  2:21-cv-1165-SVW (MAAx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS WARNER MUSIC GROUP CORP., WARNER RECORDS INC., AND RHINO ENTERTAINMENT COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: May 24, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom:    10A |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.   PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT AS TO THE SINGLES ........................................................ 1

II.  PLAINTIFF'S CONVERSION CLAIM IS PREEMPTED ................................ 4

III. PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION ................... 6

IV.  PLAINTIFF'S DECLARATORY RELIEF CLAIM SHOULD BE SUBSTANTIALLY DISMISSED ......................................................................... 7

    A.   Plaintiff Cannot Establish Constitutional Ripeness. ................................ 7

    B.   Plaintiff Cannot Establish Prudential Ripeness. ....................................... 9

    C.   The Court Should Exercise Its Discretion to Decline to Hear Plaintiff's Declaratory Relief Claim. .................................................................... 11

V.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST WMGC ..................... 11

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Archer v. Coinbase, Inc.*,
  53 Cal. App. 5th 266 (2020) ................................................................................ 6

*Baldwin v. EMI Feist Catalog, Inc.*,
  Case No. 11-81354-CIV-MARRA/BRANNON, 2012 WL 13019195
  (S.D. Fla. Dec. 10, 2012) ................................................................................... 10

*Burlesci v. Peterson*,
  68 Cal. App. 4th 1062 (1998) .............................................................................. 7

*Century of Progress Prods. v. Vivendi S.A.*,
  No. CV 16-7733 DMG (ASX), 2018 WL 4191340 (C.D. Cal. Aug.
  28, 2018) .............................................................................................................. 8

*Firoozye v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) ............................................................... 5

*Gerritsen v. Warner Bros. Entm't*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................................. 12

*Infinite Software Corp. v. Kelly Servs., Inc.*,
  No. SACV 07-01209-CJC, 2008 WL 11336891 (C.D. Cal. Jan. 31,
  2008) .................................................................................................................... 5

*Johansen v. Sony Music Entertainment Inc.*,
  No. 19 CIV. 1094 (ER), 2020 WL 1529442 (S.D.N.Y. Mar. 31, 2020) .............. 3

*Kordich v. Salton, Inc.*,
  No. 05cv0202-LAB (RBB), 2005 WL 8173161 (S.D. Cal. July 5,
  2005) .................................................................................................................... 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 7

*Mtume v. Sony Music Entm't*,
  No. 18 Civ. 11747 (ER), 2020 WL 832814 (S.D.N.Y. Feb. 20, 2020) .......... 9, 10

*Pacific Gas & Elec. Co. v. U.S.*,
    664 F.2d 1133 (9th Cir. 1981) .............................................................................. 2

*Payoda, Inc. v. Photon Infotech, Inc.*,
    No. 14-cv-04103-BLF, 2015 WL 4593911 (N.D. Cal. July 30, 2015) .............. 12

*Prince v. Universal Music Corp.*,
    No. 2:09-cv1459-FMC-FFMx, 2009 WL 10672282 (C.D. Cal. May
    18, 2009) ............................................................................................................. 5

*Purely Driven Prod., LLC v. Chillovino, LLC*,
    171 F. Supp. 3d 1016 (C.D. Cal. 2016) ............................................................... 8

*Ray Charles Found. v. Robinson*,
    795 F.3d 1109 (9th Cir. 2015) ......................................................................... 8, 9

*San Diego County Gun Rights Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ............................................................................... 9

*Siegel v. Warner Bros. Entm't Inc.*,
    542 F. Supp. 2d 1098 (C.D. Cal. 2008) ......................................................... 3, 10

*Siegel v. Warner Bros. Entm't Inc.*,
    690 F. Supp. 2d 1048 (C.D. Cal. 2009) ............................................................... 3

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................................. 4

*Stillwater Ltd. v. Basilotta*,
    Case No. 2:16-cv-01895-FMO, 2017 WL 2906056 (C.D. Cal. Mar.
    17, 2017) .......................................................................................................... 3, 4

*Texas v. United States*,
    523 U.S. 296 (1998) ......................................................................................... 7, 8

