Richard S. Busch (SBN 319881)
E-Mail: *rbusch@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dwight Yoakam, an individual. | Case No.: 2:21-cv-1165 SVW-MAA |
| PLAINTIFF, | |
| vs. | |
| Warner Records, Inc., a Delaware Corporation; and Rhino Entertainment Company, a Delaware Corporation. | **SECOND AMENDED COMPLAINT FOR (1) DECLARATORY RELIEF AND (2) COPYRIGHT INFRINGEMENT** |
| DEFENDANTS. | **DEMAND FOR JURY TRIAL** |
| | Assigned to: Hon. Stephen Wilson |
| | Complaint Filed: February 9, 2021 Amended Complaint Filed: March 29, 2021 |

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this action concerns a federal question regarding copyright law.

2. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the California state law claim arises directly from the common nucleus of operative facts set forth in the claims of federal question.

3. This Court has general personal jurisdiction over Defendant Warner Records, Inc., formerly Warner Bros. Records, Inc., ("Warner") because Warner has continuous and systematic contacts within the Central District of California such that it can be found to be essentially at home within this Judicial District.

4. Warner maintains an office within this Judicial District and all actions, including contracting, exploitation, and communications, resulting in this action have occurred within this Judicial District.

5. This Court has specific personal jurisdiction over Warner because this suit arises out of or relates to its contacts with the State of California.

6. Venue is proper in the Central District of California, pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), in that Defendant Warner has its principal place of business in Los Angeles, California, and a substantial part of the events by Warner giving rise to the claims occurred in this District.

7. This Court has general personal jurisdiction over Defendant Rhino Entertainment Company ("Rhino") because Rhino has continuous and systematic contacts within the Central District of California such that it can be found to be essentially at home within this Judicial District.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

8.      Rhino maintains an office within this Judicial District and all actions, including contracting, exploitation, and communications, resulting in this action have occurred within this Judicial District.

9.      This Court has specific personal jurisdiction over Rhino because this suit arises out of or relates to its contacts with the State of California.

10.     Venue is proper in the Central District of California, pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), in that Defendant Rhino has its principal place of business in Los Angeles, California, and a substantial part of the events by Rhino giving rise to the claims occurred in this District.

11.     In the recording agreement between Plaintiff Dwight Yoakam and Defendant Warner, the parties agreed that the agreement would be governed by the laws of the State of California, and that any disagreement with respect to the agreement would be submitted to the courts of the State of California or the federal courts within the State of California.

12.     This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **INTRODUCTION**

13.     Plaintiff Dwight Yoakam ("Mr. Yoakam") is a world-famous multi-platinum singer songwriter musician who is renowned for his pioneering style of country music. He has recorded more than 20 albums and compilations, charted more than 30 singles on the *Billboard* Hot Country Songs charts, and sold more than 30 million records. He has recorded five *Billboard* No. 1 albums, twelve gold albums, and nine platinum albums, including the triple-platinum *This Time*. Having profited and benefitted off of Mr. Yoakam for 35 years, Defendants do not want their gravy train to end, and have therefore refused to acknowledge and accept

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

Mr. Yoakam's valid Notices of Termination served properly under Section 203 of the United States Copyright Act of 1976 in blatant disregard of Mr. Yoakam's rights. As a result, Mr. Yoakam brings this action seeking declaratory relief and a finding of copyright infringement for the reasons set forth below in detail:

14.     This is an action for declaratory relief to enforce Mr. Yoakam's termination rights, granted by the Copyright Act of 1976, which are currently being obstructed by Warner and Rhino, corporations that have already made millions of dollars off of the works of Mr. Yoakam. Warner and Rhino (jointly, the "Defendants"), have profited off of Mr. Yoakam's artistry for decades and yet now refuse him his basic right of copyright recapture granted under the Copyright Act. Despite the financial success Mr. Yoakam brought to Defendants, after receiving letters containing valid notices of termination (the "Initial Termination Notices" and the "Subsequent Termination Notices," jointly the "Termination Notices") enforcing Mr. Yoakam's statutory right to terminate the transfer and/or license of his copyrights and rights under copyright after decades of exploitation, Defendants have refused to accept the Termination Notices and refuse to acknowledge the return of rights to Mr. Yoakam.

