Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Mitchell Santos (SBN 332849)
mitchell.santos@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: + 213 896 6000
Facsimile: + 213 896 6600

Attorneys for Defendants
WARNER RECORDS INC. AND RHINO ENTERTAINMENT COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT YOAKAM, an individual, <br><br> Plaintiff, <br><br> v. <br><br> WARNER RECORDS INC., a Delaware corporation; and RHINO ENTERTAINMENT COMPANY, a Delaware corporation, <br><br> Defendants. | Case No. 2:21-cv-1165-SVW (MAA) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:  February 14, 2022 <br> Time:  1:30 p.m. <br> Place: Courtroom 10A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 2

    A.    The 1985 Agreement Between Plaintiff and Warner. ................................. 2

    B.    Plaintiff's Purported Termination Notices. ................................................ 2

    C.    Defendants' Actions in Response to the Termination Notices. ................. 3

    D.    The Alleged Infringements. ....................................................................... 3

LEGAL STANDARD ............................................................................................. 4

ARGUMENT .......................................................................................................... 5

CONCLUSION ....................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................ 5, 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................ 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................ 4

*Mana Wai', Inc. v. Amato Beverly Hills, LLC*,
   No. SACV 20-1091 JVS (DFMx), 2020 WL 7247335, (C.D. Cal. Oct.
   26, 2020) .............................................................................................................. 5

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ..................................................................... 1, 5, 8

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ........................................................................ 7, 8

**Statutes**

17 U.S.C. § 106 ............................................................................................................ 5, 6

17 U.S.C. § 203 ........................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Warner Records Inc. ("Warner") and Rhino Entertainment Company ("Rhino," and together with Warner, "Defendants") submit this memorandum of points and authorities in support of their motion for partial summary judgment (the "Motion") as to plaintiff Dwight Yoakam's ("Plaintiff") copyright infringement claim.

# INTRODUCTION

In this action, Plaintiff alleges that he terminated Warner's ownership of the copyright in various sound recordings pursuant to 17 U.S.C. § 203, but that Defendants nonetheless "continue to exploit" those sound recordings. Corrected Second Am. Compl. ("CSAC") [Dkt. No. 25] ¶¶ 101, 111, 112. Based on these allegations, Plaintiff asserts a claim for declaratory relief (which is not at issue in this motion) and a claim for copyright infringement (which is). Specifically, Plaintiff's copyright infringement claim is based on the continued presence of certain sound recordings on digital service provider ("DSP") platforms after Plaintiff purports to have terminated Warner's copyright interest.

To support its claim, however, Plaintiff must show that Defendants are the direct (or "proximate") cause of the alleged infringement. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666-67 (9th Cir. 2017). No such evidence exists here. On the contrary, the undisputed evidence establishes that the sound recordings that remained available on the DSP platforms were available not *because* of Defendants' actions, but *despite* Defendants' actions—namely, despite Defendants' notification to all DSPs that the DSPs were no longer authorized by Defendants to exploit the works at issue in the United States following those works' putative effective dates of termination. Because Plaintiff cannot establish that Defendants are the proximate cause of the DSPs' continued exploitation of these works, his copyright infringement claim fails as a matter of law. The Court should therefore grant summary judgment in favor of Defendants on that claim.

# BACKGROUND

### A.  The 1985 Agreement Between Plaintiff and Warner.

Plaintiff and Warner first entered into an agreement for Plaintiff's exclusive services as a recording artist in 1985 (the "1985 Agreement").  Defendants' Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") No. 1.  Under the 1985 Agreement, Warner released sound recordings featuring Plaintiff entitled "Honky Tonk Man" and "Miner's Prayer" as singles (collectively, the "Singles") through its label Reprise Records in early 1986.  DSUF No. 2.  Shortly thereafter, in March 1986, Warner released a full-length album entitled "Guitars, Cadillacs, Etc. Etc." (the "First Album"), which included the Singles and eight other sound recordings featuring Plaintiff.  DSUF No. 3.  Plaintiff was also featured in a music video for the single "Honky Tonk Man," which was likewise released in 1986.  DSUF No. 4.  The 1985 Agreement provides that Warner is the owner of the copyright in all of these works. DSUF No. 5.  Since 1986, Warner and its affiliate Rhino have distributed and otherwise exploited these works, including by granting licenses to various DSPs to stream or permit digital downloads of the works.  DSUF No. 6.

