Richard S. Busch (SBN 319881)
E-Mail: *rbusch@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT YOAKAM, an individual, | Case No: 2:21-cv-1165-SVW (MAA) |
| Plaintiff, | Assigned to the Honorable Stephen V. Wilson |
| vs. | |
| WARNER RECORDS, INC., a Delaware Corporation; and RHINO ENTERTAINMENT COMPANY, a Delaware Corporation. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | Hearing Date: February 14, 2022<br>Time:        1:30 P.M.<br>Courtroom:   10A |
| | Complaint filed: February 9, 2021<br>First Amended Complaint filed: March 29, 2021<br>Second Amended Complaint Filed: July 23, 2021<br>Second Amended [Corrected] Complaint Filed: July 26, 2021 |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................1

II.  STATEMENT OF FACTS ....................................................................3

III.  LEGAL STANDARD ........................................................................6

IV.  DISCUSSION................................................................................7

    A. PLAINTIFF IS ENTITLED TO A DECLARATION FROM THIS COURT THAT THE NOTICE IS VALID AND EFFECTUAL...............7

      1. Plaintiff Timely Issued His Copyright Notice .................................8

      2. Plaintiff's Scrivener's Error is a Harmless Error.............................9

    B. PLAINTIFF IS ENTITLED TO A DECLARATION FROM THIS COURT THAT THE WORKS AT ISSUE DO NOT CONSTITUTE WORKS MADE FOR HIRE ..................................................................12

      1. Section 203 Governs Any Work Made for Hire Arguments .........12

      2. The Works at Issue are Sound Recordings Under the Copyright Act .........................................................................13

      3. The Works at Issue are Not Works Made for Hire as Defined by the Copyright Act .........................................................13

        i. No Employee-Employer Relationship Exists Between Plaintiff and Warner and/or Rhino .............................14

        ii. Plaintiff's Performance of Any Purported Employee Obligations Does Not Constitute Work Prepared by an Employee Within the Scope of Such Purported Employment................................................................16

iii.   The Works at Issue Do Not Constitute Expressly Ordered/Commissioned Works that Fall Within One of the Nine Statutorily Designated Categories.................18

C.  DEFENDANTS COMMIT COPYRIGHT INFRINGEMENT BY EXPLOITING PLAINTIFF'S WORKS AFTER THEIR RESPECTIVE EFFECTIVE TERMINATION DATES...................................................21

1. Defendants Commit Direct Infringement by Continuing to Make the Works at Issue Available on DSPs Beyond Their Respective Effective Termination Dates............................................................22

2. Defendants Commit Contributory Infringement by Knowing of, and Materially Contributing to and/or Inducing Third Party Infringement ...................................................................................23

3. Should the Court Not Find Copyright Infringement, It Should Allow Plaintiff to Replead Conversion .........................................25

V.  CONCLUSION........................................................................................25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF AUTHORITIES

**Federal Cases**

*Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239-240 (1937)................8

*Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992) ....................................15

*Ballas v. Tedesco*, 41 F. Supp. 2d 531 (D.N.J. 1999)...................................19

*Bell v. Wilmott Storage Servs., LLC*, Nos. 19-55882, 19-56181, 2021 U.S. App. LEXIS 27127 at *1074 (9th Cir. Sep. 9, 2021) ......................................22, 23

*Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1203-1204 (C.D. Cal. 2010).................................................................................22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)...................................6, 7

*China Cent. TV v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 U.S. Dist. LEXIS 76005 (C.D. Cal. June 11, 2015)...........................24

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032-33 (9th Cir. 2013) ......24

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740-741 (1989).............15, 16

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ...........................21

*Gov't Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) .........................7

*Hardwick v. Complete Skycap Servs.*, 247 Fed. Appx. 42, 43 (9th Cir. 2007) .............7

*Johansen v. Sony Music Entm't Inc.*, 2020 WL 1529442 (S.D. N.Y. 2020)................11

*JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010)...................................14

*Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017)..................................3

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007)............25

*Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364 (S.D.N.Y. 1999)...........................10

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)...................................15

*NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968).........................................15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050 (9th Cir. 2020) ...................................................23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*Parapluie, Inc. v. Mills*, 555 Fed. Appx. 679, 681 (9th Cir. 2014) ...............................7

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)...............24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ..............23

*Public Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962) .................................8

*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952).......................8

*Ray Charles Found. V. Robinson*, 795 F.3d 1105, 1112 (9th Cir. 2015) ...............1, 2, 8

*Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir. 2011) ..........................6

*S.A. Empresa v. Walker Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ...............7

*Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011).................................22

*Siegel v. Warner Bros. Entm't, Inc.*,658 F. Supp. 2d 1036 (C.D. Cal. 2009) ..............10

*Singh v. Nanayakkara*, No. 2:13-cv-09220-ODW (ASx), 2014 U.S. Dist. LEXIS 27730 (C.D. Cal. Mar. 4, 2014).................................................................................25

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950) ............................8

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .........................................20

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019).........................22, 23

*Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1090 (C.D. Cal. 2016)..................................21

**Federal Statutes**

17 U.S.C. Section 101 .............................................................................12, 13, 17, 18

17 U.S.C. Section 102 .................................................................................................21

17 U.S.C. Section 106 .................................................................................................21

17 U.S.C. Section 106(1).............................................................................................22

17 U.S.C. Section 106(3).............................................................................................22

17 U.S.C. Section 106(6).............................................................................................22

17 U.S.C. Section 203 ...................................................................................................8

17 U.S.C. Section 203(a).............................................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

17 U.S.C. Section 203(a)(3) ...................................................................... 2, 9

17 U.S.C. Section 203(a)(4)(a) .................................................................. 8, 9

17 U.S.C. Section 203(a)(4)(B) ..................................................................... 9

17 U.S.C. Section 203(b) ............................................................................... 8

17 U.S.C. Section 304(c) ......................................................................... 12, 13

28 U.S.C. Section 2201 .................................................................................. 7

37 CFR Section 201.3(c) .............................................................................. 10

37 C.F.R. § 201.10(e)(1) ......................................................................... 10, 11

37 C.F.R. § 201.10(e)(1) .............................................................................. 10

37 CFR Section 201.10(f) ............................................................................... 9

37 CFR Section 201.10(f)(1)(i)(A)-(B) ....................................................... 10

37 CFR Section 201.10(f)(1)(ii) ................................................................... 10

**Foreign Authorities**

2 William F. Patry, PATRY ON COPYRIGHT § 5:74 (2007) ...................................16, 18

2 William F. Patry, PATRY ON COPYRIGHT § 5:61 (2007) ............................................ 16

2 William F. Patry, COPYRIGHT LAW & PRACTICE 1147 (2007) .................................. 24

3 Melville B. Nimmer, NIMMER ON COPYRIGHT Section 11.02 (2021)........................ 20

3 William F. Patry, PATRY ON COPYRIGHT § 7:45 (2008) ............................................ 10

H.R. Rep. No. 94–1476, at 130 (1976)........................................................... 3, 8