*Waite v. UMG Recordings, Inc.*,
    477 F. Supp. 3d 265 (S.D.N.Y. 2020) ............................................................... 11

*Worth v. Universal Pictures, Inc.*,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) ................................................................ 4, 5

**Statutes**

17 U.S.C. § 203 ............................................................................................... *passim*

**Other Authorities**

76 Fed. Reg. 32316, 32319 (June 6, 2011)..................................................................2

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.06
    (rev. ed. 2019)..................................................................................................2

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Warner Music Group Corp. ("WMGC"), Warner Records Inc. f/k/a Warner Bros. Records Inc. ("Warner"), and Rhino Entertainment Company ("Rhino," and together with WMGC and Warner, "Defendants") respectfully submit this reply memorandum in support of their motion to dismiss with respect to the Amended Complaint filed by plaintiff Dwight Yoakam ("Plaintiff" or "Yoakam").

## I. PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT AS TO THE SINGLES

Plaintiff concedes that his termination notice as to the Singles[1] does not comply with the requirements of the Copyright Act. He was required to select and state in the notice an "effective date of termination" (which he did – January 31, 2021), and then to serve the notice "not less than two or more than ten years before" the effective date of termination that is stated in the notice (which he did *not*, as he did not serve the notice until February 5, 2019). *See* 17 U.S.C. §§ 203(a)(3) & (a)(4).

Faced with his failure to satisfy the statutory requirements for termination, Plaintiff asserts that his noncompliance is excused by the "harmless error" doctrine adopted by the Copyright Office. Plaintiff's argument fails at every turn. First, Plaintiff insists that he is "not attempting" to "bend the 'unbendable' rule" requiring compliance with the statutory timing provisions, Opp. at 5:26 (quoting *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1121 (C.D. Cal. 2008) [hereinafter *Siegel I*]), but that is *precisely* what he is attempting to do. As *Siegel I* noted, "[o]nce a termination effective date is chosen and listed in the notice," the statutory timing requirements have "an inescapable effect, *not* subject to the harmless error analysis." *Id.* (emphasis added). Plaintiff listed a termination date in the notice; his failure to timely serve the notice in light of the date he selected is dispositive of his termination claim, and his invocation of "harmless error" is expressly precluded by *Siegel I*.

---

[1] Unless otherwise noted, all capitalized terms have the same definitions ascribed to them in Defendants' opening brief, filed on April 12, 2021.

Yoakam next notes that the examples of harmless errors provided in the Copyright Office regulation are non-exhaustive, and argues that the "harmless error" doctrine may therefore extend to statutory timing errors. Opp. at 6:9-18; *see also* Opp. at 8:2-7 (noting that the Copyright Act authorizes the Copyright Office to enact regulations as to the "form, content, and manner of service" of termination notices) (quoting 17 U.S.C. § 203(a)(4)(B)). Regardless of whether a regulation's examples are non-exhaustive, the regulation cannot invalidate the *statute* pursuant to which it is adopted. On the contrary, as noted in Defendants' opening brief, "[i]t is clear that 'regulations, in order to be valid must be consistent with the statute under which they are promulgated.'" *Pacific Gas & Elec. Co. v. U.S.*, 664 F.2d 1133, 1136 (9th Cir. 1981), *quoting United States v. Larionoff*, 431 U.S. 864, 873 (1977). Plaintiff's failure to address – or even mention – this controlling authority is damning.

Plaintiff attempts to distinguish the dispositive statement of the Acting Register of Copyrights that "the harmless error doctrine will be of no assistance" if a terminating party "places the…date of service of the notice of termination outside of the statutory windows," 76 Fed. Reg. 32316, 32319 (June 6, 2011), arguing that he "is within the statutory window." Opp. at 7:1. That is simply not true. The putative "effective date of termination" for the Singles is January 31, 2021, and the statutory window for service was therefore on or *before* January 31, 2019. Yoakam's service, which did not come until February 5, 2019, was outside of that statutory window, and the Acting Register of Copyrights' statement that "the harmless error doctrine [is] of no assistance" is directly on point. Plaintiff's response to the statement in the leading copyright treatise, *Nimmer on Copyright*, that a timing error in the service of a termination notice is not subject to the harmless error doctrine and thus "will doom an attempt at termination as untimely," 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.06 (rev. ed. 2019) (emphasis added), is even weaker – he appears to want the Court simply to ignore it. *See* Opp. at 7:7-9.