15.     Mr. Yoakam did not just send the Termination Notices, but instead went above and beyond the statutory requirements, working in good faith to notify Defendants of their obligations under Section 203 of the Copyright Act repeatedly. Over the past two years, Mr. Yoakam's managers and transactional counsel have had numerous phone calls with Defendants regarding the Termination Notices. On each of these occasions, Defendants proposed deal terms for an ongoing relationship with Mr. Yoakam, but failed to recognize that the Termination Notices will be taking effect. On January 20, 2021, Mr. Yoakam sent a letter to Defendants, again requesting acknowledgement of the Initial Termination Notices. Defendants

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

ignored the clear request in this letter, instead offering yet another phone call to discuss proposed deal terms. On January 29, 2021, Mr. Yoakam sent a final letter demanding Defendants acknowledge the Initial Termination Notices. Mr. Yoakam even went so far as to attach a draft of this Complaint, so that Defendants would be cognizant of the consequences of their rejection of the Initial Termination Notices. Despite this, and to spite Mr. Yoakam, Defendants' response was that certain of the works involved herein would be "taken down," that the notice of termination for one release included within the Initial Termination Notices is supposedly ineffective due to an inconsequential and harmless scrivener's error discussed below (which does not invalidate the notice), and that Defendants "have not yet made a decision" about what to do about the others despite having two years of notice to so decide. Mr. Yoakam is being irreparably injured every day that Defendants fail to recognize the validity of the Termination Notices.  For one, Defendants' punitive measure of taking works down rather than continuing to exploit them means that Mr. Yoakam is being denied royalties that he should be receiving. Second, Defendants' actions are preventing Mr. Yoakam from selling or otherwise exploiting his own intellectual property as he sees fit.  All of this makes the resolution ripe for judicial review.

16.    Further, Defendants' choice to remove certain works by Mr. Yoakam creates a peculiar situation. On one hand, Defendants' removal of works in an effort to avoid infringing Mr. Yoakam's copyrights implicitly recognizes the Termination Notices. Despite this, Defendants refuse to acknowledge Mr. Yoakam's right to exploit these works himself and have continued to claim ownership of these works, which the Copyright Act clearly states have returned to their author, Mr. Yoakam, upon each works' effective termination date.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

17.    Mr. Yoakam's termination rights under the Copyright Act have been blatantly ignored by the Defendants as they reject Mr. Yoakam's timely and valid Termination Notices for no legitimate reason other than their own greed. Defendants, by refusing to return Mr. Yoakam's works while simultaneously refusing to exploit those same works, are essentially holding Mr. Yoakam's copyrights hostage and paralyzing Mr. Yoakam from financially benefitting from his statutory right to terminate the transfer of his copyrights to Defendants. A grant of declaratory relief is therefore necessary to facilitate Mr. Yoakam's exploitation of his works. As noted, each day that Mr. Yoakam's works remain in this precarious situation, Mr. Yoakam is entirely precluded from earning any of the money he typically would earn from these works. A grant of declaratory relief stating that the Termination Notices are valid and effective will also save both Mr. Yoakam and Defendants from litigating after each effective termination date listed in the Termination Notices.

18.    Defendants' conduct in refusing to take any substantial steps toward returning Mr. Yoakam's works or making any conclusive statement that they will not be returning the works to Mr. Yoakam makes this action for declaratory relief all the more pressing. In order to effectuate a smooth transition from Defendants' distribution system to a new distribution system authorized by Mr. Yoakam, Mr. Yoakam will need to know well in advance of the effective dates of copyright terminations and whether or not Defendants will continue to interfere with Mr. Yoakam's right to exploit his own works.  For this reason, as discussed herein, this dispute requires an order from the Court stating that from and after each of the effective dates within the Termination Notices, Mr. Yoakam will be the sole copyright owner, thereby avoiding further confusion regarding ownership of the works, and in turn further gaps in the availability of Mr. Yoakam's music.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

19.     This is also an action for copyright infringement based on Defendants' actions to undermine Mr. Yoakam's ability to possess and exploit the copyrights to which, after sending proper termination notices to Defendants, he became the sole owner of.