### B.  Plaintiff's Purported Termination Notices.

By letter dated February 5, 2019, Plaintiff's counsel transmitted to Warner putative "Notices of Termination" pursuant to 17 U.S.C. § 203 (the "Termination Notices"), pursuant to which Plaintiff purported to terminate Warner's United States copyright interest in various works, including the above-referenced sound recordings and music video.  DSUF No. 7.  The Termination Notices identified the putative "Effective Date of Termination" as to each work; as relevant to this lawsuit, the putative effective dates of termination are as follows:

The Singles:  January 31, 2021

The First Album:  March 3, 2021

The "Honky Tonk Man" music video:  March 3, 2021

DSUF No. 8.[1]

### C. Defendants' Actions in Response to the Termination Notices.

Following Warner's receipt of the Termination Notices, the parties engaged in periodic communications regarding Plaintiff's recording agreements and the parties' relationship. DSUF No. 9. As the putative effective date of termination for the Singles neared, though it was under no obligation to do so, Defendants elected to instruct those DSPs that Defendants had previously authorized to exploit the works that Defendants were no longer authorizing such exploitation in the United States. To that end, on January 31, 2021, Defendants communicated with each such DSP via industry-standard XML feed and informed the DSPs that they were no longer authorized to exploit the Singles in the United States. DSUF No. 10. Among the DSPs that received the XML feed update from Defendants were Spotify and Napster. *Id.*

Plaintiff commenced this action on February 9, 2021. *See* Dkt. No. 1. Following the filing of the lawsuit, Defendants elected to instruct the DSPs that exploitation of the eight other sound recordings on the First Album was no longer authorized in the United States. Accordingly, prior to the March 3, 2021 putative effective date associated with the First Album, Defendants instructed each DSP via industry-standard XML that it was no longer authorized to exploit any of the tracks embodied on the First Album in the United States. DSUF No. 11. As with the Singles, among the DSPs that received this XML feed update were Spotify and Napster. *Id.*

### D. The Alleged Infringements.

In the CSAC, Plaintiff alleges three specific claimed infringements:

- Plaintiff claims that the sound recording for "Honky Tonk Man" remained available on Spotify "[a]s of February 9, 2021," notwithstanding

---

[1] The Court has dismissed Plaintiff's claims as to works identified in the Termination Notices with a putative effective date of termination after 2021. *See* Dkt. No. 23 at 17-18.

-3-

Defendants' earlier instruction to Spotify that exploitation of that track in the United States was no longer authorized by Defendants. CSAC ¶ 106. However, the identified source of the sound recording on Spotify is not the Singles, the First Album, or Defendants; instead, Spotify reflects that the source of the sound recording is a compilation soundtrack for the Ken Burns documentary *Country Music*, provided to Spotify by another record label. DSUF No. 12.

- Plaintiff claims that the sound recordings included on the First Album remained available on Napster "[a]s of March 29, 2021," notwithstanding Defendants' earlier instruction to Napster that exploitation of the First Album in the United States was no longer authorized by Defendants. CSAC ¶ 112. Promptly following receipt of Plaintiff's First Amended Complaint ("FAC") in this action (in which this allegation was first raised), Defendants communicated with Napster and reiterated the instruction to remove the content, which Napster confirmed it would do. DSUF No. 13.

- Finally, Plaintiff claims that the sound recording of "Guitars, Cadillacs" and the "Honky Tonk Man" music video were present on the "WMG Official Dwight Yoakam YouTube channel" "[a]s of March 29, 2021." However, as Plaintiff knows, Defendants relinquished all control of the "WMG official Dwight Yoakam YouTube channel" to Plaintiff in 2009. DSUF No. 14. As a result, the content available on that YouTube channel has been solely the responsibility of Plaintiff for over a decade. *Id.*

## LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

-4-

there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## ARGUMENT

To establish that Defendants are liable for infringement, Plaintiff must: (a) "show ownership of the allegedly infringed material;" and (b) "demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Mana Wai', Inc. v. Amato Beverly Hills, LLC*, No. SACV 20-1091 JVS (DFMx), 2020 WL 7247335, at *2 (C.D. Cal. Oct. 26, 2020) (same). To satisfy the second element, Plaintiff must establish that Defendants' *volitional conduct* proximately caused the purported infringement. *Giganews*, 847 F.3d at 666-67. In other words, Plaintiff must show that Defendants were the *direct cause* of the violation of an exclusive right belonging to a copyright owner. *See id*. at 666 (describing volitional conduct element as requiring liability to be "premised on conduct that can reasonably be described as the direct cause of the infringement") (internal quotations and citation omitted).

As an initial matter, Defendants vigorously dispute Plaintiff's claim of ownership (*i.e.*, the first element of Plaintiff's infringement claim), which is premised on the faulty and untenable allegation that Plaintiff both was entitled to terminate, and that he did, in fact, validly terminate, Defendants' United States copyright interest pursuant to Section 203 of the U.S. Copyright Act. For multiple reasons, including without limitation those set forth in Defendants' motion to dismiss, *see* Dkt. No. 17, Plaintiff's ownership claim fails, and Defendants reserve all arguments in that regard should this matter proceed to trial.

However, this matter should *not* proceed to trial, because as a matter of law, Plaintiff cannot satisfy the second element of his claim–*i.e.*, that Defendants directly caused the alleged infringement. As discussed above, the ostensible basis for Plaintiff's infringement claim is the presence of certain works on DSP platforms in the

-5-

United States after the alleged "effective date of termination" associated with such works.[2] In each instance, however, Defendants were not the "direct cause" of the continued presence of such works on the identified DSP platforms in the United States, and therefore, Defendants cannot be held liable for any corresponding alleged infringement.