Kathryn Starshak, *It's the End of the World as Musicians Know It, or Is It? Artists Battle the Record Industry and Congress to Restore Their Termination Rights in Sound Recordings*, 51 DEPAUL L. REV. 71, 108 (2001)................................................ 20

Patrik Wikström & Robert Burnett, *Same Songs, Different Wrapping: The Rise of the Compilation Album*, 32 POPULAR MUSIC & SOC'Y 507 (2009).................................... 20

U.S. Copyright Office, *Circular 14: Copyright in Derivative Works and Compilations* 1 (2020) ......................................................................................... 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Plaintiff Dwight Yoakam ("Plaintiff") moves for summary judgment on his claims for declaratory relief and copyright infringement against Defendants Warner Records, Inc. and Rhino Entertainment Company (individually, "Warner" and "Rhino", and, collectively, "Defendants"). As explained in further detail below, Plaintiff seeks declaratory judgment that: (i) Plaintiff's February 5, 2019 copyright termination notice (the "Notice") is effective both as to the two singles "Honky Tonk Man" and "Miner's Prayer" (the "Two Singles"), and for each of the sound recordings on the album *Guitars, Cadillacs Etc., Etc.*, (the "Album)," which also includes the Two Singles; (ii) the copyright in each work contained within the Notice automatically returned to Plaintiff as of each works' respective termination date; (iii) the works referenced in Plaintiff's Notice are not "works for hire"; (iv) sound recordings cannot be considered "works made for hire" under the definitions in Section 101 of the United States Copyright Act of 1976 ("Copyright Act"); and (v) Plaintiff is not now and has never been an employee of Warner in any event, meaning his work on the Singles and the Album are not works made for hire as a matter of law. Furthermore, this civil action was commenced for copyright infringement because Defendants failed their legal obligations by authorizing and/or making available for reproduction, distribution, and public performance (1) the Two Singles and the Album, and (2) Plaintiff's "Honky Tonk Man" music video (collectively, the "Works at Issue") without Plaintiff's consent or authorization as of these works' respective effective termination dates. At the core of these causes of action are Defendants' brazen attempts to disregard Plaintiff's valid Notice, a statutory mechanism established under Section 203 of the Copyright Act ("Section 203") for the purpose of protecting creators in Plaintiff's exact scenario. *See Ray Charles Found. V. Robinson*, 795 F.3d 1105, 1112 (9th Cir. 2015).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this case, the powerful record industry should be told that it must adhere to Congress's intent that authors have the right to reclaim their intellectual property regardless of the fact that the record labels do not want to give those rights up after making untold billions of dollars from these artists' work. Plaintiff issued the Notice to the proper addressee, his record label and then-owner of the copyright in the Works at Issue, and properly included the statutorily required contents of such notice to terminate their interest. The below chart illustrates the effective recapture dates for Plaintiff's copyrights in the Works at Issue under Section 203.

| WORK AT ISSUE | DATE OF EXECUTION OF THE GRANT | DATE OF PUBLICATION | NOTICE DATE (Notice of termination may be served as early as TEN years before and as late as TWO years before effective date of termination) | RECAPTURE WINDOW (Termination will be effective as early as publication date +35 years and as late as publication date +40 years) |
|---|---|---|---|---|
| "Honky Tonk Man" | November 22, 1985 | January 31, 1986 | February 5, 2019 | January 31, 2021- January 31, 2026 |
| "Miner's Prayer" | November 22, 1985 | January 31, 1986 | February 5, 2019 | January 31, 2021- January 31, 2026 |
| "*Guitars, Cadillacs, Etc. Etc.*" | November 22, 1985 | March 3, 1986 | February 5, 2019 | March 3, 2021- March 3, 2026 |
| "Honky Tonk Man" (music video) | November 22, 1985 | March 3, 1986 | February 5, 2019 | March 3, 2021- March 3, 2026 |

As discussed fully below, the Notice is binding and effective, and resulted in Defendants' rights in the Two Singles being terminated on February 5, 2021, and all songs on the Album, which includes the Two Singles (SSUF ¶ 20-25, 34), being terminated on March 3, 2021. 17 U.S.C. Section 203(a)(3); *Ray Charles Found.*, 795 F.3d at 1112 (termination date is 35 years after publication). Defendants have also infringed on the Two Singles and the Album by authorizing its reproduction and

distribution and publicly performing them after the effective Termination date.[1] Each of the defenses Defendants have heretofore raised (and that Plaintiff expects will raise again in response to this motion), are wrong as a matter of law and underscore the depths to which they will sink to desperately hang on to Plaintiff's intellectual property.

## II.   SUMMARY OF FACTS

Plaintiff is a songwriter, recording artist, musician, and pioneer in country music. (SSUF ¶ 1). From 1983-1984, Plaintiff arranged and performed "Honky Tonk Man," and wrote, recorded, and self-published "Miner's Prayer" and his debut album, "*Guitars, Cadillacs, Etc. Etc.*"  (SSUF ¶¶ 4-6). "*Guitars, Cadillacs, Etc., Etc.*" was originally released by Oak Records in 1984. (SSUF ¶ 11). In 1985, Plaintiff entered into a recording agreement with Warner (the "1985 Agreement" attached hereto as **Exhibit 1**) for his services as a recording artist. (SSUF ¶ 13). Upon signing the 1985 Agreement, Warner rereleased "*Guitars, Cadillacs, Etc. Etc.*" as the Album without coordinating, arranging, or selecting any of the sound recordings that were included. (SSUF ¶¶ 28-36).