As anticipated, Plaintiff relies on *Johansen v. Sony Music Entertainment Inc.*, No. 19 CIV. 1094 (ER), 2020 WL 1529442 (S.D.N.Y. Mar. 31, 2020). However, as discussed in Defendants' opening brief, that decision neglected to acknowledge *any* of the authorities establishing that the harmless error doctrine does *not* apply to a party's failure to comply with the statutory timing requirements for service; instead, such timing errors "doom" the notice. Plaintiff notes that *Johansen* cited *Siegel v. Warner Bros. Entm't Inc.*, 690 F. Supp. 2d 1048, 1052 (C.D. Cal. 2009) [hereinafter *Siegel II*], in support of its holding, but *on its face*, the *Siegel II* opinion addresses only compliance with the Copyright Office's regulatory requirements respecting termination notices, and does not address the statutory timing requirements that are relevant here. Instead, those statutory timing requirements are discussed in *Siegel I*, and *that* opinion correctly notes that failure to comply with the statutory timing requirements is an "unbendable rule" that is *not* subject to the "harmless error" doctrine. *See Siegel I*, 542 F. Supp. 2d at 1121. Plaintiff asserts that "*Johansen* considers both cases in coming to its conclusions," Opp. at 8:8, but is then forced to immediately correct himself, conceding in a footnote that "the case referred to by Defendants as *Siegel I* [*i.e.*, the case addressing the issue relevant here], is never mentioned in *Johansen*." Opp. at 8:26-27. *Johansen* is no better than the authorities upon which it relies, and its holding is in error in light of the authorities that it overlooks.

Even less compelling is Plaintiff's citation to *Stillwater Ltd. v. Basilotta*, Case No. 2:16-cv-01895-FMO (SHx), 2017 WL 2906056 (C.D. Cal. Mar. 17, 2017). There, the parties disputed the publication dates of the works at issue, and therefore, whether the termination dates in a notice were timely. Because "the publication dates… [presented] a factual issue" that could not be addressed at the pleading stage, the court denied a motion to dismiss as to those works. *Id.* at *4. That holding has no application here – Plaintiff does not and cannot dispute that his service was untimely. The court then noted in passing that even if the movant had correctly identified the

publication dates, it "[did] not cite any authority supporting its contention that an error in a notice of termination invalidates the termination." *Id.* This dicta has no application here – Defendants *have* cited abundant authority from the courts, from the Copyright Office, and from the leading treatise supporting precisely that contention.

Finally, Plaintiff seeks to blame Defendants for his failure to comply with the statute. But it is not Defendants' responsibility to ensure that Plaintiff complies with the statute or to notify him if he fails to do so. Instead, Plaintiff and the two law firms that represent him in connection with his termination notices bear that responsibility, and there is no authority for ignoring Plaintiff's non-compliance with the law.[2]

In sum, Plaintiff did not comply with the statutory requirements of Section 203, and none of his arguments either changes or excuses that fact. His infringement claim as to the Singles should therefore be dismissed.

## II. PLAINTIFF'S CONVERSION CLAIM IS PREEMPTED

Plaintiff argues that his conversion claim is not preempted, insisting that claim is not based on Defendants' use or exploitation of the Works, but instead on Defendants' alleged refusal "to return copyright ownership to Mr. Yoakam." Opp. at 11:3-7. Far from rebutting preemption of his conversion claim, Plaintiff's reframing of that claim confirms that it is preempted under the authority cited in the motion.

As the court noted in *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816 (C.D. Cal. 1997), "[i]t is generally held that an action for conversion involves tangible, rather than intangible property." *Id.* at 822. This distinction generally saves claims relating to *tangible* property from preemption: the "Copyright Act protects reproduction, which does not necessarily interfere with the tangible property right in

---

[2] Plaintiff also claims that Defendants' argument "is moot as of the effective termination date of the First Warner Album [*i.e.*, March 3, 2021, *see* Am. Compl. ¶ 92]," ostensibly because the Singles are also included within the scope of the termination notice for the First Warner Album. Opp. at 9:15-17. However, this argument does not save Plaintiff's infringement claim from dismissal, because Plaintiff alleges that infringement of the Singles occurred on February 9, 2021, nearly one month *before* the putative termination date for the First Warner Album. *See* Am. Compl. ¶¶ 91, 108-111.