20.     The Copyright Act permits authors to terminate the grant of their copyright during a five-year window beginning five years from the end of thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier. 17 U.S.C. § 203.

21.     Under the 1909 Copyright Act, the term of copyright protection included an initial 28-year period, followed by a 28-year renewal term. Because authors often grant the rights to their works before their true value is known, Congress's goal with renewal terms was to give authors an opportunity to own their works after their value had been ascertained. Unfortunately, this purpose was thwarted, as authors faced market pressure essentially forcing them to also grant the renewal term at the time that they granted their initial copyright term.

22.     To correct this, in 1976 Congress introduced a termination right to the 1976 Copyright Act whereby copyrights would revest in the author before any future assignment could be deemed valid.

23.     Much like authors under the 1909 Copyright Act, more modern authors often enter into long and arduous agreements before they know the true value of their work. Because of this, they are often locked into earning royalties disproportionately small compared to the fair market value of their works.

7

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

24.     The "second bite at the apple" conferred by the 1976 Copyright Act is extremely valuable to authors as it allows them to finally own their creations as well as financially benefit from the works.

25.     As of the effective termination date listed in a valid and effective notice of termination, the copyright in said works automatically vests in the author.

26.     Mr. Yoakam served the Termination Notices on Warner in accordance with 17 U.S.C. § 203.

27.     In Defendants' January 31, 2021 email, a representative of Rhino stated "we have not yet made a decision as to how to proceed" with the works contained in the Initial Termination Notices. Defendants are mistaken in their belief that they have any choice in returning Mr. Yoakam's works to him. Mr. Yoakam's works return to him by virtue of his statutory right engrained in the Copyright Act, regardless of what Defendants "decide."

28.     Mr. Yoakam is therefore unable to bring his future rights to market. Every day that the enforcement of his rights is delayed, Mr. Yoakam suffers financially as he is unable to effectively shop or pre-sell copyrights which are encumbered with a dispute over the works' ownership.

29.     Therefore, Mr. Yoakam seeks immediate declaratory relief that the Termination Notices are effective and will be enforced as of each upcoming effective termination date.

30.     As of each additional upcoming effective termination date listed in the Termination Notices, Defendants will either begin engaging in knowing and willful copyright infringement, or continue to completely block Mr. Yoakam's music from the stream of commerce. Therefore, Mr. Yoakam also alleges a claim of copyright infringement against the Defendants.

## **PARTIES**

8

31.     Mr. Yoakam is an adult individual who is a resident of Los Angeles, California. Mr. Yoakam is a songwriter, recording artist, record producer, concert performer, actor, and director of music videos and motion pictures with a long and successful career. Highlights of Mr. Yoakam's critical and commercial successes include selling over 25 million albums worldwide, earning two Grammy Awards and eighteen Grammy nominations across the 1980's, 1990's and 2000's, as well as earning such prestigious awards as the Americana Music Award for Artist of the Year, the Academy of Country Music's Cliff Stone Pioneer Award, the BMI President's Award, and a place in the Nashville Songwriters Hall of Fame, among many others.

32.     Rhino is an American record label owned by Warner Music Group Corp. ("WMG"), and organized under Delaware law with its principal place of business and global headquarters located at 777 S. Santa Fe Avenue, Los Angeles, California. In its corporate filings with the State of California, Rhino describes its business as "Music and Entertainment."

33.     Warner, formerly Warner Bros. Records, Inc., is an American global music corporation organized under Delaware law with its principal place of business and global headquarters located at 777 S. Santa Fe Avenue, Los Angeles, California. In its corporate filings with the State of California, Warner describes its business as "Music and Entertainment."

34.     Though the Termination Notices were addressed to Mr. Hamilton, the then senior business affairs executive at Warner who was assigned as the primary liaison on legal and business matters relating to Mr. Yoakam, the first email response regarding the Termination Notices came from Patti Coleman of WMG. It appears that the matter was re-assigned internally as the next response from

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

Defendants came from Melissa Battino ("Ms. Battino"), Vice President of Business and Legal Affairs at Rhino.