As to the single "Honky Tonk Man," which Plaintiff claims was available in the United States on Spotify as of February 9, 2021, Defendants had previously notified Spotify that after January 31, 2021, Spotify was no longer authorized to exploit the copy of that sound recording that Defendants had provided to Spotify in the United States pursuant to the parties' license agreement. DSUF No. 10. Spotify appears to have instead sourced a version of that track from a compilation album (namely, the soundtrack of the Ken Burns documentary *Country Music*) provided to Spotify by another company. DSUF No. 12. Defendants are therefore not the proximate cause of the continuing availability of that sound recording in the United States on Spotify. Defendants did not provide the documentary soundtrack to Spotify, and in all events Defendants do not and cannot directly control the Spotify platform – they can instruct Spotify that certain sound recordings may no longer be exploited (as they did), but only Spotify can implement that instruction. DSUF No. 15.

As to "the sound recordings included within the First Album" that Plaintiff claims were available in the United States on Napster as of March 29, 2021, Defendants had likewise notified Napster that after March 3, 2021, Napster was no longer authorized to exploit the copies of those sound recordings that Defendants had provided to Napster pursuant to the parties' license agreement in the United States.

---

[2] Plaintiff also summarily asserts that Defendants have committed infringement by "deciding *not* to distribute" the sound recordings at issue. CSAC ¶ 118 (emphasis added). Such a claim fails on its face. As noted above, Plaintiff must allege and prove that Defendants "violate[d] at least one exclusive right granted to copyright holders." *A&M Recs.*, 239 F.3d at 1013. While a copyright owner has the exclusive right to *distribute* copies or phonorecords of a copyrighted work, *see* 17 U.S.C. § 106(3), the *non*-distribution of such copies or phonorecords is, by definition, *not* an infringement.

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  DSUF No. 11.  As with Spotify, Defendants do not directly control the Napster
2  platform.  They can merely instruct Napster that it is no longer authorized to exploit
3  previously authorized content (as they did prior to March 3, 2021, and again following
4  the filing of the FAC, when Defendants first learned that that instruction had
5  apparently not been complied with, DSUF No. 11).
6        Finally, despite the designation of Plaintiff's YouTube channel as the "WMG
7  official Dwight Yoakam YouTube channel," Defendants have no authority or ability
8  to control the content available on the YouTube channel, having ceded that control to
9  Plaintiff over a decade ago.  DSUF No. 14.
10        In sum, Defendants were not the direct cause of *any* of the acts of infringement
11  alleged by Plaintiff.  On the contrary, Defendants timely instructed both Spotify and
12  Napster that they were no longer authorized to exploit the Singles, the First Album
13  and the music video in the United States; the continued exploitation on Spotify and
14  Napster occurred *notwithstanding* Defendants' instruction, rather than *because* of it.
15  And Defendants played *no* role as to the inclusion of the "Guitars, Cadillacs" sound
16  recording or the "Honky Tonk Man" music video on Plaintiff's YouTube channel –
17  that placement is solely the responsibility of Plaintiff.
18        Under well-established Ninth Circuit authority, these facts preclude a claim for
19  copyright infringement.  In *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir.
20  2019), for example, the defendant, an online real estate marketplace, continued to
21  display copyrighted photographs uploaded by users after the period authorized in the
22  license agreement between the plaintiff copyright owner and the users.  *Id.* at 732-33.
23  Although the plaintiff asserted that the defendant's failure to remove the infringing
24  photographs after it received notice from the plaintiff was "a conscious choice that
25  amounts to volitional conduct," the Ninth Circuit disagreed.  Among other things, the
26  court noted that the defendant "took affirmative action to address the claims,"
27  including inquiring as to the basis for the plaintiff's rights, but that in all events, the
28  plaintiff had failed to demonstrate that the defendant "exercised control" over the

infringing content or that it directly engaged in any of the alleged infringement. *Id.* at 734; *see also Giganews*, 847 F.3d at 666-67.

The same is true here. Without conceding the legitimacy of the Termination Notices or Plaintiff's claim of ownership, Defendants took "affirmative action to address the claims" by withdrawing previously granted authorization for exploitation of those works in the United States; moreover, Defendants do not control the Spotify, Napster, and YouTube platforms, and therefore, did not engage in any volitional conduct with respect to the infringement alleged in the CSAC. Because there is no evidence that Defendants were the proximate cause of any alleged infringement, Plaintiff's claim necessarily fails.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant summary judgment as to Plaintiff's copyright infringement claim.

DATED: January 24, 2022         SIDLEY AUSTIN LLP

                                By: */s/ Rollin A. Ransom*
                                    Rollin A. Ransom

                                Attorneys for Defendants
                                WARNER RECORDS INC. and
                                RHINO ENTERTAINMENT COMPANY