---

[1] As decided in this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss dated July 12, 2021 (this "Court's Order"), Plaintiff could not replead his conversion claim in his Second Amended Complaint because the rights asserted were deemed equivalent to the rights contained in 17 U.S.C. Section 106. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citing H.R. Rep. No. 94–1476, at 130 (1976). Specifically, the Court's Order notes that conversion claims often fall outside the scope of preemption because conversion requires proof of "wrongful possession or disposition of a particular piece of property," but that "[t]he gravamen of Plaintiff's complaint is that Defendants are interfering with Plaintiff's rights in property because they are refusing to acknowledge the termination of his copyright grant." (Court's Order at 16). Now, at Summary Judgment, Plaintiff supports the position that Defendants commit copyright infringement by exercising control over Plaintiff's copyright beyond the effective termination dates of the Works at Issue. As discussed more fully below, to the extent that the Court finds that Defendants did not commit an infringing act after the termination dates, which they did, or that maintaining possession, exercise and control over Plaintiff's property is not copyright infringement per se, then Plaintiff should be allowed to proceed with the conversion claim. Defendants should not be able to have it both ways.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The only difference between the original release and re-release of "*Guitars, Cadillacs, Etc., Etc.*" is that the re-release included four new tracks that were recorded and engineered by Plaintiff. (SSUF ¶¶ 28-36). On this note, Defendants did not contribute any direction, recording services, or any other meaningful creative form of effort toward the creation and re-release of the Album. The Two Singles were recorded and included on the Album at Plaintiff's sole creative direction. (SSUF ¶ 20-25, 34). In other words, Plaintiff made every creative decision involved in the creation of the Album (SSUF ¶ 20-25, 34), and Defendants cannot claim that they made any contribution to the Album that constitutes an original work of authorship.

On February 5, 2019, Plaintiff issued the Notice for the Works at Issue to Defendants. (SSUF ¶ 44). The effective termination dates listed in the Notice were January 31, 2021 for the Two Singles, and March 3, 2021, for the Album. (SSUF ¶¶ 46-47). The effective termination dates of the Notice came and went, yet Defendants continue to willfully ignore Plaintiff's notice. (SSUF ¶¶ 54-56). Although the Notice's chart of Plaintiff's works provided January 31, 2021 as the effective termination date for the Two Singles (SSUF ¶ 46), February 5, 2021 would be the earliest effective termination date for them based on the date of the Notice. While the issue about this scrivener's error is effectively moot because the Two Singles appear on the Album (SSUF ¶¶ 28, 30) and there is no arguable infirmity with respect to the Album, this 5-day error is harmless. In discovery responses in which Defendants were asked to identify any harm they suffered with respect to the 5-day error, Defendants[2] stated:

> "[p]laintiff's failure to comply with the statutory timing requirements relating to service rendered the notice invalid. If Defendants are nonetheless required to comply with the notice despite its invalidity—i.e., despite Plaintiff's failure to comply with the statutory timing requirements—then they are necessarily harmed. Defendants are harmed because they are faced

---

[2] Warner and Rhino provided identical discovery responses on this issue.

-4-

with the choice of either disclaiming and forgoing copyright interests to which they are contractually entitled and for which Plaintiff was paid substantial consideration (thereby losing, without compensation and without any valid legal obligation to do so, the ongoing value of that investment), or incurring substantial fees and costs in defending against a claim of copyright infringement premised on an invalid notice. Moreover, Congress afforded copyright owners the protection of at least two years of notice, with that time period specifically tied to the putative "effective date of termination" stated in a putative notice of termination. Copyright owners are entitled to rely upon the putative "effective date of termination" stated in a notice and, if the notice is not served in a manner that satisfies the timing requirements of the Copyright Act in light of such "effective date of termination," to rely upon the notice's resulting invalidity. A copyright owner that is precluded from relying on a putative author's obligation to comply with the statutory requirements is necessarily harmed because the copyright owner is thereby deprived of the precise protection afforded to it by Congress in the statute."

*See* Warner's Response to Plaintiff's Interrogatories, Set Two No. 26.

This response is pure circular Orwellian doublespeak, and represents Defendants' best, but woefully inadequate attempt, to address this Court's comment in denying their Motion to Dismiss that they had not articulated any harm from the 5-day error. (*See* Court's Order at 9-12). The circular and illogical reasoning of Defendants, in English, seems to be that they are harmed because if this Court concludes that the miscalculation is harmless error, then they are being forced to comply with an allegedly ineffective notice, and requiring them to comply with an allegedly defective notice, means that they must relinquish their expired rights in the Works, and that harms them. So essentially Defendants claim that losing this case harms them, and that is why the Court should not find harmless error. Nonsense. Defendants simply do not want to admit in litigation, as they must, that Defendants suffered no conceivable harm with respect to the 5-day error on the Two Singles (no such error exists on the Album that contains the Two Singles making the issue moot in any event), and will say anything to try to avoid relinquishing

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

this very valuable property. The material purpose served by the Notice to recapture the copyright in each of the Works at Issue was served as discussed below, and Defendants' internal and (lack of) external responses to Plaintiff demonstrated their awareness of their obligations pursuant to Section 203. (SSUF ¶¶ 54-56).[3]

Finally, Defendants authorized the Works at Issue for sale, streaming, and/or download and public performance on the digital service providers ("DSPs") Spotify, Apple Music, Amazon Music, Napster, and on their own YouTube channel. (SSUF ¶ 63). Following their respective effective termination dates, the Two Singles remained available on Spotify, the Album remained available on Napster and YouTube, and the "Honky Tonk Man" music video remained available on YouTube. Defendants earned domestic revenues beyond these dates. (SSUF ¶¶ 77-78). With each passing day that Defendants maintain dominion and control over Plaintiff's intellectual property, Plaintiff is severely damaged by his inability to exploit it, and Defendants commit willful copyright infringement, or alternatively conversion.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Summary judgment will be granted. . .where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Once the movant

---

[3] Indeed, years after the Notice was sent, but prior to this action being commenced, Defendants' in-house counsel stated that Defendants were still considering whether to honor the February 5 Termination Notice, but had not said anything in the two years between its issuance and then. (SSUF ¶¶ 54-56).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

has met [his or her] initial burden of showing 'an absence of evidence' supporting the nonmovant party's case, the burden is on the nonmoving party to show with 'specific facts' that there is a genuine issue of fact suitable for trial." *Parapluie, Inc. v. Mills*, 555 Fed. Appx. 679, 681 (9th Cir. 2014) (citing *Celotex*, 477 U.S. at 325). In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *Hardwick v. Complete Skycap Servs.*, 247 Fed. Appx. 42, 43 (9th Cir. 2007). "However, the non-moving party may not rest upon the mere allegations or denials of the [] party's pleading, but. . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted). "A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *Id.* (quoting *S.A. Empresa v. Walker Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982)).