4

the item that is being copied." *Id.* However, multiple courts have held that where the conversion claim is based on an *intangible right* associated with copyrighted property, then the claim is preempted. *See, e.g.*, *id.* at 822-23 (conversion claim preempted where plaintiffs "fail[ed] to claim a 'physical deprivation' from not having the photographs, scripts, notes, etc." that were the subject of their claim, but instead sought "recovery of the profits" associated with resulting film); *Infinite Software Corp. v. Kelly Servs., Inc.*, No. SACV 07-01209-CJC (MGLx), 2008 WL 11336891, at *6 (C.D. Cal. Jan. 31, 2008) ("[W]hen a work is defined as intangible artistic property, conversion of an intangible shades into a copyright-style cause of action, and thus cannot survive. In other words, an action for conversion will only lie for wrongful possession of the tangible embodiment of a work ….") (internal quotations and citation omitted); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (claim preempted when the plaintiff was not seeking "the actual return of a physical piece of property," but instead compensation based on an intangible copyright interest).

      Here, Plaintiff's conversion claim is not based on any tangible property (nor could it be – Section 203 does not entitle a terminating party to tangible property), but is instead based on Plaintiff's claim of ownership in the intangible *right* of copyright in the Works. Regardless of whether Defendants' conduct is framed as an alleged refusal to "recognize" that right or the exercise of "dominion and control" over the copyrights, the result is the same – Plaintiff's conversion claim is preempted. *See, e.g.*, *Prince v. Universal Music Corp.*, No. 2:09-cv1459-FMC-FFMx, 2009 WL 10672282, at *4 (C.D. Cal. May 18, 2009) (despite allegation that defendants "wrongfully exercised dominion and control over Plaintiff's property," conversion claim was preempted where based on defendants' alleged "collection of inappropriate royalties and license fees" for copyrighted work).

### III.     PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION

Even if it were not preempted, Plaintiff's putative conversion claim fails as a matter of law.  California law requires that a defendant undertake an *affirmative action* to deprive another of property, and Plaintiff has now expressly disclaimed that his conversion theory is based on any unauthorized reproduction or distribution of the Works.  *See* Opp. at 11:3-5.  He instead repeatedly claims – albeit in conclusory fashion – that his conversion claim is grounded in "Defendants' wrongful exercise of dominion over his property and refusal to return it," but such an allegation is clearly insufficient to state a claim.  In *Archer v. Coinbase, Inc.*, 53 Cal. App. 5th 266, 276-77 (2020), for example, the plaintiff stored cryptocurrency (or "Bitcoin") with the defendant in an online account.  When the defendant declined to support a new form of cryptocurrency called "Bitcoin Gold" (such that the plaintiff could not convert his Bitcoin into Bitcoin Gold), the plaintiff sued, claiming that the defendant had converted his Bitcoin by "exercising complete dominion and control" over it through its refusal to permit conversion to Bitcoin Gold.  *Id.* at 269-70, 276.  The trial court rejected this claim and the Court of Appeals affirmed.  It noted that conversion requires "affirmative action to deprive another of property, not a lack of action," *id.* at 276 (internal quotations and citation omitted), and that the plaintiff's conclusory allegation that the defendant's inaction "was tantamount to direct conduct depriving me of my property and was [the defendant's] way of exercising complete dominion and control over my property thus depriving me of it" failed to establish conversion as a matter of law.  *Id.* (noting that the plaintiff's "contention that inaction amounts to an affirmative exercise of dominion and control is unsupported by legal authority and is contradicted by the analyses in the cases cited").