35.     All Defendants appear to share an office in Los Angeles, California.

36.     On information and belief, WMG owns and controls Warner and Rhino.

## **FACTUAL BACKGROUND**

### **Dwight Yoakam's Early Work**

37.     Mr. Yoakam hereby incorporates by reference, as though fully set forth herein, the allegations in paragraphs 1 through 37, inclusive.

38.     In 1983 through early 1984, Mr. Yoakam, recorded a six song LP album entitled *Guitars, Cadillacs, Etc., Etc.* (the "LP"). The LP contained the tracks "It Won't Hurt", "South of Cincinnati", "I'll Be Gone", "Twenty Years", "Ring of Fire," and "Miner's Prayer". All songs except "Ring of Fire" were written by Mr. Yoakam.

39.     In accordance with 17 U.S.C. § 201(a), the copyright in these sound recordings automatically vested in the author Mr. Yoakam, at the time of creation.

40.     Mr. Yoakam funded the recording of the LP as an independent artist, without financial or creative support from any record label. Mr. Yoakam invested his own money to record these songs. Mr. Yoakam exclusively controlled every aspect of recording of the LP, including, without limitation, selection of the material to be recorded, individual producer and engineer to be engaged for the sessions, the dates, times and places for the recording and mixing of the Masters, including the recording studio at which the recordings would take place, the supporting musicians and the final mixes of the completed master recordings.

41.     In early 1984, Mr. Yoakam released the LP through an independent company, Oak Records, while maintaining his ownership of the works.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

42.     The LP artwork, designed by Mr. Yoakam, consisted of a black and white photograph of Mr. Yoakam wearing a cowboy hat. The LP track listing artwork consisted of a black and white photograph of Mr. Yoakam and a car. Mr. Yoakam supervised preparation and had final approval over the artwork for the LP and associated promotion, publicity, marketing and advertising. Mr. Yoakam personally organized and performed concert performances, radio appearances and other promotional services in support of distribution of the LP.  The LP produced and marketed by Mr. Yoakam achieved substantial radio airplay and sales success which ultimately attracted the attention of various record labels including Warner Bros. Records.

### Dwight Yoakam and Defendants

43.     On November 22, 1985, Mr. Yoakam entered into a recording agreement with Warner Bros. Records, Inc. (the "1985 Agreement"). This Agreement contained four option periods, under which Warner could release up to nine albums by Mr. Yoakam.

44.     The 1985 Agreement includes a clause which reads "Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent or **employee** of the other." (emphasis added).

45.     On information and belief, Warner's intention was to rerelease the recordings previously released in the LP, as well as new works by Mr. Yoakam. Mr. Yoakam assigned to Warner the rights to continued marketing and distribution of the master recordings embodied in the LP which he had theretofore written, recorded, produced, and created.

46.     On January 31, 1986, Warner, through its flagship label, Reprise Records, released Mr. Yoakam's recording of "Honky Tonk Man" alongside a

11

rerelease of "Miner's Prayer" from the previously released LP to promote Mr. Yoakam's upcoming full-length album (the "Singles").

47.    On March 12, 1986, Reprise rereleased the six song LP with an additional four tracks as Warner's first full length album under the 1985 Agreement titled, again, *Guitars, Cadillacs, Etc., Etc.* (the "First Warner Album"). In an unprecedented fashion, the First Warner Album contained all of the original previously released recordings from the LP.

48.    The First Warner Album contained a reissue of the same recordings of the songs from the LP, with four additional songs performed by Mr. Yoakam titled "Honky Tonk Man," "Bury Me," "Guitars, Cadillacs," and "Heartaches by the Number." Again Mr. Yoakam controlled all aspects of the recording of the additional master recordings for the First Warner Album, including, without limitation, selection of the material to be recorded, individual producers and engineers to be engaged for the sessions, the dates, times and places for the recording and mixing of the master recordings, including the recording studio at which the recordings would take place, the supporting musicians and the final mixes of the completed master recordings.

49.    The First Warner Album's artwork was nearly identical to the artwork of the LP. The First Warner Album's artwork is the same photographs as the LP's artwork, only colorized by hand. Again, the artwork was created under the supervision and final approval of Mr. Yoakam.