## IV.   DISCUSSION

In the present case, Plaintiff challenges Defendants' goliath mentality that the federal copyright law does not penetrate their corporate shield. Defendants' attempt to delay and/or prevent Plaintiff's recapture of his copyright in the Works at Issue has been equally personally and financially violative to Plaintiff. (SSUF ¶ 73). While Defendants would have the creative community believe that they are true partners at the time they enter grants of copyright ownership, they are clearly willing to say and do anything to avoid reversion of their interest back to those creatives under Section 203.

### A. PLAINTIFF IS ENTITLED TO A DECLARATION FROM THIS COURT THAT THE NOTICE IS VALID AND EFFECTUAL

Pursuant to 28 U.S.C. Section 2201, a Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. *Id.* The Declaratory Judgment Act "embraces both constitutional and prudential concerns." *Gov't Emples. Ins. Co. v. Dizol*,

133 F.3d 1220, 1223 (9th Cir. 1998). A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution, and such a lawsuit must also fulfill statutory jurisdictional prerequisites. *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239-240 (1937); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950). If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate. *Dizol*, 133 F.3d at 1223. This determination is discretionary, for the Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority." *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring). The Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962).

### 1. Plaintiff Timely Issued His Copyright Termination Notice.

Section 203 allows authors to terminate grants of copyright assignments and licenses that were made on or after January 1, 1978 so long as certain conditions are met. *See* 17 U.S.C. Section 203. The right of termination was "designed to 'safeguard [] authors against unremunerative transfers. . . needed because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." *Ray Charles Found.*, 795 F.3d at 1112 (2015) (quoting H.R. Rep. No. 94-1476, at 124 (1976)). "Effective termination causes 'all rights. . . that were covered by the terminated grants [t]o revert to the author, authors, and other persons owning termination interests. . ..'" *Id.* at 1113 (quoting 17 U.S.C. Section 203(b)).

Notice of copyright termination under Section 203 must be served on the grantee or the grantee's successor-in-interest no more than 10 nor less than 2 years before the effective date of termination. 17 U.S.C. Section 203(a)(4)(a). Termination of a copyright grant may be effected any time during a period of five years beginning at the end of

thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier. 17 U.S.C. Section 203(a)(3). Several procedural and substantive requirements must be met for an author to recapture previously granted copyright interests. Here, the publication date of the Two Singles is January 31, 1986. (SSUF ¶¶ 26-27), so the effective termination date for the Two Singles may fall between January 31, 2021 and January 21, 2026. *See* 17 U.S.C. Section 203(a)(3). Plaintiff needed to provide notice at least two years before any effective termination date within that window. *See* 17 U.S.C. Section 203(a)(4)(a). Plaintiff's Notice is dated February 5, 2019 (SSUF ¶¶ 44-45), a date that clearly supports an effective window for termination of the Two Singles. Therefore, the Notice constitutes timely notice of termination for the Two Singles. Defendants complain, however, that the actual termination date is listed as January 31, 2021 instead of February 5, 2021, and that this supposedly invalidates the Termination.  Defendants are wrong.

### 2. Plaintiff's Scrivener's Error is a Harmless Error.

Section 203 contemplates that further details about the "form, content, and manner of service" of the termination notice will be "prescribe[d] by regulation" of the Register of Copyrights. 17 U.S.C. Section 203(a)(4)(B). Any termination submitted to the U.S. Copyright Office (the "Office") for recordation must comply with the Copyright Act's statutory requirements and the Office's regulations (37 CFR Section 201.10(f)), including that the submitted notice must be a true, correct, complete, and legible copy of the signed notice of termination as served on the grantee or successor in title, accompanied by a statement setting forth the date on which the notice was served and the manner of service (unless such information is contained in the notice itself), be timely served, have an effective date of termination that is later than the date of recordation,

and accompanied by the correct filing fee as specified by CFR Section 201.10. 37 CFR Section 201.10(f)(1)(i)(A)-(B); 37 CFR Section 201.10(f)(1)(ii); 37 CFR Section 201.3(c). In turn, it makes most sense to firstly address the regulatory requirements prescribed by the Register of Copyrights. Here, Plaintiff submitted his termination notice to be recorded with the Office on December 8, 2020 in accordance with the guidance above. (SSUF ¶ 52). In *Siegel v. Warner Bros. Entm't, Inc.*, following an exhaustive analysis of the "harmless error" rule contained in 37 C.F.R. § 201.10(e)(1), the court held that even though the plaintiff's copyright termination notice did not comply with the regulatory requirements, the notice nonetheless was adequate for providing defendants a "reasonable opportunity" to identify what works were the subject of the termination notice. 658 F. Supp. 2d 1036 (C.D. Cal. 2009) ("The purpose of the regulations is to give the recipient of the termination notice sufficient information to understand what rights of theirs may or may not be at stake."). Moreover, even if a copyright termination notice's genericness does not "reasonably identify the grant," a court may still find it adequate based on a customary acceptance of such genericness by the Register of Copyrights. *Id.* (relying on *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364 (S.D.N.Y. 1999); 3 William F. Patry, Patry on Copyright § 7:45 (2008)). Thus, Plaintiff fully and completely satisfied the regulatory requirements despite the scrivener's error.

Given that Plaintiff's notice followed the Register of Copyright's procedural requirements, it now makes sense to address why Plaintiff's scrivener's error on the Notice constitutes a harmless error. One such regulation prescribed by the Register of Copyrights addresses harmless errors in notices of termination. *See* 37 C.F.R. Section 201.10(e) ("The harmless error regulation provides that "[h]armless errors in a notice. . . shall not render the notice invalid. . . [f]or purposes of this paragraph, an error is 'harmless' if it does not materially affect the adequacy of the information required to

serve the purposes of 17 U.S.C. [Section] 203 [or other termination provisions]).” As recognized by the Court in the Court's Order, the harmless error regulation is limited to “harmless errors in a notice” and makes clear that it understands a “notice” to mean a “document communicating to the grantee an intent to terminate, from errors in complying with the statutory requirements for termination.” *See* Court's Order at 8 (citing 7 C.F.R. § 201.10(e)).