This analysis directly precludes Plaintiff's claim.  While Plaintiff asserts that *Archer* stands for the proposition that "the 'action' described need only be an assertion of dominion," Opp. at 13:23, that is clearly incorrect.  On the contrary, *Archer* reflects that the sort of passive, non-action by the defendant in that case – and mirrored in this

6

case – does *not* support a claim for conversion. And despite Plaintiff's repeated statement that Defendants have "refus[ed] to return" the copyrights at issue to him and have "prevent[ed] Plaintiff from enjoying and exploiting his intellectual property," Opp. at 10:4-6, there is not a single factual allegation in the Amended Complaint of any *action* that Defendants have taken in this regard. Plaintiff has expressly disclaimed that his conversion theory is based on Defendants' reproduction, distribution, or other affirmative conduct with respect to the Works, and Plaintiff has not included any allegation that Defendants have taken any *affirmative* action to interfere with his attempted exploitation of those Works (*e.g.*, by accusing others of infringement).³ Plaintiff's conversion claim therefore fails as a matter of law.

## IV. PLAINTIFF'S DECLARATORY RELIEF CLAIM SHOULD BE SUBSTANTIALLY DISMISSED

### A. Plaintiff Cannot Establish Constitutional Ripeness.

Plaintiff does not dispute that the putative termination dates for twenty of the twenty-four Works identified in the Notices lie far into the future, ranging from 2022 to 2030. Am. Compl. Exs. 1 & 2. This fact alone establishes that any dispute is not "actual or imminent," as is required for constitutional ripeness. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And because Defendants have not taken a position as to these Later Works (nor is there any obligation for Defendants to do so, and certainly not years before their putative effective termination dates), any claims respecting the Later Works are "not ripe for adjudication [because they necessarily] rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 301 (1998) (internal quotations and citations omitted).⁴ Plaintiff does not even reference these controlling Supreme Court authorities.

---

³ Nor is this a case in which Defendants are refusing to return physical property ostensibly belonging to Plaintiff. *See, e.g.*, *Burlesci v. Peterson*, 68 Cal. App. 4th 1062, 1066 (1998) (failure to release kitchen equipment to permit sale by owner).

⁴ While Plaintiff raises the spectre of "piece meal litigation," Opp. at 19:9, that is the sort of speculative posturing respecting "contingent future events" that is insufficient

7

Instead, Plaintiff attempts to distinguish the opinions in *Purely Driven Prod., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016 (C.D. Cal. 2016), and *Kordich v. Salton, Inc.,* No. 05cv0202-LAB (RBB), 2005 WL 8173161 (S.D. Cal. July 5, 2005), but those cases are directly applicable. In *Purely Driven*, although one party had expressly challenged the other's trademark rights in the United States Patent and Trademark Office, the court concluded that related litigation was still not "of sufficient immediacy and reality" to meet the ripeness standard. *Purely Driven*, 171 F. Supp. 3d at 1018-19. Here, Defendants have taken *no* position as to termination of the Later Works. If filing a claim in a federal agency disputing an opposing party's rights does not meet the constitutional threshold, then taking *no* position as to the opposing party's rights surely does not meet that standard either. And in *Kordich*, the defendant had not accused the plaintiff of breaching the parties' contract, making a declaratory relief claim respecting the enforceability of that contract unripe. *Kordich*, 2005 WL 8173161, at *5. The same is true here.

Plaintiff cites *Century of Progress Prods. v. Vivendi S.A.*, No. CV 16-7733 DMG (ASX), 2018 WL 4191340 (C.D. Cal. Aug. 28, 2018), for the proposition that Defendants' failure to take a position respecting the validity of the Notices as to the Later Works does not prevent a finding of ripeness. Opp. at 17:10-13. However, *Century of Progress* is distinguishable. In that case, although defendant UMG Recordings, Inc. had not taken a position respecting the effectiveness of the plaintiff's termination notice, its parent and affiliate (both of which were co-defendants in the lawsuit) had both already disputed the validity of that notice, such that the question of the validity would be resolved in the litigation in any event. *Id.* at *2, *4, *15, *16.