50.    The songs "It Won't Hurt," "South of Cincinnati," "I'll Be Gone," "Twenty Years," "Ring of Fire," and "Miner's Prayer", as they appear on the First Warner Album, were created before Warner had ever interacted with Mr. Yoakam. As such, Mr. Yoakam owned the copyright in these works outright before entering into the 1985 Agreement.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

51.    Reprise also released a music video for "Honky Tonk Man" on March 3, 1986. This music video was not created by any of the Defendants, but instead, like all of his music videos, was created by Mr. Yoakam. Mr. Yoakam had final approval over all elements of each of the music videos, including, without limitation, the song to be featured in the video, the storyline or other narrative to be depicted, the dates, times and places for production of the video, the director and other production staff and the final music video delivered to Warner for use in promoting Mr. Yoakam's recordings.

52.    Mr. Yoakam continued to play a key role in the creation of his music videos, authoring eight additional music videos subject to the Termination Notices.

53.    In the following years, Mr. Yoakam continued to perform his duties under the 1985 Agreement, as well as subsequent agreements entered into in 1990 and 1996, releasing ten more albums for Defendants. With each succeeding release of music and associated music videos, Mr. Yoakam exerted increasing independence and autonomy and creative direction, including, for example, acting as producer or coproducer of his own recordings and even serving as director of certain music videos.

54.    Mr. Yoakam received credit as director of the videos "Thousand Miles from Nowhere" and "Ain't That Lonely Yet," which are included within the Termination Notices.

### The Termination Notices

55.    On February 5, 2019, Mr. Yoakam sent the Initial Termination Notices, attached hereto as **Exhibit 1**.

56.    On December 8, 2020, Mr. Yoakam submitted the Initial Termination Notices to be recorded with the United States Copyright Office.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

57.     The Initial Termination Notices advised Defendants of Mr. Yoakam's exercise of his statutory termination rights and the effective termination dates of various copyrights in master recordings and music videos.

58.     Instead of acknowledging the validity of the Initial Termination Notices, Rhino instead proposed new deal terms.

59.     On January 20, 2021, Mr. Yoakam sent a letter to Rhino stating that he would be properly concluding that Defendants' failure to respond to the Initial Termination Notices or the January 20, 2021 letter communicated a rejection of the Termination Notices.

60.     Once again, Defendants failed to acknowledge Mr. Yoakam's termination rights effected through the Initial Termination Notices, thus leaving him in a state of perpetual limbo.

61.     On January 29, 2021, Mr. Yoakam sent another letter, with a draft version of the Complaint attached, to Rhino stating that he would be filing this lawsuit to enforce his rights absent Defendants' acknowledgement of the rights conferred to Mr. Yoakam as advised in the Initial Termination Notices.

62.     Ms. Battino of Rhino responded that she was copying litigation counsel, but that "you should know that we already requested internally that the single Honky Tonk Man/Miner's Prayer be taken down, so a lawsuit would be premature."

63.     Defendants, by stating that the Singles would be "taken down" so as to avoid a lawsuit, recognize that further exploiting the Singles would constitute infringement of Mr. Yoakam's copyrights.

64.     On January 31, 2021, Ms. Battino sent an email that explains "there is no basis for an infringement claim with respect to the single Honky Tonk Man/Miner's Prayer" because "we've already requested that it be taken down and

we expect that will be completed this weekend." Defendants for the first time ever, and after five days shy of two years from the day they were first placed on notice, notified Mr. Yoakam that the effective termination date of the Singles as listed in the Initial Termination Notices was less than a week short of the two-year statutory notice period.

65.    Defendants, despite clearly being put on notice and being fully prepared and able to take the necessary steps to return the works to Mr. Yoakam, waited in bad faith until the last possible moment to reject the Termination Notices for the Singles, on the grounds of the harmless scrivener error in calculating the effective termination date of the Singles by five days. Mr. Yoakam has now waited the extra five days to file this action. Defendants waited until now purposefully and in bad faith so that Mr. Yoakam would not amend those Initial Termination Notices for the Singles two years earlier. This transparent attempt at a legal "gotcha" does not matter, however, as this scrivener error is harmless and does not affect the validity of the Initial Termination Notices. Defendants are also estopped from challenging the Singles' Termination Notice due to their bad faith.