On this note, in the Court's Order, this Court disagreed with Defendants that the harmless error rule cannot be invoked to cure an error in the effective date of termination listed in an author's notice of termination. *See* Court's Order at 7 (“. . .the error alleged by Plaintiff plausibly falls within the ambit of the harmless error regulation, and excusing Plaintiff's error in this case is consistent with the statutory termination requirements in section 203.”). Finally, the Court makes clear a case-specific inquiry is required to determine whether the Notice was adequate to “serve the purposes” of the termination provision. *See* Court's Order at 9 (citing 37 C.F.R. § 201.10(e). The Court concludes that Defendants failed to offer any reason why Plaintiff could not show that an error in communicating an effective termination date in a notice did “not materially affect the adequacy of the information required to serve the purposes of 17 U.S.C. [Section] 203.” *See* Court's Order at 9 (citing 37 C.F.R. § 201.10(e)).

As the Court's Order notes, one persuasive case to have addressed the question of whether a scrivener's error could constitute a harmless error is *Johansen v. Sony Music Entm't Inc. See* Court's Order at 9 (citing 2020 WL 1529442 (S.D. N.Y. 2020)). In that case, the plausibility of harmlessness is highlighted by the fact that only one work was affected by the alleged scrivener's error. *Id.* Here, the same is true, as the Two Singles belong to a single row of the chart provided in the Notice. (SSUF ¶ 48). Further, there is no basis for Defendants to claim that the error left them with no reasonable opportunity to identify the Two Singles and the Notice's intended purpose. The date of the Notice is

-11-

a proper effective termination date for the Two Singles and its contents identify which copyrights Plaintiff intended to recapture. (SSUF ¶ 44-48). Moreover, over a year after receipt of the Notice, Defendants attempted to renegotiate new terms with Plaintiff. (SSUF ¶ 53-56). The information required to serve the Notice's purpose was adequate, and there is certainly no deficiency that *materially* affected such information. Accordingly, the Notice constitutes valid and effectual termination of Defendants' copyright interests in the respective Works at Issue.

## B. PLAINTIFF IS ENTITLED TO A DECLARATION FROM THIS COURT THAT THE WORKS AT ISSUE DO NOT CONSTITUTE WORKS MADE FOR HIRE

In consideration of his valid Notice, Plaintiff became the sole owner of the Two Singles on February 5, 2021, and the Album and the "Honky Tonk Man" music video on March 3, 2021. While this should be the end of the story with respect to all the Works at Issue, it is worth revisiting that the Two Singles are both sound recording contributions to the Album (SSUF ¶ 20-25, 34), which means they reverted back to Plaintiff on March 3, 2021 (the effective termination date of the Album) regardless of the scrivener's error. Still, Defendants may proffer secondary reasons that attempt to allow them to continue claiming ownership in the Works at Issue beyond February 5, 2021. Defendants may argue that some or all of Works at Issue are "works made for hire" under Section 101 of the Copyright Act and therefore Plaintiff has no statutory right to terminate their interest. In doing so, Defendants may allege that Plaintiff agreed to work as an employee of Warner or that his Works at Issue constituted works made for hire under the 1985 Agreement. The facts do not support either of these reasons.

### 1. Section 203 Governs Any Work Made for Hire Arguments.

Pre-1978 grants of rights in sound recordings fixed on or after February 15, 1972, but before January 1, 1978 may be subject to termination under Section 304(c) of the

-12-

Copyright Act, provided the sound recording was not created as a work made for hire. *See* 17 U.S.C. Section 304(c). Post-1977 grants of rights in sound recordings fixed on or after February 15, 1972 may be subject to termination under Section 203 of the Copyright Act provided (i) the grant was executed by the author of the sound recording and (ii) the author did not create the sound recording as a work made for hire as defined by the Copyright Act. *See* 17 U.S.C. Section 203(a). Here, the grant of rights in the sound recordings occurred after 1977 for sound recordings fixed after February 15, 1972. (SSUF ¶ 4, 6, 13). Accordingly, Section 203 of the Copyright Act will govern the work for hire arguments presented by Plaintiff and Defendants over the sound recordings subject to this dispute.

### 2. The Works at Issue are Sound Recordings Under the Copyright Act.

It must first be addressed whether each of the Works at Issue constitute sound recordings under and with respect to Section 101 definitions of the Copyright Act. "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds. . . regardless of the nature of the material objects. . . in which they are embodied." Per this definition of "sound recordings" and industry and custom, the Works at Issue (whether in the form of so-called "singles" or an album), plainly constitute sound recordings. 17 U.S.C. Section 101 (definition of "sound recordings").

### 3. The Works at Issue are Not Works Made for Hire as Defined by the Copyright Act.

Under Section 101 of the Copyright Act, a "work made for hire" is either (1) a work prepared by an employee within the scope of his or her employment; or (2) a work "specially ordered or commissioned for use as a contribution to a collective work, as part of a picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an 'instructional text', as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work

-13-

shall be considered a work made for hire." 17 U.S.C. § 101 (definition of "work made for hire"). Therefore, the relevant analyses at Summary Judgment are whether (i) an employee-employer relationship exists between Plaintiff and Warner and/or Rhino, (ii) Plaintiff's performance of his obligations under the 1985 Agreement constitutes work prepared by an employee within the scope of his employment, and (iii) the Works at Issue constitute expressly ordered/commissioned works that fall under one of the nine statutorily designated categories.

### (i) No Employee-Employer Relationship Exists Between Plaintiff and Warner and/or Rhino.

Plaintiff has never been an employee of either Warner or Rhino for any purpose. (SSUF ¶ 15-17, 19-23). The 1985 Agreement lacks a definite consistent provision stating that Plaintiff is an employee of Warner or Rhino for the purpose of recording sound recordings. (SSUF ¶ 15, 18). With respect to the specific provisions of the 1985 Agreement, Paragraph 6(a) of the 1985 Agreement entered by Plaintiff and Warner (executed under its former name of Warner Bros. Records, Inc.) expressly states that the artist is granting copyrights in sound recordings to the label as an employee for hire. (SSUF ¶ 18), while Paragraph 14 reads, **"[n]othing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent or employee of the other."** (SSUF ¶ 15). On these terms alone, Plaintiff never rendered his artist services as an employee of Defendants.