Equally inapt is Plaintiff's reliance on *Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015). There, contrary to Plaintiff's claim, it was critical that the

---

to establish constitutional ripeness. Any number of factors or events may change the view or approach of either Plaintiff or Defendants with respect to any particular Work at any given time – and (in the words of the Supreme Court) such events "may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 296.

party seeking declaratory relief was the *non*-terminating party whose *present* rights were affected by the allegedly invalid termination notices. Specifically, the court credited the plaintiff's allegations that the defendant's termination notices had given rise to a "concrete, particularized, and actual injury in fact" that interfered with the plaintiff's immediate and ongoing ability to exploit the copyrights. *Ray Charles Found.* at 1116. Here, in contrast, Plaintiff has no *present* rights to the Later Works and is therefore suffering no "concrete, particularized, and actual injury in fact" as to those works – Section 203(b)(4) of the Copyright Act precludes Plaintiff from entering into a further grant, or even an agreement to make a further grant, with any party other than Warner until after the effective date of termination. See 17 U.S.C. § 203(b)(4). Thus, as to the Later Works, any "concrete" or "particularized" impact on Plaintiff is *years* away, and cannot support constitutional ripeness.[5]

### B. Plaintiff Cannot Establish Prudential Ripeness.

Plaintiff has also failed to establish prudential ripeness. Plaintiff relies on *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996), for the proposition that "pure legal questions that require little factual development are more likely to be ripe," *id.* at 1132, but Plaintiff's declaratory relief claim does not present "pure legal questions." Myriad factual issues are implicated in considering the validity of the Later Notices, including whether each of the Works referenced in the Later Notices is a work for hire (and thus not subject to termination pursuant to Section 203), the answer to which may in turn vary based upon the circumstances of the Work's creation and the terms of the contract pursuant to which such Work was created. *See id.* (prudential ripeness not satisfied where "the issues in the instant…challenge are not purely legal"). Contrary to Plaintiff's unsupported

---

[5] In a footnote, Plaintiff quotes extensively from *Mtume v. Sony Music Entm't*, No. 18 Civ. 11747 (ER), 2020 WL 832814 (S.D.N.Y. Feb. 20, 2020), in support of his constitutional ripeness argument. *See* Opp. at 18:10-27. As noted in Defendants' opening brief, this aspect of *Mtume* is distinguishable. *See* Dkt. No. 17, at 18 n.5. In all events, as discussed below, *Mtume* goes on to find the prudential ripeness standard *not* satisfied and dismisses the declaratory relief claim. If Plaintiff asks the Court to rely on *Mtume*, then the Court should grant Defendants' motion to dismiss.

9

assertion, Opp. at 19:24-25, Defendants *do* dispute that the "validity of a termination notice can be judged on its face" – indeed, the multiple, lengthy decisions in the *Siegel* case referenced above are a testament to that fact. That same reality disposes of Plaintiff's related contention that a "relatively simple" legal question may be ripe for adjudication; that proposition is in any event unsupported by the case Plaintiff cites (which appears to have nothing to do with the issue). Opp. at 19:17-24, *citing Adler v. Bd. of Educ. of City of New York*, 342 U.S. 485 (1952), *overruled in part by Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589 (1967).

Plaintiff is therefore left to attempt to distinguish the prudential ripeness analysis in *Mtume*, but that authority is directly applicable here. Plaintiff asserts that the *Mtume* court dismissed the plaintiff's declaratory relief claim because it concluded that the plaintiff's "credibility" respecting judicial economy had been "undermined" in light of the plaintiff's filing of two separate lawsuits, but the court made no such statement. Instead, the court dismissed the declaratory relief action with respect to works with future termination dates – even though (as here) it would be considering the plaintiff's claim as to works where the termination date had passed – because "the issue may be better resolved at a later time, when [the defendant] has had an opportunity to articulate its position towards the works [in dispute]," and "[t]here is…no reason for this Court to prematurely answer questions that may never be raised with respect to [the later] work[s]." *Mtume,* 2020 WL 832814, at *5-6. This analysis applies with equal force in this action.[6]

Plaintiff next maintains that the "same exact language" respecting Yoakam's employment status appears in both the 1985 Agreement and the 1990 Agreement (which later agreement covers many of the Later Works). This statement – which is unsupported by any evidentiary submission, and may therefore be summarily

---

[6] Plaintiff's reliance on *Baldwin v. EMI Feist Catalog, Inc.*, Case No. 11-81354-CIV-MARRA/BRANNON, 2012 WL 13019195 (S.D. Fla. Dec. 10, 2012), is misplaced, as the defendant had expressly repudiated the plaintiffs' termination notice, thus giving rise to a live controversy. *Id.* at *3.