66.    Defendants make no legitimate argument against the effectiveness of the other works included in the Initial Termination Notices, despite the passing of the effective termination date of the First Warner Album and the "Honky Tonk Man" music video. Indeed, as noted, Defendants cavalierly claim "we have not yet made a decision as to how to proceed" despite two years' advance notice, and in blatant disregard of Mr. Yoakam's rights and the damage being done to him daily as a result. In fact, such decision does not need to be made by Defendants, as it was made for them in the drafting of the Copyright Act, which reads "Upon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author[.]" 17 U.S.C. § 203(b).

67.     On March 26, 2021 Mr. Yoakam sent subsequent termination notices (the "Subsequent Termination Notices"), attached hereto as **Exhibit 2**.

68.     The Subsequent Termination Notices advised Defendants of Mr. Yoakam's exercise of his statutory termination rights and the effective termination dates of various copyrights in master recordings and music videos.

69.     Mr. Yoakam has received no response from Defendants concerning the Subsequent Termination Notices.

## <u>CLAIM FOR DECLARATORY RELIEF</u>

### **(The Termination Notices are Valid and Enforceable)**

70.     Mr. Yoakam hereby incorporates by reference, as though fully set forth herein, the allegations in paragraphs 1 through 69, inclusive.

71.     The copyright termination right is available "in the case of any work other than a work made for hire," 17 U.S.C. § 203. The Copyright Act defines a "work made for hire" as either (1) a work prepared by an employee within the scope of his or her employment; <u>or</u> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. 17 U.S.C. § 101 (emphasis added). Sound recordings were specifically excluded from the definition of work for hire under the 1976 Copyright Act.

72.     Mr. Yoakam is not and never has been an employee of any of the Defendants.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

73.    Mr. Yoakam has never entered into any employment agreement with any of the Defendants.

74.    Mr. Yoakam has never received any typical employment benefits from any of the Defendants such as health insurance or tax withholdings.

75.    In fact, the 1985 Agreement even reads "Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent or **employee** of the other." (emphasis added).

76.    The 1990 Agreement includes this same exact language.

77.    The 1996 Agreement also includes this same exact language.

78.    Sound recordings do not fall within any of the nine categories of work for hire prescribed by the Copyright Act.

79.    Therefore, the 1985 Agreement uses "work for hire" language only to create an artificial work for hire relationship, despite not meeting any statutory requirement of such status. Contractual language does not create a "work for hire" relationship under the 1976 Copyright Act. Furthermore, as is the case here, the work was created before any contractual relationship was even formed.

80.    In fact, the purpose of the 1985 Agreement was to acquire the rights to the LP, and secure Mr. Yoakam's exclusive performances as a sound recording artist.

81.    Warner itself acknowledges that Mr. Yoakam was not an employee, and as such any refusal of Mr. Yoakam's Termination Notices on the basis of a "work for hire" relationship would be in direct indifference to the definition of "work made for hire" under 17 U.S.C. § 101 and an outright rejection of the rights granted to authors under 17 U.S.C. § 203.

82.    On February 5, 2019, in accordance with 17 U.S.C. § 203, Mr. Yoakam served valid and enforceable Termination Notices upon Warner.

17

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

83.     The effective termination date of the Singles promoting the First Warner Album is February 5, 2021.

84.     On March 26, 2021 in accordance with 17 U.S.C. § 203, Mr. Yoakam sent valid and enforceable Subsequent Termination Notices to Warner.

85.     In the Initial Termination Notices, the effective termination date of the Singles was, due to a typographical error, unintentionally five days short of the required two-year noticing period. This harmless error concerns only the Singles, not the First Album or any music videos. Had Defendants notified Mr. Yoakam of this harmless error, he would have amended the Initial Termination Notices to reflect an effective termination date of February 5, 2021.

86.     This error is clearly typographical in nature as it was made in the process of moving dates from the "Publication" column to the "Effective Termination Date" column. All other works within the Termination Notices have two-years notice, and Mr. Yoakam had no intent to deceive Defendants. Mr. Yoakam obviously intended to provide Defendants two years notice of termination.