Still, when examined through the lens of common law and statutory agency criteria, the 1985 Agreement between Plaintiff and Warner does not render Plaintiff an employee of either Warner or Rhino. In copyright cases arising under the Copyright Act, the Supreme Court has ruled that absent any textual indications to the contrary, when Congress uses the terms "employee," "employer," or "scope of employment," it means to incorporate principles from the general common law of agency. *JustMed, Inc. v. Byce*,

600 F.3d 1118 (9th Cir. 2010) (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740-741 (1989). Thus, "the hiring party's right to control the manner and means by which the product is accomplished" is the central inquiry. *Cmty. for Creative Non-Violence*, 490 U.S. at 751. The factors relevant to this inquiry include (1) the skill required for that occupation, (2) the source of the instrumentalities and tools, (3) the location of the work, (4) the duration of the relationship between the parties, (4) whether the hiring party has the right to assign additional projects to the hired party, (5) the extent of the hired party's discretion over when and how long to work, (6) the method of payment, (7) the hired party's role in hiring and paying assistants, (8) whether the work is part of the regular business of the hiring party, (9) whether the hiring party is in business, (9) the provision of employee benefits, and (10) the tax treatment of the hired party. *Id.* at 751-52 (citing Restatement (Second) of Agency § 220(2) (1958)).

As the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, all the incidents of the relationship must be assessed and weighed with no one factor being decisive. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)) (quotation marks and alteration omitted); *see also Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992) ("It does not necessarily follow that because no one factor is dispositive all factors are equally important, or indeed that all factors will have relevance in every case. The factors should not merely be tallied but should be weighed according to their significance in the case.").

Indeed, nearly all these factors weigh in favor of Plaintiff. Significantly, Plaintiff arranged and performed "Honky Tonk Man," and wrote and recorded "Miner's Prayer," and the original "*Guitars, Cadillacs, Etc. Etc.*" before entering into the 1985 Agreement (SSUF ¶¶ 4-6). Accordingly, at no point after Plaintiff and Warner entered the 1985 Agreement did Defendants provide any location in which, or any tools or

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

instrumentalities with which he created the pre-existing "Miner's Prayer" and the original "*Guitars, Cadillacs, Etc. Etc.*" (SSUF ¶ 10). With respect to "Honky Tonk Man," Warner merely financed a studio session in which Plaintiff recorded his long-performed work. (SSUF ¶ 10, 74). The independent creation process occurring before the term of the 1985 Agreement demonstrates the skill of Plaintiff, as well as there being no relationship between Plaintiff and Defendants during the creation of the Works of Issue. 2 William F. Patry, PATRY ON COPYRIGHT § 5:74 (2007). Throughout the term of the 1985 Agreement, Defendants had no right to assign additional projects to Plaintiff (SSUF ¶ 19), any discretion over when or how long Plaintiff worked (SSUF ¶¶ 20-21), or any role in hiring or paying assistants for Plaintiff's creative process (SSUF ¶¶ 10, 22-23). Moreover, throughout the term of the 1985 Agreement, Defendants compensated Plaintiff via royalties earned by the success of the exploitation of Plaintiff's work (SSUF ¶ 41), which surely constitutes a non-traditional method of payment with respect to an employee. 2 PATRY ON COPYRIGHT § 5:61 ("Where payment is solely by royalties, this fact weighs against an employment relationship."). Finally, Defendant offered no employee benefits to Plaintiff (SSUF ¶ 17) and provided no employee-based tax treatment (SSUF ¶ 16). Under this prevailing common law analysis, the facts only allow for the conclusion that no employer-employee relationship exists between Plaintiff and Defendants.

> **(ii) Plaintiff's Performance of Any Purported Employee Obligations Does Not Constitute Work Prepared by an Employee Within the Scope of Such Purported Employment.**

Per the above, Plaintiff and Defendants never entered an employer-employee relationship, either expressly or under the controlling common law agency test. *Cmty. for Creative Non-Violence*, 490 U.S. 730, 751. For good measure, Plaintiff further

addresses the point that to the extent that an employer-employee relationship existed pursuant to the 1985 Agreement or the common law agency test, that his performance of any purported obligations never constituted work prepared by an employee within the scope of any purported employment. *See* 17 U.S.C. Section 101 (definition of "work made for hire").

To recall, the only provisions of the 1985 Agreement potentially relevant to this dispute are the somewhat conflicting Paragraphs 6(a) and 14. Paragraph 6(a) merely states that Plaintiff is an employee for hire to the extent that he *grants copyrights in sound recordings* to the label (SSUF ¶ 18), which has no relevancy to the creation process of sound recordings, including the Works at Issue. Then, Paragraph 14 of the 1985 Agreement expressly rejects the possibility that either party is the agent or employee of the other. (SSUF ¶ 15). The conflicting nature of these provisions and encompassing nature of Paragraph 14 weigh in Plaintiff's favor that he never rendered his performance services as an employee pursuant to 1985 Agreement's terms. To the extent that any written employer-employee relationship involves the creation of sound recordings by Plaintiff for Defendants, again, Plaintiff entered the 1985 Agreement with Warner after long independently writing and recording "Miner's Prayer" and "*Guitars, Cadillacs, Etc., Etc.*" and arranging and performing "Honky Tonk Man." (SSUF ¶¶ 4-6). Therefore, the Works at Issue cannot constitute work prepared by an employee within the scope of any purported employment pursuant to any express agreement. With respect to the common law agency test, there is simply no reasonable argument that Defendants established an unwritten employer-employee with Plaintiff. To the extent that any unwritten employer-employee relationship relying on the common law agency test involves the creation of sound recordings by Plaintiff for Defendants to own and exploit, Plaintiff entered the 1985 Agreement after independently creating the Works at Issue. (SSUF ¶¶ 4-6). Therefore, the Works at Issue cannot constitute work prepared by an

-17-

employee within the scope of any purported employment pursuant to the common law agency test. Given that Plaintiff cannot constitute an employee of either Defendant under the 1985 Agreement or common law agency test, Defendants may resort to one final argument to qualify the Works at Issue as works made for hire. This remaining argument is that Plaintiff's Works at Issue constitute expressly ordered/commissioned works falling under one of the nine statutorily designated categories, namely compilations and/or collective works. *See* 17 U.S.C. Section 101 (definition of "work made for hire"). They don't.

### (iii)   The Works at Issue Do Not Constitute Expressly Ordered/Commissioned Works that Fall Within One of the Nine Statutorily Designated Categories.