10

disregarded – is simply not true. As reflected in the Battino Declaration (Dkt. No. 17-1, at ¶ 4), the 1990 Agreement expressly modifies the quoted language to affirm Yoakam's "employee-for-hire" status with respect to works created pursuant to that agreement. This distinction between the 1985 Agreement and 1990 Agreement further supports dismissal of the declaratory relief claim as to the Later Works.

Finally, Plaintiff's contention that he would be harmed by dismissal of the declaratory relief claim flows more from the operation of Section 203, and its restriction on his ability to enter into new agreements until after a termination date has passed, than from any action by Defendants (and Plaintiff's suggestion that such agreements are entered into "in practice," Opp. at 21:24, should not be credited). In all events, on its face, this is precisely the sort of "conjectural or hypothetical" harm that is insufficient to establish ripeness.

### C. The Court Should Exercise Its Discretion to Decline to Hear Plaintiff's Declaratory Relief Claim.

Alternatively, the Court should decline to hear the declaratory relief claim. Plaintiff relies primarily on *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265 (S.D.N.Y. 2020), but in *Waite*, the court found that the defendant had "stated clearly its intention not to honor the notices of termination following the effective dates of termination." *Id*. at 278. This is not the situation here, and for the reasons described above, readily distinguishes this action.

## V. PLAINTIFF FAILS TO STATE A CLAIM AGAINST WMGC

In an effort to save his claim against WMGC, Plaintiff first argues that a communication he made to one WMGC subsidiary (Warner) "might" have been answered by another (Rhino). Opp. at 23:14-19. Whatever this hypothetical contention reflects with respect to Warner and Rhino, it does not support liability against WMGC. Perhaps recognizing the futility of this claim, Plaintiff shifts gears and asserts that WMGC is liable as an alter ego of Warner and Rhino. *See* Opp. at 22:23-21:1. Incredibly, while Plaintiff then cites seven factors that may support a

finding of alter ego, Plaintiff has failed to include allegations that support *a single one* of these factors, with the possible exception that they are all located at the same address in Los Angeles. *See* Opp. at 24:6-11.

In all events, courts require detailed and "specific facts" on alter ego. *Gerritsen v. Warner Bros. Entm't*, 112 F. Supp. 3d 1011, 1042-44 (C.D. Cal. 2015) (dismissing alter ego allegations); *see also Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *2-4 (N.D. Cal. July 30, 2015). It is not sufficient to assert, as Plaintiff has done here, that WMGC ostensibly "owns and controls Warner and Rhino," that a Rhino employee was ostensibly acting "at the direction of WMG[C]" in sending a single e-mail to Plaintiff's counsel, or that WMGC earned money from Yoakam's works "through its subsidiaries Warner and Rhino." Am. Compl. ¶¶ 18, 31, 40-41. Such conclusory allegations fall far short of supporting an alter ego claim. *Gerritsen*, 112 F. Supp. 3d at 1042-44 (rejecting alter ego allegations about "wholly-owned" and "completely dominated, directed, and controlled" subsidiary as insufficient to survive motion to dismiss); *Payoda, Inc.*, 2015 WL 4593911, at *2-3 (giving "no weight" to allegation that corporate affiliates shared similar names and were described on a website as "one and the same entity").

## CONCLUSION

For the foregoing reasons, this Court should dismiss (1) the copyright infringement cause of action as to the Singles, (2) the conversion cause of action as preempted and/or for failure to state a claim, (3) the declaratory relief claim as to the Later Works for lack of subject matter jurisdiction, and (4) all claims against WMGC.

Dated: May 10, 2021                    Respectfully Submitted

                                       SIDLEY AUSTIN LLP

                                       By:  /s/ *Rollin A. Ransom*
                                            Rollin A. Ransom
                                            Attorneys for Defendants WARNER
                                            MUSIC GROUP CORP., WARNER
                                            RECORDS INC., and RHINO
                                            ENTERTAINMENT COMPANY

12