87.     The effective termination date of the First Warner Album is March 3, 2021.

88.     The effective termination date of the "Honky Tonk Man" music video is March 3, 2021.

89.     The Termination Notices cover additional works with effective termination dates ranging from March 3, 2021 to November 3, 2030.

90.     On November 23, 2020, after engaging in telephonic negotiations with Mr. Yoakam's managers, Warner first responded to the Notices of Termination in writing by proposing new deal terms, ignoring Mr. Yoakam's statutory right to terminate the grant to Warner.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

91.     Defendants' refusal of Mr. Yoakam's rights under the Copyright Act of 1976 have completely thwarted Mr. Yoakam's ability to shop and sell the rights to his works as of the effective termination date, despite decades of fulfilling his contractual obligations to Defendants. Defendants also stifle Mr. Yoakam's creative rights under the Copyright Act, including his right to create derivative works based on his copyrights, to prepare new mixes and compilations of his recordings, and to exploit his recordings in other projects and audiovisual works.

92.     Every hour that Mr. Yoakam's works are absent from the marketplace, as a result of Mr. Yoakam's inability to exploit the works due to Defendants' false ownership claim and Defendants' refusal to exploit Mr. Yoakam's works, Mr. Yoakam is financially damaged. Mr. Yoakam is unable to earn royalties on these works, his fans are unable to listen to these works, and his streaming count, a quantifier that directly impacts the known value of a song, is detrimentally impacted.

93.     Even if Mr. Yoakam were able to reintroduce his works onto online streaming platforms, without Defendants' cooperation, the stream count on each of the works would restart at zero, seriously harming the perceived value of the song.

94.     Defendants still have not "made a decision as to how to proceed" with the return of the First Warner Album to Mr. Yoakam, despite the passing of the March 3, 2021 effective termination date.

95.     Based on the foregoing facts, and subject to 28 U.S.C. §§ 2201 and 2202, an actual controversy has arisen and now exists within this jurisdiction between Mr. Yoakam and Warner regarding Warner's legal obligation to return Mr. Yoakam's works as of the effective termination date listed in the Termination Notices.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

96.     Mr. Yoakam therefore brings this action to have this Court declare the following:

    a.  Sound recordings cannot be considered "works made for hire" under the 17 U.S.C. § 101 definition.

    b.  Mr. Yoakam is not now and has never been an employee of Warner.

    c.  The works referenced in the Termination Notices that have effective termination dates through 2021 are not "works for hire."

    d.  The Termination Notices, as they apply to works with effective termination dates through 2021, are effective.

    e.  The copyrights contained within the Termination Notices that have effective termination dates through 2021 automatically return to Mr. Yoakam as of each works' respective effective termination date.

## CLAIM FOR COPYRIGHT INFRINGEMENT

97.     Mr. Yoakam hereby incorporates by reference, as though fully set forth herein, the allegations in paragraphs 1 through 96, inclusive.

98.     Pursuant to 17 U.S.C. § 501, copyright infringement occurs when anyone violates any of the exclusive rights of the copyright owner.

99.     Pursuant to 17 U.S.C. § 106, copyright owners have the exclusive right to reproduce, prepare derivative works based upon, distribute copies of, and publicly perform their copyrighted works.

100.    Defendants have intentionally thwarted Mr. Yoakam from utilizing any of these exclusive rights.

101.    As of each effective termination date included in the Termination Notices, the copyright in each work automatically returns to Mr. Yoakam.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

102.   At the time this Second Amended Complaint is filed, Mr. Yoakam is the rightful owner of the copyright to the First Album, the Singles, and the "Honky Tonk Man" music video.

103.   Despite the Singles' effective termination date of February 5, 2021, as of February 5, 2021, Defendants continue to claim ownership of the single sound recordings "Honky Tonk Man" and "Miner's Prayer." Defendants have communicated no expiration date to this claim.

104.   As of February 5, 2021, the rights to these sound recordings automatically reverted to Mr. Yoakam, without any further action on the part of Defendants being required. As such, Mr. Yoakam is the sole owner of the Singles.