The full language under sub-part (ii) of the definition of "work made for hire" under Section 101 of the Copyright Act provides that a work made for hire must constitute "a work specially ordered or commissioned for use as a contribution to one of the following nine categories: [1] for use as a contribution to a collective work, [2] as a part of a motion picture or other audiovisual work, [3] as a translation, [4] as a supplementary work, [5] as a compilation, [6] as an instructional text, [7] as a test, [8] as answer material for a test, or [9] as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." At this point in the analysis, Defendants must resort to qualifying sound recording works, an unenumerated category, into this definition.

Firstly, Defendants never expressly ordered/commissioned the Works at Issue. (SSUF ¶ 10, 15-17, 19-23). As mentioned, the Works at Issue were each materially created by Plaintiff before entering into the 1985 Agreement. (SSUF ¶¶ 4-6). This fact alone is sufficient to determine that the Works at Issue were not specially ordered. 2 PATRY ON COPYRIGHT § 5:74 (". . .a very important, and usually determinative factor is

-18-

whether the work was substantially completed at the time it was allegedly specially ordered. . . [i]f the work has *not* been begun before the parties meet, this fact weighs in the hiring party's favor."). By this same reasoning, there is no express term in the 1985 Agreement ordering the Works at Issue. Accordingly, Plaintiff need not further address whether any specific provision of the 1985 Agreement constitutes an express order/commission of the Works at Issue by Defendants.

For good measure, any potential argument by Defendants that sound recordings constitute works made for hire under the Copyright Act goes against (1) established case law concluding that sound recordings cannot constitute works made for hire and (2) Congressional intent. In *Ballas v. Tedesco*, a case commonly cited for the proposition that a musical sound recording cannot be a work made for hire, the court held that the musical CD at issue was not a work made for hire because: "[T]he sound recordings, and the relationship between the parties, d[id] not fall under either of the two statutory definitions of a work for hire. . . [Additionally,] the sound recordings are not a work for hire under the second part of the statute because they do not fit within any of the nine enumerated categories, and because there was no signed written agreement between the parties. 41 F. Supp. 2d 531 (D.N.J. 1999). With respect to Congressional intent, sound recordings are not specifically included in the nine categories of commissioned works enumerated in the Copyright Act of 1976. Artists and labels generally argue over the two possible applicable categories: contributions to compilations and/or collective works.

To recall, the Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship" and includes collective works. 17 U.S.C. §101 (definition of "compilation). A collective work is then defined as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

and independent works in themselves, are assembled into a collective whole." 17 U.S.C. §101 (definition of "collective work"). An album is a unitary whole, and as such, it cannot be considered a compilation. *See* Kathryn Starshak, *It's the End of the World as Musicians Know It, or Is It? Artists Battle the Record Industry and Congress to Restore Their Termination Rights in Sound Recordings*, 51 DEPAUL L. REV. 71, 108 (2001) ("[A]n album lacks the necessary creativity to be considered an 'original work of authorship.'"). There are arguably scenarios in which an album could fall within the definition of a compilation (e.g., a holiday album comprised of pre-existing master recordings of individual compositions by different artists). *See Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). ("Likewise a protectable 'compilation' is the precise 'result[]' that is 'formed by the collection and assembling of preexisting materials. . . that are selected, coordinated, or arranged.'"). 17 U.S.C. § 101. A movie soundtrack, "greatest hits," or "top hits" album may constitute a compilation, but not an original album. *See* 3 Melville B. Nimmer, NIMMER ON COPYRIGHT Section 11.02 (2021); *see also* U.S. Copyright Office, *Circular 14: Copyright in Derivative Works and Compilations* 1 (2020) (attached hereto as **Exhibit 2**). Indeed, recording industry executives employ the term "compilation" to market and sell a certain type of album, which is usually a patchwork of songs from various artists, or at times the same artist but different original albums, revolving around a similar theme— whether it be genre, popularity, era, etc. *See generally* Patrik Wikström & Robert Burnett, *Same Songs, Different Wrapping: The Rise of the Compilation Album*, 32 POPULAR MUSIC & SOC'Y 507 (2009). Here, Plaintiff's independently created Works at Issue do not fall under such a scenario. Defendants' potential position that all sound recordings are collective works or compilations simply because there are multiple separate contributions made in the creation of a sound recording, and/or because the record label rearranges the master recordings of individual compositions delivered by the artist, lacks professional and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

academic integrity.

## C. DEFENDANTS COMMIT COPYRIGHT INFRINGEMENT BY EXPLOITING PLAINTIFF'S WORKS AFTER THEIR RESPECTIVE EFFECTIVE TERMINATION DATES

Copyright protection extends only to "original works of authorship." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1090 (C.D. Cal. 2016) (quoting 17 U.S.C. Section 102). It is foundational that to prevail on Plaintiff's copyright infringement claim, he must show that he owns a valid copyright in the claimed work. *See Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Section 106 of the Copyright Act provides,

> ". . . the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords. . . (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."

Here, Defendants infringe upon Plaintiff's copyrights in the Works at Issue as a result of the Notice on an ongoing basis, directly or contributorily. Defendants directly infringe upon Plaintiff's copyright in the Works at Issue by authorizing their distribution, reproduction, and public performance, and then by failing to remove the Works at Issue from their respective digital service providers ("DSP"), or contributorily infringed upon Plaintiff's copyright when they knew or should have known that the respective DSP hosting the Works at Issue failed to remove them after the occurrence of their respective effective termination dates, resulting in Defendants' authorization of the infringing conduct. Specifically, Defendants committed copyright infringement pursuant to the below acts after the effective termination dates of the respective Works at Issue- Warner either authorized these third parties to offer these Works at Issue for sale, download, stream, or made the Works at Issue available themselves.

-21-

On February 9, 2021, Plaintiff's management identified that the Two Singles were still available for sale, streaming, and download on the DSP Spotify. (SSUF ¶ 65). On March 12, 2021, Plaintiff's management identified that sound recordings from the Album and the "Honky Tonk Man" music video were still available for sale, streaming, and/or download on DSP YouTube on Defendants' parent company's (Warner Music Group) official Dwight Yoakam channel (and were still available on January 24, 2021 with increased view counts) (SSUF ¶ 80), and that sound recordings from the Album were still made available for sale, streaming, and/or download on DSP Napster (and were still available on October 30, 2021). (SSUF ¶¶ 67-68). Defendants received domestic revenues from these sources after the effective termination dates. (SSUF ¶¶ 77-79). Still, regardless of whether Defendants received revenues past these dates, it is not necessary that the public *receive* the performance for an infringing performance to occur. *Bell v. Wilmott Storage Servs., LLC*, Nos. 19-55882, 19-56181, 2021 U.S. App. LEXIS 27127 at *1074 (9th Cir. Sep. 9, 2021). Further, providing infringing content to YouTube's California-based servers from anywhere in the world creates domestic liability. *See Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011).