105.   Defendants, by stating that the Singles would be "taken down" so as to avoid a lawsuit, recognize that further exploiting the Singles would constitute infringement of Mr. Yoakam's copyrights.

106.   As of February 9, 2021, however, the sound recording "Honky Tonk Man" was available for streaming on Spotify, without any license from Mr. Yoakam.

107.   Despite the First Album's effective termination date of March 3, 2021, as of March 29, 2021, Defendants continue to claim ownership of the sound recordings contained within the First Album. Defendants have communicated no expiration date to this claim.

108.   As of March 3, 2021, the rights to these sound recordings automatically reverted to Mr. Yoakam, without any further action on the part of Defendants being required. As such, Mr. Yoakam is the sole owner of the First Album.

109.   Despite the March 3, 2021 effective termination date of the "Honky Tonk Man" music video, as of March 29, 2021 Defendants continue to claim ownership of the video, despite Mr. Yoakam's recapture of its copyright.

110.   As of March 29, 2021, Defendants continue to exploit the "Honky Tonk Man" music video on the WMG official Dwight Yoakam YouTube channel without acquiring any license from Mr. Yoakam.

111.   As of March 29, 2021, Defendants continue to exploit the sound recording of "Guitars, Cadillacs" from the First Album on the WMG official Dwight Yoakam YouTube channel without acquiring any license from Mr. Yoakam.

112.   As of March 29, 2021, Defendants continue to exploit the sound recordings included within the First Album on the music streaming service, Napster.

113.   This continued exploitation of Mr. Yoakam's copyrights constitutes willful copyright infringement.

114.   Despite the automatic reversion of copyrights to Mr. Yoakam, Defendants intentionally obstruct and frustrate Mr. Yoakam's exclusive right, granted by the Copyright Act, to distribute his works by claiming ownership of these works.

115.   Mr. Yoakam cannot distribute his works through online streaming and sales platforms while Defendants claim ownership of the works.

116.   Mr. Yoakam cannot create derivative works without all but guaranteeing a punitive lawsuit from Defendants as a result of him exercising his rights.

117.   Though Mr. Yoakam is the owner of the copyrights in the Singles, the First Album, and the "Honky Tonk Man" music video, Defendants are exercising

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

dominion and control over them and Mr. Yoakam's exclusive rights under Section 106 of the United States Copyright Act.

118. By purposefully exercising control over Mr. Yoakam's Section 106 exclusive rights (including deciding not to distribute the Singles and the First Album), Defendants are committing knowing, willful copyright infringement.

119. As each additional effective termination date comes to pass, Mr. Yoakam's claims for copyright infringement will only expand.

120. As a result, Mr. Yoakam seeks actual damages, or in the alternative statutory damages for willful copyright infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Yoakam prays for the following:

**ON THE FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

1. For a declaratory judgment of this Court with respect to the legal issue described in paragraph 96, above;

**ON THE SECOND CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT**

1. For an award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, inclusive of the injury to the market value of the copyrights in Mr. Yoakam's works, and the profits of Defendants as will be proven at trial, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c), one hundred and fifty thousand dollars ($150,000.00) for each act of willful infringement with respect to each of Mr. Yoakam's works after its respective effective termination date; and

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT

1        2.     For such fees and costs (including reasonable attorney's fees) incurred

2    herein as permitted by law; and for such other and further relief as the Court may

3    deem proper and just.

4

5    Dated: July 26, 2021          Respectfully submitted,

6                                  By: */s/ Richard S. Busch*

7                                  Richard S. Busch (SBN 319881)
                                   *E-Mail: rbusch@kingballow.com*

8                                  KING & BALLOW

9                                  1999 Avenue of the Stars, Suite 1100
                                   Century City, CA 90067

10                                 Telephone: (424) 253-1255

11                                 *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                           24

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT
INFRINGEMENT

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure Rule 38(b), and otherwise, Plaintiffs respectfully demand a jury trial on the issues of copyright infringement raised in this Complaint.


Dated: July 26, 2021              Respectfully submitted,

By: */s/ Richard S. Busch*
Richard S. Busch (SBN 319881)
*E-Mail: rbusch@kingballow.com*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
*Attorney for Plaintiff*

25
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COPYRIGHT INFRINGEMENT