### 1. Defendants Commit Direct Infringement by Continuing to Make the Works at Issue Available on DSPs Beyond Their Respective Effective Termination Dates

To establish direct infringement liability, the plaintiff must show that the defendant caused the infringement. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("[D]irect infringement requires 'active' involvement."). Streaming and/or offering sound recordings for sale violates the right to reproduce, distribute, and publicly perform the Works at Issue. *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1203-1204 (C.D. Cal. 2010); 17 U.S.C. Section 106 (1), (3), (6). Interactive streaming and transmission implicates those rights. *See id.* Copyright

infringement is a strict liability tort, so innocent intent constitutes no defense to liability. *Bell*, LEXIS 27127 at *1081 (9th Cir. Sep. 9, 2021). Controlling or selecting material for upload, download, transmission, or storage is volitional [for the purposes of infringing]. *Id.* As established, Plaintiff is the exclusive owner of the Two Singles as of February 5, 2021, and the Album and "Honky Tonk Man" music video as of March 3, 2021 pursuant to the Notice.[4] Defendants authorized the streaming, sale, and/or download of the Works at Issue on DSPs before their effective termination dates, including Spotify and Napster, and had the sole contractual responsibility to successfully remove them on their effective terminate dates, and also publicly performed the Works at Issue on their own YouTube channel following termination. (SSUF ¶¶ 62-65). Those distributions following termination infringed on Plaintiff's Section 106 exclusive rights.

## 2. Defendants Commit Contributory Infringement by Knowing of, and Materially Contributing to and/or Inducing Third Party Infringement

A defendant may be held contributorily liable for copyright infringement carried out by another. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050 (9th Cir. 2020). If there is a threshold showing of direct infringement by a third party, liability for contributory copyright infringement requires that a defendant: (1) has knowledge of another's copyright infringement; and (2) either (a) materially contributes to the infringement, or (b) induces the infringement. *VHT, Inc.*, 918 F.3d at 745; *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Here, Defendants authorized the Works at Issue for exploitation on third party DSPs (SSUF ¶ 64) and are therefore ultimately responsible for them remaining on the sites regardless of any action they took to try to remove them. Defendants' excuse is that they "communicated via

---

[4] Copyright registrations for each of the Works at Issue are attached hereto as **Exhibit 3** ("Honky Tonk Man"), **Exhibit 4** ("Miner's Prayer"), **Exhibit 5** ("*Guitars, Cadillacs, Etc. Etc.*"), and **Exhibit 6** ("Honky Tonk Man" music video).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

industry-standard extensible markup language (XML) feed to each [DSP] that each [DSP] was no longer authorized to exploit the [Two Singles]. . ..” *See* Warner's Response to Plaintiff's Interrogatories, Set Two No. 31.[5] Even if a DSP failed to remove works following these communications, Defendants had both actual (visibility of Two Singles on the DSPs) and constructive knowledge (revenues) (SSUF ¶¶ 65-68, 70-71, 77-80). As mentioned, in some cases, Defendants themselves controlled content featuring the Work(s) at Issue. (SSUF ¶¶ 67-68). Thus, Defendants knew of the infringing use, and the DSP's were only able to exploit the Works through Defendants' authorization.

With respect to the second element, Defendants' authorization, regardless of any action they took to remove them, constitutes material contribution to and/or inducement of the DSPs. A defendant materially contributes to infringement when it fails to take steps to protect the copyrighted works. *China Cent. TV v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 U.S. Dist. LEXIS 76005 (C.D. Cal. June 11, 2015) (relying on *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("assist[ing] a worldwide audience of users to access infringing materials" constitutes material contribution). Further, merely providing the means for infringement may be sufficient to incur contributory liability. *See* 2 William F. Patry, COPYRIGHT LAW & PRACTICE 1147 (2007). Inducement requires distribution of a product with the object of promoting its use to infringe copyright, infringement, and causation. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032-33 (9th Cir. 2013). Defendants materially contributed and/or induced infringement by providing the Works at Issue to the third party DSPs specifically to exploit them, which ultimately caused infringement beyond the effective termination date. (SSUF ¶¶ 63-68). Defendants are thus liable for contributory infringement. Defendant's past infringement and maintained control

---

[5] Rhino provided the same response to Plaintiff's Interrogatories, Set Two No. 28.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

renders the Works at Issue particularly vulnerable to continued infringement and harms Plaintiff. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) (finding that defendant's exercise of control over a plaintiff's works interferes with plaintiff's overall exercise of their rights).

### 3. Should the Court Not Find Copyright Infringement, It Should Allow Plaintiff to Replead Conversion

Plaintiff originally pled a claim for conversion due to Defendants' exercise of dominion and control over his works following their effective termination dates. The Court dismissed that claim finding that the conversion claim was subsumed within the copyright infringement claim. (Court's Order at 16) ("The gravamen of Plaintiff's complaint is that Defendants are interfering with Plaintiff's rights in property because they are refusing to acknowledge the termination of his copyright grant."). In the event the Court finds that Defendants' conduct does not constitute infringement because they did not commit an infringing act after the effective termination date, which they did, or that the maintaining of dominion and control over the Works at Issue does not itself constitute continued direct and continued infringement, then Plaintiff respectfully requests the right to amend the First Amended Complaint to reassert his claim for conversion. Where the underlying nature of Plaintiff's conversion claim is a business dispute, as it is here, the issue of Defendants' wrongful control of Plaintiff's intellectual property is not part and parcel to copyright infringement. *See Singh v. Nanayakkara*, No. 2:13-cv-09220-ODW (ASx), 2014 U.S. Dist. LEXIS 27730 (C.D. Cal. Mar. 4, 2014).

## V.    CONCLUSION

For the foregoing reasons, this Court should rule that Plaintiff is entitled to a grant of summary judgment in his favor on these issues.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

DATED: January 24, 2022                    Respectfully submitted,


                                           */s/ Richard S. Busch*
                                           Richard S. Busch
                                           KING & BALLOW
                                           *Attorney for Plaintiff*
                                           Dwight Yoakam

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**